# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# GALVESTON DIVISION

|  |  |  |
|---|---|---|
| **HATEM TAWFIQ ALGHUTI** ("Hatem Tawfiq") | § § § § § | United States Courts Southern District of Texas FILED |
| *Plaintiff,* | § § § | *April 20, 2023* |
|  | § § | Nathan Ochsner, Clerk of Court |
| **v.** | § § |  |
| **UNITED STATES DEPARTMENT OF JUSTICE, OFFICE ON VIOLENCE AGAINST WOMEN, STATE OF TEXAS; GALVESTON COUNTY; DWIGHT D. SULLIVAN,** in his official capacity as Galveston County Clerk; **HONORABLE MARK HENRY,** in his official capacity as Galveston County Judge; **LEAGUE CITY POLICE DEPARTMENT; KATHLEEN MCCUMBER,** in her official capacity as Municipal Judge at City of League City; **KERRI FOLEY,** in her official capacity as Galveston County District Judge; **JACK ROADY,** in his official capacity as Galveston County Criminal District Attorney; **LISA SALAZAR; SKILLERN FIRM, MATTHEW A. SKILLERN; RAWAN AL-NAJJAR; JOSEPH ROBINETTE BIDEN JR.,** is being sued in his capacity as former senator of the State of Delaware, and personally in his role with the Biden Foundation | § § § § § § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. |
| *Defendant(s).* | § § § |  |

# COMPLAINT

COME NOW Plaintiff, HATEM TAWFIQ, and file this Complaint seeking declaratory and injunctive relief pursuant to 42 U.S.C. § 1983, alleging Defendants violated his rights secured   under the Constitution and laws of the United States, including the Equal Protection Clause of the Fourteenth Amendment, the First Amendment right to free speech, violations of the freedom of the press, and free exercise of religion, the right to carry and bare arms of the Second Amendment, the Fourth Amendment right to be secure in his person and property, and to be free from unreasonable searches and seizures, Fifth Amendment prohibition of compelled disclosure, and self-incrimination, the Sixth Amendment right to effective counsel, Eighth Amendment prohibition of the use of cruel and unusual punishment, or other applicable federal laws and regulations, and have therefore deprived the plaintiff of these rights while acting under the guise or color of law.

The specific rights that the Plaintiff alleges have been violated by the Defendants are set forth in the subsequent paragraphs of this complaint. Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages, and any other relief deemed just and proper by the Court.

## I.   **INTRODUCTION**

The United States Constitution guarantees "that "*no state . . shall deprive any person of life, liberty or property without due process of law*". This fundamental ideal is at the core of our nation, and is enshrined in U.S. Const. amend. XIV, § 1. The Texas Constitution further complements this ideal under Tex. Const. Art. 1, Sec. 19, establishing

2

that "*No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land"*. Galveston County is flouting these requirements by using Article 17.292 of the Texas Code of Criminal Procedure (Texas CCrP) and other Texas Family Code statutes to circumvent Plaintiff's right to a meaningful hearing prior to imposing court orders which deny access to his child and property —a practice that violates the clear and unequivocal text of U.S. Const. amend. XIV, § 1, as well as Tex. Const. Art. 1, Sec. 19.

The Plaintiff contends Tex. Fam. Code § 71.004 and Article 17.292 of the Texas CCrP are unconstitutionally vague, and fail to provide adequate safeguards against the arbitrary application of law. The statutes also fail to prevent false, frivolous, or malicious accusations, and do not require clear and convincing evidence or findings of fact in a manner consistent with the fifth amendment of the U.S. Constitution. The plaintiff further argues that the provisions authorizing protective orders under Chapters 83, 84, and 85, of the Texas Family Code do not provide adequate notice and a meaningful opportunity to be heard. Therefore, plaintiff brings this suit to declare unconstitutional and enjoin the enforcement of Article 17.292 of the Texas Code of Criminal Procedure, and sections of Texas Family Code at issue, to ensure that all components of the administrative courts comply with their obligations under Texas and Federal law.

## II.    JURISDICTION AND VENUE

1.    This is a civil and constitutional rights action brought under 42 U.S.C. § 1983, asserting violations of the First, Second, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1343 (civil rights jurisdiction), 28 U.S.C. §§ 2201 (Creation of Remedy), 2202 (Further Relief); 28 U.S.C. § 1651 (Writs); 28 U.S.C. § 1361 (Action to Compel an Officer of the United States to Perform His Duty) which provide for jurisdiction over claims arising under federal law and civil rights claims, respectively.

2.    Venue is proper because a substantial part of the events giving rise to the claims occurred in this judicial district. See 28 U.S.C. § 1391(b)(2).

## III.   PARTIES

### A.  Plaintiffs

3.    Plaintiff Hatem Tawfiq Alghuti ("HATEM") is a resident of Harris County, Texas. HATEM brings this complaint on behalf of himself, and in the interest of his daughter, Sarah Hatem Alghuti ("SARAH"), who currently resides with her mother in Galveston County. SARAH is not listed as a party to the lawsuit.

**B.  Defendants**

4.      The DEPARTMENT OF JUSTICE and the Office on Violence Against Women ("OVW") are named as defendants in this case. The Department of Justice is a federal agency responsible for enforcing the Violence Against Women Act (VAWA) and is being sued in its official capacity. Similarly, OVW administers grants to further the goals of VAWA and is also being sued in its official capacity. All adversary proceedings which involve the United States government or any of its federal agencies must be served upon the Attorney General of the United States at the following address U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001. The U.S. Department of Justice Office on Violence Against Women may be served at 145 N Street, NE, Suite 10W.121 Washington, DC 20530. A copy of the service must be sent to Attorney General of the United States.

5.      Defendant STATE OF TEXAS is a sovereign state located in the United States. It is sued in its official capacity. The State of Texas shall refer collectively herein to the State, its agents, servants, employees, attorneys, and all persons in active concert and participation with the State. Service of Process can be made upon the Secretary of State P.O. Box 12079 Austin, Texas 78711-2079. CERTIFICATION BY THE COURT. Pursuant to 28 U.S.C. §2403, the Court is required to certify to the appropriate attorney general that a statute has been questioned. Service of Process can be made upon to the Office of the Texas Attorney General at PO Box 12548 Austin, TX 78711-2548.

6.      Defendant Galveston County et al. ("Galveston County") is a political subdivision of the State of Texas governed by a five-member Commissioners Court comprised of four County Commissioners elected by geographical precinct and one County Judge elected by the county as a whole. Galveston County, Texas may be served by service upon Mark Henry, County Judge at 722 1st Street, Galveston, Texas 77550. Defendant the Honorable Mark Henry is County Judge of Galveston County and the chief officer of Galveston County. Mark Henry is sued in his official capacity as the Chief Officer of Galveston County and may be served at 722 1st Street, Galveston, TX 77550.

7.      Defendant Dwight D. Sullivan is the County Clerk of Galveston County. Defendant Dwight D. Sullivan is the County Clerk of Galveston County and may be served at 600 59th Street, Suite 2001, Galveston, TX 77551.

8.      Defendant LEAGUE CITY POLICE DEPARTMENT is a law enforcement agency located in League City, Texas and operates under the jurisdiction of Galveston County. It is being sued in its official capacity. League City Police Department may be served at 555 W Walker St, League City, TX 77573.

9.      Defendant, KATHLEEN M. MCCUMBER holds the position of Justice of the Peace Court 4 in Galveston County and is a licensed attorney authorized to practice law in the State of Texas with State Bar No. 00791220. Kathleen M. McCumber serves as a Municipal Judge at the City of League City and can be served at 174 Calder RD. #111 League City, TX 77573.

10. Defendant KERRI FOLEY, serves as District Judge at Galveston County Court at Law No. 2 and is being sued in her official capacity as District County Judge and may be served at 600 59th Street, Suite 2201, Galveston, TX 77551.

11. Defendant JACK ROADY, serves as the district criminal attorney for Galveston County and is being sued in his official capacity as District Criminal Attorney and may be served at 600 59th Street, Suite 1001, Galveston, TX 77551.

12. Defendant, LISA SALAZAR ("LISA"), is a resident of Galveston County. The plaintiff asserts that LISA entered false reports due to prejudice against his religious beliefs, which led to SWAT raiding plaintiff's home on December 23, 2020.

13. Defendant RAWAN AL-NAJJAR ("RAWAN") is the former spouse of Plaintiff Hatem Tawfiq Alghuti ("HATEM") and has been a resident of Galveston County since 2019. HATEM and RAWAN were married on or about November 24, 2016, in Houston, Texas. They ceased living together as spouses on or about December 23, 2020.

14. The defendants, MATTHEW A. SKILLERN ('MATTHEW ') and SKILLERN FIRM, served as legal counsel for Rawan Al-Najjar in two cases filed at Galveston County District Court: cause no. 20-FD-2694, a protective order hearing, and cause no. 21-FD-0102, a divorce case filed on January 15, 2021. MATTHEW is a licensed attorney at the Skillern Firm in Houston, Texas, and is authorized to practice law in the State of Texas with Bar No 24041926. Defendants Matthew Skillern and Skillern Firm may be served at 701 N. Post Oak Rd., Suite 600 Houston, Texas 77024.

15.     Defendant JOSEPH ROBINETTE BIDEN JR. is being sued in his capacity as a former senator of the State of Delaware for actions taken during that time, and also personally for his role with the Biden Foundation, a nonprofit organization under section 501(c)(3) of the United States tax code. The Foundation suspended activities around April 2019. Defendant Joseph Biden was instrumental[1] to the drafting and passage of the Violence Against Women Act (VAWA), and spent years working on passing the Legislation as Senator. As determined by the Honorable Court, United States Marshals Service may effect service at the most likely addresses for the defendant, or make diligent inquiry and efforts to effect service on the Defendant, or take any necessary steps as Ordered by the Honorable Judge to serve the Defendant.

## IV.    LEGAL BACKGROUND

16.     Galveston County, along with almost every municipal and trial court in Texas, invoke Article 17.292 of the Texas Code of Criminal Procedure to issue a magistrate emergency protective order. Such orders prevent individuals who are accused of committing domestic violence from returning home or communicating with family members, and does not require a post-arrest deprivation hearing to be conducted.

---

[1] Violence Against Women Reauthorization Act of 2011, 112th Cong. 2d Sess., S. Rep. No. 112-153, at 2 (Mar. 12, 2012) (statement of Sen. Leahy, Chairman, Comm. on the Judiciary) (championed by then-Senator Joseph Biden and Senator Orrin Hatch), https://www.congress.gov/112/crpt/srpt153/CRPT-112srpt153.pdf.

17.     Article 17.292 authorizes a magistrate to issue an emergency protective order after a defendant's arrest for offenses involving family violence or offenses under the Penal Code regarding trafficking, sexual assault, or stalking (Tex. Code Crim. Proc. art. 17.292(a)). Specifically, the article states that a magistrate may issue an order for emergency protection "*at a* defendant's appearance before a magistrate after arrest for an offense involving <u>family violence</u> **or** an offense under <u>Section 20A.02, 20A.03, 22.011, 22.012, 22.021, or 42.072 of the Penal Code</u>" (Id.).

18.     Article 17.292 of the Texas Code of Criminal Procedure[2] ("CCrP") is composed of a provision defined under **Section 71.004** of the Texas Family Code ("family violence") which incorporates by reference one or more sections or definitions under Chapter 22 of the Texas Penal Code [3], and/or one or more provisions from Chapter 20A or Chapter 42 of the Penal Code, respectively. The criminal code provisions used to define "family violence" are found under Tex. Penal Code §§ 1.07(a)(8) and Chapter 22 of the Texas Penal Code, which include <u>physical harm, bodily injury, assault, or sexual assault</u>. The textual and structural analysis of Article 17.292(a) of the Texas Code of Criminal Procedure is provided below paragraph 58, and 59.

**A.  CHAPTER 71 — TEX. FAM. CODE**

19.     **Family violence is defined** by Tex. Fam. Code § 71.004 as an act by a member of a family or household against another member of the family or household that

---

[2] TEX. CODE CRIM. PROC. art. 17.292(a)

[3] Texas Penal Code Chapter 22." Texas Legislature Online, Texas Legislature, <u>https://statutes.capitol.texas.gov/Docs/PE/htm/PE.22.htm</u>.

is **intended** to result in physical harm, <u>bodily injury, assault, or sexual assault</u>, or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself. Abuse towards a child of the family or household is defined by Sections 261.001(1)(C), (E), (G), (H), (I), (J), (K), and (M). Dating violence is defined by Section 71.0021[4].

20.    **Structural and Textual Analysis:** the definition of "family violence" under Tex. Fam. Code 71.004(1) is composed of a main clause and a subordinate clause that is introduced by the word "that". The main clause of the sentence is "an act by a member of a family or household against another member of the family or household", and the subordinate clause is "that is intended to result in physical harm, bodily injury, assault, or sexual assault, or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself."

21.    The subject of the main clause is "an act," and the predicate is "by a member of a family or household against another member of the family or household." The subordinate clause describes the act, which is a criminal offense. The term "intended" is a past participle form of the verb "intend", and in this sentence, it functions as an adjective to describe the noun "act". It describes the purpose or aim of the act: that

---

[4] See **Exhibit-1** on first page, *"an offense involving "family violence as defined in Chapter 71, Texas Family code, or an offense under Sections 22.011 (Sexual Assault), 22.021 (Aggravated Sexual Assault), or 42.072, Texas Penal Code (Stalking), Texas Penal Code"*.

it is done with the intention of causing a criminal offense, specifically "Physical harm," "bodily injury," "assault," and "sexual assault". The terms defined in the criminal code which are integral to the definition provided under Tex. Fam. Code § 71.004, are noun phrases that act as objects of the preposition "in."

22.     The term "intended" in the definition of "family violence" under Texas Family Code § 71.004 establishes that the court must determine whether the alleged suspect's actions aimed to result in certain criminal offenses under the Texas Penal Code, such as physical harm, bodily injury, assault, or sexual assault, or a threat that reasonably places the member in fear of the same. This is because "Family Violence" incorporates terms defined in the Texas Criminal Code as an integral part of its "civil law" definition. This quasi-criminal section raises concerns about potential violations of due process and equal protection, given the different standards, rules, and procedures that apply to civil and criminal proceedings, as well as the burden of proof required for a decision or judgment. Standards in a civil case are generally lower than in a criminal case, and the burden of proof is different. In a civil case, the plaintiff must prove their case by a "preponderance of the evidence," while in a criminal case, the prosecution must prove their case "beyond a reasonable doubt". This could potentially affect the outcome of a case and the rights of the accused.

## B. CHAPTER 85 — TEX. FAM. CODE

23.      Chapter 71 of the Texas Family Code is central to both Chapter 85 and CCrP Article 17.292. Chapter 71 defines "family violence" and provides the basis for issuing 'protective orders' in cases of family violence in Texas, which are then governed by the procedures outlined in Chapter 85. Similarly, CCrP Article 17.292 authorizes the issuance of 'emergency protective orders' after a defendant's arrest for offenses involving family violence.

24.      Chapter 85 of the Texas Family Code sets out the provisions for the issuance of protective orders in Texas. The chapter outlines the procedures for obtaining protective orders and the requirements that must be met in order for the court to issue such orders. It also sets out the terms and conditions of protective orders and the penalties for violating them. Under TEX FAM CODE § 85.001, the court is required to determine whether *"family violence has occurred and is likely to occur in the future"*, at the close of a hearing on an application for a protective order. If both requirements have been satisfied, the court issues a protective order under Section 85.022 applying only to a person found to have committed family violence. The Plaintiff has no prior criminal record or history of violence[5].

---

[5] Roper v. Jolliffe, 493 S.W.3d 624 (Tex. App. 2015) is a case involving family violence protective orders. According to the court, evidence of past violent conduct is admissible and permits an inference that the person will continue such behavior in the future. The court stated that past violent conduct is often a predictor of future behavior, and can be legally and factually sufficient to sustain the award of a protective order. This ruling was made in accordance with the decision in Teel v. Shifflett, 309 S.W.3d 619 (Tex. App. 2010), which was cited by the court. The case was heard in the Court of Appeals Fifth District of Texas at Dallas on October 9, 2015.

25.     Therefore, to enter a final civil protective order, the Court is required to find that the defendant's actions **intended** to result in physical harm, bodily injury, assault, or sexual assault or were a threat that reasonably placed the family member in fear of imminent physical harm, bodily injury, assault, or sexual assault. These are criminal actions defined by the Texas Penal Code and conviction of which requires "proof beyond a reasonable doubt".   However, in a civil protective order trial, the Court must only find that the defendant has committed family violence and is likely to commit family violence in the future by a "preponderance of the evidence". Roper v. Jollife, 493 S.W.3d 624, 638 (Tex. App.—Dallas 2015, pet. denied).   When a litigant is faced with loss of fundamental rights, due process requires that fact findings be made by more than a preponderance of the evidence. Addington v. Texas, 441 U.S. 418, 423 (1978). Texas courts have also determined that the **emergency protective order** under article 17.292 are civil in nature and not criminally punitive. See Ex parte Necessary, 333 S.W.3d 782, 790 (Tex. App.— Houston [1st. Dist.] 2010, no pet.); see also Harris v. State, 164 S.W.3d 775, 781–82 (Tex. App.— Houston [14th Dist.] 2005, pet. ref'd).

26.     When a person is compelled by the government to defend against a civil statute and admitting information would lead to incriminating evidence under a criminal statute, the civil statute compels testimonial information. The answers to the questions posed by the statute itself do not have to entirely encompass a criminal offense to be protected by the Fifth Amendment. See Hoffman v. U.S., 341 U.S. 479 (1951). The Fifth Amendment of the U.S. Constitution protects individuals from self-incrimination,

including compelled statements that could lead to the discovery of incriminating evidence of a testimonial nature. *Doe v. U.S. 487 U.S. 201, 208 (1988)*. This protection also extends to physical characteristics, such as providing a blood sample, a handwriting exemplar, or a recording of a person's voice are not the same as sworn communications asserting facts. U.S. v. **Hubbell**, 530 U.S. 27 (2000); Pennsylvania v. Muniz, 496 US 582 (1990).

### Protective Orders Under the
### Texas Family Code are Quasi-Criminal

27. Provided that a defendant in a protective order trial is being accused of criminal actions, the higher burden of proof of beyond a reasonable doubt must be applied to the quasi-criminal protective order case. Defending against the accusations of assault, sexual assault, or bodily injury would lead to incriminating evidence under the Texas Penal Code, these offenses are not defined in the Texas Family Code. It is not possible to defend against these accusations without creating a chain of evidence needed to prosecute those same crimes under the Texas Penal Code. Therefore, if a defendant is required to testify in a Tex. Fam. Code Protective Order trial, it would violate the 5th Amendment of the U.S. Constitution and Tex. Const. Art.1, Sec. 10.

### Testimony in a Civil Protective Order Case
### Violate the Fifth Amendment of the United States Constitution

28. The Fifth Amendment to the United States Constitution protects a person from being compelled to confess by law. The Fifth Amendment to the United States Constitution holds: *"No person shall be held to answer for a capital, or otherwise*

14

*infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases*

*arising in the land or naval forces, or in the Militia, when in actual service in time of War*

*or public danger; nor shall any person be subject for the same offense to be twice put in*

*jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness*

*against himself, nor be deprived of life, liberty, or property, without due process of law;*

*nor shall private property be taken for public use, without just compensation"*.

### Remaining Silent to Protect Against
### Self-Incrimination is Presumed as a Negative Inference

29.    In civil proceedings, a party or witness cannot refuse to be called as a

witness, and invoking the Fifth Amendment may result in a negative inference. Therefore,

in a civil protective order trial, a defendant must choose between refusing to testify and

facing a negative inference or to testify and leaving themselves vulnerable to

incrimination. This situation violates the Fifth Amendment's protection against self-

incrimination. (Citations: Griffin v. California, 380 U.S. 609, 615 (1965); Mitchell v.

United States, 526 U.S. 314, 326 (1999); McInnis v. State, 618 S.W.2d 389, 392 (Tex.

Civ. App. Beaumont 1981, writ ref'd n.r.e), cert. denied, 456 U.S. 976 (1982)).

## V.    LEGAL STANDARDS

30.    Plaintiff hereby incorporates the allegations set forth in paragraphs 40

through 111, inclusive, as if set forth here in full, alleging a violation of rights secured by

the Constitution and laws of the United States, and that the defendant State of Texas have

deprived the plaintiff of these rights while acting under the guise or color of law.

31.     As a result of the foregoing, there is an actual, justiciable and substantial controversy between Plaintiff and Defendants arising under 42 U.S.C. § 1983. As a result, Plaintiff seeks a declaration that:

    a.    Tex. Fam. Code § 71.004(1) and Article 17.292 of the Texas Code of Criminal Procedure, are unconstitutionally vague; and,

    b.    Subsection (1) of Texas Family Code § 71.004, Texas Family Code § 85.001(a) compel testimonial information in violation of the fifth amendment. Further Declare Texas Family Code §§ 71.004(1), 71.004(3), 71.0021(a), 85.001(a), 85.0021, Tex. Fam. Code § 85.021(1)(B) and §85.022 facially unconstitutional on the same grounds; and,

    c.    Tex. Fam. Code §§ 83.001, 84.001, 84.002, 84.004, 85.002, 85.021, 85.022 violate procedural due process guaranteed under the 14th Amendment of the U.S. Constitution by failing to provide adequate notice for a meaningful hearing; and,

    d.    That the statutes at issue may not be enforced in a manner consistent with the due process requirements of the fifth and fourteenth amendment of the United States Constitution.

32.     A declaration by the Court of the unconstitutionality of the aforementioned statutes and codes ("statutes at issue"), as well as a final ruling by this Court will determine the rights and obligations of the parties and will provide the necessary relief to Plaintiff.

## DECLARATORY JUDGMENT EVIDENCE

33.     In support of this Complaint, Plaintiff relies on the following evidence in Movant Declaration attached hereto as **Exhibit "A"** and incorporated by reference herein for all purposes:

  a.     **Exhibit 1** – Magistrate Emergency Protective Order

  b.     **Exhibit 2** – Ex Parte Protective Order and Evidence Supporting Claims

  c.     **Exhibit 3** – Protective Order Hearing Documentation of Correspondences.

  d.     **Exhibit 4** – Final Protective Order issued under 20-FD-2694

  e.     **Exhibit 5** – Final Divorce Decree

  f.     **Exhibit 6** – Final Protective Order issued under 22-FD-2586

  g.     **Exhibit 7** – Evidence Supporting Claims and Documentation of Correspondences.

34.     **Preliminary Injunction** — A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). Plaintiff is entitled to preliminary injunction because he has demonstrated "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the

injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." Janvey v. Alguire, 647 F.3d 585, 595 (5th Cir. 2011).

35.    **Plaintiff is substantially likely to succeed on his claims** that Article 17.292 of the Texas Code of Criminal Procedure, Tex. Fam. Code §§ 71.004, 84.001, 84.002, 84.004, and 85.001 violate due process under the fifth and fourteenth amendment. As explained by Flores court[6], Article 17.292 "passed constitutional muster" because of *"the temporary and emergency nature"* of the orders it provides. Id. However, Article 17.292 does not preclude a trial court from issuing subsequent protective order(s) prior to the 90-day[7] expiration of Magistrate Emergency Protective Order. Therefore, when one or more protective order(s) is issued in separate filings while an Emergency Protective Order is in effect, this negates the temporary nature of orders provided under Article 17.292 of CCrP.

> *"We need not express any opinion on whether Flores was correctly decided. Rather, we will assume for the sake of argument that when an emergency protective order, without notice and opportunity for hearing, deprives a defendant of the ability to enter his home, this would violate due process"*.

---

[6] *See Ex parte Flores, 130 S.W.3d 100, 107 (Tex. App.—El Paso 2003, pet. ref'd). The Flores court concluded that Article 17.292 passed constitutional muster because of "the temporary and emergency nature" of the orders it provides. Id. The court further reasoned that the need for prompt assumption of judicial control following a family violence arrest outweighed the need to minimize risk of error through adversary procedures. Id.*

[7] An order for emergency protection issued under Subsection (b)(2) of this article remains in effect up to the 91st day but not less than 61 days after the date of issuance. Allegations of a family violence —alleged exhibition of a weapon.

36.   **Balance of equities and public interest** —When an individual is arrested for an alleged offense that satisfies the criteria for invoking Article 17.292, Texas courts have determined that such an arrest represents an extraordinary emergency that warrants departing from the default rule of due process. An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case, and in "rare and extraordinary situations," deprivation of a protected interest need not be preceded by opportunity for some sort of hearing, and a post deprivation hearing will satisfy due process requirements[8]. However, in this case, the plaintiff was not provided with a post-deprivation hearing following his arrest on December 23, 2020. Furthermore, Article 17.292 of the Texas Code of Criminal Procedure does not require a post-arrest hearing. The plaintiff recognizes that there are individuals who truly require protection under the applicable laws, and requests that the defendants be prohibited from enforcing the statutes in a way that infringes upon the due process rights guaranteed by the United States Constitution.

---

[8] Greene v. Greenwood Pub. Sch. Dist., 890 F.3d 240, 243 n.2 (5th Cir. 2018) (quoting Loudermill, 470 U.S. at 542 n.7, 105 S. Ct. at 1493 n.7; Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 570 n.7, 92 S. Ct. 2701, 2705 n.7 (1972)); see Bell v. Burson, 402 U.S. 535, 542, 91 S. Ct. 1586, 1591 (1971) (similar as to "emergency situations"); see also Polley v. State, No. 11-03-00340-CR, 2004 WL 2964785, at *2 (Tex. App.—Eastland Dec. 16, 2004, pet. ref'd) (not designated for publication) (concluding that a different protective order statute satisfied due process because it afforded the respondent notice and hearing before the issuance of the protective order).

**37.     Galveston County Is Substantially Likely to Continue Causing Plaintiff and other Defendants [9]  in a Protective Order Case, Irreparable Harm By Violating Due Process** — plaintiff and defendants in protective order cases [10], will continue to suffer irreparable injury if the Court does not enjoin the State of Texas from enforcing the statutes at issue. As plaintiff has shown, defendants in protective order cases are denied access to their property, children, and basic rights without a hearing. This is constitutional violation, *"for even minimal periods of time, unquestionably constitutes irreparable injury."* Elrod v. Burns, 427 U.S. 347, 373 (1976) (plurality opinion) (addressing First Amendment harms); accord Miss. Power & Light Co. v. United Gas Pipe Line Co., 760 F.2d 618, 630 n.12 (5th Cir 1985) (noting that harm is irreparable *"where the rights at issue are noneconomic, particularly constitutional rights"*). Where *"an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."* Opulent Life Church v. City of Holly Springs, Miss., 697 F.3d 279, 295 (5th Cir. 2012) (quoting 11A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2948.1 (2d ed. 1995) [hereinafter, Wright & Miller]).

---

[9] See DA Office political contributions from gender-based political donors— Galveston Republican Women PAC (GPAC), Payees, Transparency USA (last visited March 10, 2023), https://www.transparencyusa.org/tx/committee/galveston-republican-women-pac-54591-gpac/payees?cycle=2018-election-cycle. See Exhibit A, paragraph 3 — Suspect Victim Dilemma. **Exhibit A at ¶ 46-49.**

[10] The proposed suspect class include indigent males in Texas who have been accused of committing family violence. This class includes those who had no prior criminal record before the allegation, and against whom one or more protective orders were issued under the Texas Family Code or an emergency protective order under Article 17.292 of the Texas Code of Criminal Procedure, or similar law, which restricts their access to property or children for over 90 days without a post-arrest hearing. The suspect class emerged as a result of the abusive application of unconstitutional laws and government-sponsored gender-based advocacy.

38.     The deprivation of the constitutional rights of a defendant in a protective order case is significant enough to warrant a preliminary injunction. Denying due process to a defendant in a protective order case results in loss of employment, loss of housing, interruption in educational programs, and even disruptions in custody of their children. As a result, the Defendants may face permanent disruptions to their lives even if the charges are dismissed or they are acquitted at trial, because they were denied their basic constitutional rights. These harms—in addition to the harm of unconstitutional Protective Orders statutes —merit preliminary injunctive relief.

39.     **Constitutional Challenge** —Under Rule 5.1 of the Federal Rules of Procedure, when a party raises a constitutional challenge to a federal or state statute, the court is required to certify to the appropriate attorney general that the statute has been questioned, pursuant to 28 U.S.C. §2403. A challenge to a law can argue that a statute is unconstitutional "facially [11]" or "as-applied." A statute is facially unconstitutional when "*no set of circumstances exists under which the Act would be valid.*" United States v. Salerno, 481 U.S. 739 (1987). However, a statute is unconstitutional as applied when it violated a particular party's constitutional rights. Constitutional Challenges to State statutes "often face an uphill battle because  courts presume that most statutes are constitutional". Heller v. Doe by Doe, 509 U.S. 312, 320 (1993). The Minnesota Supreme Court has made it clear that most "Minnesota statutes are presumed constitutional, and

---

[11] Generally, a facial challenge to the constitutionality of a statute can succeed only when it is shown that the law is unconstitutional in all its applications. State v. Johnson, 475 S.W.3d 860, 864 (Tex. Crim. App. 2015).

our power to declare a statute unconstitutional should be exercised with extreme caution and only when absolutely necessary." In re Haggerty, 448 N.W.2d 363, 364 (Minn. 1989). There is an exception. Statutes that restrict a fundamental right or affect a suspect class are not presumed to be constitutional. State v. Castellano, 506 N.W.2d 641 (Minn. 1993); Rio Vista Non-Profit Housing Corp. v. Ramsey County, 335 N.W.2d 242 (Minn. 1983).

## VI.    FACTUAL BACKGROUND

40.     Plaintiff has standing to challenge the constitutionality of Article 17.292 of the Texas Code of Criminal Procedure, and Tex. Fam. Code statutes. In general, a person or entity can only start a lawsuit challenging a law's constitutionality if the legislature specifically granted standing to a group that includes that person, or if the person or entity suffered some actual injury. Warth v. Seldin, 422 U.S. 490 (1975); State by Humphrey v. Philip Morris, Inc., 551 N.W.2d 490 (Minn. 1996).

41.     Hatem Tawfiq Alghuti ("HATEM") was subject to multiple protective orders without adequate notice or opportunity to be heard. The orders have resulted in significant violations of his civil liberties and property rights, including his ability to access his property and child. The statutory provisions that authorize such orders and the procedures for obtaining, enforcing, and challenging them do not provide adequate safeguards against false, frivolous, or malicious accusations, do not require clear and convincing evidence or findings of fact, and do not provide for a meaningful hearing before an impartial judge. Plaintiff argues that the lack of such safeguards violates his

substantive and procedural due process rights under the Texas Constitution, which require

a fair and just legal process that protects individual liberty and property interests, and that

the State has not shown a compelling state interest or a narrow tailoring of the protective

order statutes to achieve that interest.

**CLAIMS FOR RELIEF**

**<u>COUNT - 1</u>**
**UNCONSTITUTIONALLY VAGUE STATUTES**
**IN VIOLATION OF THE FIFTH AMENDMENT**
**Texas Family Code § 71.004**
(Plaintiff against the State of Texas)

41.     Plaintiff realleges the facts set forth above.

42.     Tex. Fam. Code  § 71.004 is a section of Chapter 71 of the Tex. Fam. Code.

43.     Tex. Fam. Code § 71.004(1) provides the definition for "family violence"

used in Chapter 83, 84, and 85 of the Texas Family Code. The definition is also used in

the Texas Code of Criminal Procedures under Article 17.292.

44.     Tex. Fam. Code § 71.004 uses the descriptive terms "physical harm, bodily

injury, assault, or sexual assault" that define the types of harm intended or threatened.

These terms are defined under the Texas Penal Code, and are criminal offenses in the

State of Texas.

45.     Tex. Fam. Code § 71.004 definition of family violence requires a magistrate

judge or court to determine whether the alleged actions of the suspect, aimed to result in

certain criminal offenses under the Texas Penal Code, such as physical harm, bodily

injury, assault, or sexual assault, or a threat that reasonably places the member in fear of

the same. This claim is supported by the statutes use of the term "intended", a past participle form of "intend", and under Sec. 71.004, functions to describe the word "act".

46.     Texas courts rely on the definition of family violence provided in Tex. Fam. Code § 71.004 for issuing protective orders. The procedures for issuing these orders are outlined in various chapters of the Texas Family Code, which governs civil proceedings related to family law matters. Therefore, the definition provided by this section is used in civil proceedings to determine whether offenses that are considered criminal in nature have been committed. This may not be what was 'intended'[12] by the legislature.  Instead of applying the higher burden of proof required in criminal proceedings, Texas courts determine whether the suspect committed "family violence" or is likely to commit "family violence" in the future by a "preponderance of the evidence". Regardless of intent, the Section is vague, and does not contain adequate safeguards to ensure that the statute is enforced in a manner consistent with due process guaranteed by the United States Constitution, or due course of law of the Texas Constitution.

47.     The statutory provisions that authorize protective orders rely on the definition of "family violence" provided under Texas Family Code § 71.004(1), which is vague and overbroad, and does not provide adequate safeguards and invites arbitrary application of the law in a manner inconsistent with the due process requirements of the United States Constitution. HATEM seeks this relief under 42 U.S.C. § 1983 and any

---

[12] Roper v. Jolliffe, 493 S.W.3d 624, No. 05–14–00500–CV, at *12 (Tex. App. - Dallas Oct. 2, 2015) (Opinion by Justice Stoddart). *"The legislative history also indicates the legislature intended protective order proceedings to be civil in nature. See Senate Comm. on Human Res., Bill Analysis, Tex.C.S.H.B. 1075, 66th Leg., R.S. (1979)."*

other law that might supply a cause of action for the requested relief. Plaintiff Requests that the Honorable Court:

e.   Declare Texas Family Code § 71.004(1) facially unconstitutional

f.   Declare Texas Family Code § 71.004(1) is unconstitutionally vague in violation of the fifth and fourteenth amendments, and declare that Texas Family Code § 71.004 *invites arbitrary enforcement* of law in a manner inconsistent with the due process requirements of the fifth and fourteenth amendments. Further declare that the arbitrary enforcement of Texas Family Code § 71.004(1) has resulted in the unintended or inappropriate application of the statute in violation of plaintiff's substantive due process rights.

g.   Declare Texas Family Code §§ 71.004(3) and 71.0021(a) facially unconstitutional on the same grounds.

h.   Enjoin the defendants from enforcing Texas Family Code § 71.004 and Texas Family Code §§ 71.004(3) and 71.0021(a) in a manner not consistent with the due process guaranteed by the United States Constitution.

## COUNT- 2
## SELF-INCRIMINATION DUE PROCESS
## VIOLATION OF THE FIFTH AMENDMENT
### Texas Family Code § 71.004
(Plaintiff against the State of Texas)

48.     Plaintiff realleges the facts set forth above.

49.     Plaintiff was served a court summons[13] on January 8, 2021, ordering him to appear for a hearing on the applications for protective order filed by Rawan Al-Najjar. Thus, the government compelled HATEM to defend against a civil statute in a court proceeding. However, admitting certain information could potentially incriminate him under a criminal statute. Alternatively, if he remained silent, he risked being subject to another protective order that could restrict his access to his private residence and child for two years.

50.     Exhibit-2, titled "Applicant's Relief Requested at Protective Order Hearing," was submitted by RAWAN's attorney before the protective order hearing on January 14, 2021. Below the "FINDINGS" section on page 1, RAWAN requested a determination of whether "family violence" had occurred, as required by under Sec. 85.001 of the Texas Family Code. However, instead of applying the higher standard of proof necessary for the alleged "family violence" criminal offenses, the Galveston County District Court relied on a preponderance of the evidence standard to determine whether HATEM committed or is likely to commit "family violence" in the future. The evidence relied upon in this case was the issuance of an Emergency Protective Order

---

[13] See EX 2-3: Court Summons Notice- Protective Order, on Pg.1 and EX 2-4: Affidavit of Service.

26

against HATEM. Plaintiff 's attorney had about 24 hours to prepare for the hearing. As explained in **paragraph 102** below, the minimum notice required under Tex. Fam. Code § 84.004 does not provide sufficient time for a defendant to mount a defense against allegations of family violence at a protective order hearing, nor does it allow for the defense attorney to ascertain whether an offense was indeed committed. Therefore, HATEM was advised to opt for an agreed order, to avoid the risk of self-incrimination ("if an offense was committed").

51.     Therefore, in a civil protective order trial, a defendant must choose between refusing to testify and facing a negative inference or to testify and leaving themselves vulnerable to incrimination. This situation violates the Fifth Amendment's protection against self-incrimination.

52.     HATEM  contends that the lack of safeguards for the statutes at issue violates his substantive and procedural due process rights under the United States constitution, which require a fair and just legal process that protects individual liberty and property interests, and that the State has not shown a compelling state interest or a narrow tailoring of the statute at issue to achieve that interest. Therefore, plaintiff seeks a declaratory judgment that the state statute at issue are unconstitutional and a injunction enjoining its enforcement. HATEM seeks this relief under 42 U.S.C. § 1983 and any other law that might supply a cause of action for the requested relief. Plaintiff Requests that the Honorable Court:

a.   Declare Texas Family Code § 71.004(1) compels testimonial information in violation of the fifth amendment of the United States Constitution;

b.   Declare Texas Family Code § 71.004(1) is unconstitutionally vague in violation of the fifth and fourteenth amendment, and declare that Texas Family Code § 71.004 *invites arbitrary enforcement* of law in a manner inconsistent with the due process requirements of the U.S. Constitution. Further declare that the arbitrary enforcement of Texas Family Code § 71.004(1) has resulted in the unintended or inappropriate application of the statute in violation of plaintiff's substantive due process rights;

c.   Declare Texas Family Code §§ 71.004(3) and 71.0021(a) facially unconstitutional on the same grounds;

d.   Enjoin the defendants from enforcing Texas Family Code § 71.004 and Texas Family Code §§ 71.004(3) and 71.0021(a) in a manner not consistent with the due process guaranteed by the United States Constitution.

**COUNT- 3**
**UNCONSTITUTIONALLY VAGUE STATUE**
**IN VIOLATION OF THE FIFTH AMENDMENT**
**Article 17.292 of the Texas Code of Criminal Procedure**
(Plaintiff against League City Police Department; Kathleen Mccumber; Galveston
County; and the State of Texas)

53.     Plaintiff realleges the facts set forth above.

54.     In this count, Plaintiff incorporates by reference the claims, allegations, and

provisions set forth in paragraphs 42 through 52 under Section 6 of this complaint.

55.     On the evening of December 23, 2020, HATEM was arrested without

charge following allegations of domestic violence. Kathleen Mccumber, the Magistrate

Judge presiding over the Municipal Court of League City issued an Emergency Protective

Order against Hatem Gouti (also commonly referred to as Hatem Alghuti.). The

Emergency Protective Order was issued under **Subsection (b)(2) of Article 17.292** of the

Texas Code of Criminal Procedure, which requires a magistrate judge to issue an

emergency protective order *(not subject to discretionary authority)*. As a result, he was

prevented from returning to his home or from gathering his belongings[14]. See **Exhibit A**

**¶ 5 & 26**.

56.     Plaintiff asserts that the statute is unconstitutionally vague and overbroad.

57.     The issue presented before this Court is whether Article 17.292 of the Texas

Code of Criminal Procedure is unconstitutionally vague. The incorporation of criminal

offenses defined by the Texas Penal Code into the "family violence" civil statute under

---

[14] An order for emergency protection issued under Subsection (b)(2) of this article remains in effect up to the 91st day but not less than 61 days after the date of issuance. Allegations of a family violence —alleged exhibition of a weapon.

Tex. Fam. Code § 71.004(1) adds an additional layer of ambiguity to the quasi-criminal dilemma. Article 17.292 of the Criminal Procedure incorporates "family violence" as a defining term in the subordinate clause which follows the main clause under Article 17.292(a). The structural and textual defects of Article 17.292 of the Texas CCrP make it subject to various interpretations.

> Article 17.292(a) the Texas Criminal Procedure states "*at a defendant's appearance before a magistrate after arrest for an offense involving family violence or an offense under Section 20A.02, 20A.03, 22.011, 22.012, 22.021, or 42.072 of the Penal Code*" (Id.).

58.     The article appears to contain two subordinate clauses. The first subordinate clause is "*for an offense involving family violence*", with the second subordinate clause identified as "*or an offense under Section 20A.02, 20A.03, 22.011, 22.012, 22.021, or 42.072 of the Penal Code*". However, interpreting the sentence as containing two subordinate clauses with 'or' as a separator is not accurate, as some of the Chapter 22 criminal offenses in the second subordinate clause are an integral part of the 'family violence' definition in the first subordinate clause. This adds an additional layer of ambiguity to the already vague statute it incorporates (Tex. Fam. Code § 71.004(1)), thus exacerbating the quasi-criminal dilemma. If "or[15]" is used as a disjunctive separator, this would indicate the possibility of a non-criminal or civil alternative to the offenses included in the second subordinate clause. Alternatively, the article may contain a single subordinate clause with the conjunction "or" serving to connect the elements within that

---

[15] See Exhibit 1, on first page.

clause. The use of "family violence" as a defining term within the article, combined with the ambiguous use of "or" as a separator, could lead to confusion and uncertainty as to the intended meaning of the article.

59.     Applying the single subordinate clause interpretation raises questions regarding the civil nature of the statute. Tex. Penal Code § 22.011 is part of the definition of "family violence". Therefore, the criminal offense is not a separate operation of section 71.004 of the Texas Family Code, but rather an integral part by definition. Since Tex. Penal Code § 22.011 is included in the offenses listed after "family violence" under 17.292 of the Texas CCrP, then it could be argued that the "or" is not serving as a separator to present alternative options, but rather as a conjunction between the list of offenses that are part of the definition and the offense of "family violence" itself. This creates uncertainty about the elements that must be proven to establish the offense as distinctly criminal. If interpreted strictly as an "either/or" requirement, the presence of one of the offenses under the Texas Penal Code alone could trigger the provision, even if it is not related to family violence. This could result in unintended or inappropriate application of the statute. As it currently stands, Article 17.292 makes an emergency protective order available in cases where a defendant is arrested for trafficking of persons (not part of the same family), continuous trafficking of persons, sexual assault, indecent assault, aggravated sexual assault, and stalking. Tex. Code Crim. Proc. Ann. art. 17.292(a). These offenses could be, and often are, committed against victims who are not cohabitants with the arrestees. The State of Texas has not shown a compelling state

31

interest, or a narrow tailoring of the protective order statutes to achieve such interest in the least restrictive manner.

60.    This ambiguity violates the Fifth Amendment's prohibition of vague criminal statutes, which is "consonant alike with ordinary notions of fair play and the settled rules of law". A criminal statute is unconstitutionally vague in violation of due process for either of two reasons: first, if "*it fails to give ordinary people fair notice*" of what is proscribed; and, second, if it is "*so standardless that it invites arbitrary enforcement*". Therefore, Article 17.292 of the Texas Code of Criminal Procedure is facially unconstitutional and subject to challenge on these grounds.

61.    HATEM seeks this relief under 42 U.S.C. § 1983 and any other law that might supply a cause of action for the requested relief. Plaintiff Requests that the Honorable Court:

> a.    Declare Article 17.292(a) of the Texas Code of Criminal Procedure is unconstitutionally vague in violation of the the fifth and fourteenth amendments, and declare that Article 17.292 of the Texas Code of Criminal Procedure *invites arbitrary enforcement* of law in a manner inconsistent with the due process requirements of the U.S. Constitution. Further declare that the arbitrary enforcement of Article 17.292(b) of the Texas Code of Criminal Procedure by defendants League City Police Department, Kathleen Mccumber, Galveston County, and the State of Texas, has resulted in the

   unintended or inappropriate application of the statute in violation of

   plaintiff's substantive and procedural due process rights. (A copy of

   the Magistrate Emergency Protective Order issued against plaintiff is

   attached to this complaint as Exhibit-1.)

b. Declare subsection (a) and (b) of Article 17.292 of the Texas Code of

   Criminal Procedure is facially unconstitutional on the same grounds.

c. Enjoin the defendants from enforcing Article 17.292 of the Texas

   Code of Criminal Procedure in a manner inconsistent with the due

   process requirements of the fifth and fourteenth amendments of the

   United States Constitution.

## <u>COUNT- 4</u>

**UNLAWFUL SEIZURE IN
VIOLATION OF FOURTH AMENDMENT
Article 17.292 of the Texas Code of Criminal Procedure**
(Plaintiff against The State of Texas; Galveston County;
League City Police Department; Kathleen Mccumber)

62. Plaintiff reallege the facts set forth above.

63. In this count, Plaintiff incorporates by reference the claims, allegations, and

provisions set forth in paragraphs 42 through 52 under Section 6 of this complaint.

64. Following HATEM's arrest on December 23, 2020, HATEM was prevented

from returning to his home or from gathering his belongings.

65.     The Emergency Protective Order issued against him, under Subsection (b) (2) of Article 17.292 of the Texas Code of Criminal Procedure, failed to instruct his former spouse to return his belongings to him, which includes his medication, government identification cards, computer, work related files and documents, eye glasses, and other basic necessities, resulting in the deprivation of access to his property or possessions.

66.     Plaintiff alleges the Magistrate Emergency Protective Order was illegally used to force HATEM out of his home, and prevent him from returning. Following an argument, HATEM's spouse sought to evict him from his private residence, as evidenced in the four of the eighteen statements RAWAN wrote in her police report. See Exhibit -7, Pg. 14 statement #3, 7, 13, 17. All witness accounts support plaintiff's allegation, that his spouse sought for HATEM to leave immediately, including HATEM's mother-in-law SAMIA[16], Defendant LISA[17], and LISA's husband EDWARD [18]. Investigator COX, E. W. (241239) also noted in the case supplemental report that "*Rawan said that she`d told her husband to get out of the house, and said that she didn`t want him to come back. I informed her that we couldn`t evict him from the residence, and when I asked her if she wanted to file charges on him, she said that she did not. When I explained about filing charges and EPO`s, Rawan advised that she`d like an EPO against her husband, but that*

---

[16] See Exhibit-7, Statement 10 on Pg. 18

[17] See Exhibit-7, Statement 12, on Pg. 22

[18] See Exhibit-7, Statement 13, 19, and 22 on Page 26

*she didn't*". Plaintiff further alleges the officer insisted Rawan Al-Najjar consider an EPO to circumvent the plaintiff's constitutionally protected rights to remain in his property.

67.     Furthermore, the lack of post-arrest hearing or judicial review of the emergency protective order violated HATEM's right to due process under the Fifth and Fourteenth Amendments of the U.S. Constitution.

68.     Plaintiff alleges that the League City Police Department, Galveston County, and the State of Texas violated his due process rights under the Fifth and Fourteenth Amendment by not providing a post arrest deprivation hearing prior to preventing him from returning to his home, and restricting his ability to gather his belongings after his arrest. By reference , Plaintiff incorporates paragraphs 71 and 75. Plaintiff further alleges that the lack of safeguards of the statute at issue resulted in arbitrary enforcement of article 17.292 of the Texas Code of Criminal Procedure. Specifically, the statute resulted in unreasonable search and seizure violating rights protected by the fourth amendment. Plaintiff seeks relief under 42 U.S.C. § 1983 and any other law that might provide a cause of action for the requested relief. The following relief is requested:

a.     Declare that Article 17.292 of the Texas Code of Criminal Procedure invites arbitrary enforcement of law and does not provide adequate safeguards to prevent violations of the fourth amendment of the United States Constitution.

b.     Declare defendants League City Police Department, Kathleen Mccumber,  Galveston County, and the State of Texas, application of

35

Article 17.292 of the Texas Code of Criminal Procedure resulted in the unlawful seizure of property.

c.    Declare Article 17.292(a) of the Texas Code of Criminal Procedure is unconstitutionally vague in violation of the the fifth and fourteenth amendments, and declare that Article 17.292 of the Texas Code of Criminal Procedure *invites arbitrary enforcement* of law in a manner inconsistent with the due process requirements of the U.S. Constitution. Further declare that the arbitrary enforcement of Article 17.292(b) of the Texas Criminal Procedure by defendants League City Police Department, Kathleen Mccumber, and the State of Texas, has resulted in the unintended or inappropriate application of the statute in violation of plaintiff's **fourth amendment rights rights**. (A copy of the Magistrate Emergency Protective Order issued against plaintiff is attached to this complaint as Exhibit-1.)

d.    Declare that Article 17.292 of the Texas Code of Criminal Procedure is Unconstitutional in violation of the Fourth Amendment as-applied.

e.    Declare that Article 17.292 of the Texas Code of Criminal Procedure subsection (a) is unconstitutional on the same grounds.

f.    Enjoin the defendants from enforcing Article 17.292 of the Texas Code of Criminal Procedure in a manner not consistent with the

requirement of the four amendment of the United States
Constitution.

**COUNT- 5**
**DUE PROCESS VIOLATION OF**
**FIFTH AND FOURTEENTH AMENDMENT**
**Article 17.292 of the Texas Code of Criminal Procedure**
(Plaintiff against League City Police Department, Kathleen Mccumber, Kerri Foley,
Galveston County, and the State of Texas)

69.     Plaintiff realleges the facts set forth above.

70.     In this count, Plaintiff incorporates by reference the claims, allegations, and
provisions set forth in paragraphs 42 through 52 under Section 6 of this complaint.

71.     Due Process Violations: Plaintiff assert the issuance of an Emergency
Protective Order under Article 17.292 of the Texas Criminal Procedure do not require law
enforcement to undertake routine procedures, such as validating reports and assessing
information required to overcome the dilemma of identifying suspect(s) and witness(es),
prior to issuing a magistrate emergency protective order. This failure to properly consider
all evidence has resulted in an inadequate investigation, and plaintiff alleges also resulted
in wrongful arrest. Plaintiff has been denied access to his child and property for over two
years, without a single opportunity to present evidence that the allegations made against
him are false. These allegations of family violence were later used by Judge Kerri Foley
to deny plaintiff's right to enforce the requirements set forth in the marital agreement
between plaintiff and his former spouse. As a result, the court awarded RAWAN all
property rights and custody over their child without a hearing or impartial trial. In the

37

divorce decree attached to this complaint as **Exhibit-5**, Kerri Foley also issued a statement accusing plaintiff of cruelty without any evidence to support the claim. Article 17.292 of the Texas Criminal Procedure does not require a post arrest deprivation hearing, does not provide adequate safeguards against false, frivolous, or malicious accusations or applications of such orders, do not require clear and convincing evidence or findings of fact, and do not provide for a meaningful hearing before an impartial judge.

72.     An Emergency Protective Order issued under Article 17.292 of the Texas Criminal Procedure may be used to support the issuance of subsequent protective orders without presenting evidence that family violence was committed (**see paragraph 84 below**). This resulted in false and misleading claims filed in the divorce case that Plaintiff had "*a history of committing family violence*", despite the unproven allegation of family violence made in the EPO. According to the position held by Texas Courts, evidence of past violent conduct is admissible and permits an inference that the person will continue such behavior in the future. Roper v. Jolliffe, 493 S.W.3d 624 (Tex. App. 2015) . The court stated that past violent conduct is often a predictor of future behavior, and can be legally and factually sufficient to sustain the award of a protective order. This ruling was made in accordance with the decision in Teel v. Shifflett, 309 S.W.3d 619 (Tex. App. 2010), which was cited by the court. The case was heard in the Court of Appeals Fifth District of Texas at Dallas on October 9, 2015.

73.     Article 17.292's provision for an emergency protective order states that "[a]t a defendant's appearance before a magistrate after arrest for an offense involving family violence or [other specified offenses] the magistrate **may** issue an order for emergency protection on the magistrate's own motion or on the request of" the victim, the victim's guardian, a peace officer, or "the attorney representing the state." TEX. CODE CRIM. PROC. art. 17.292(a)(1)–(4); see also id. art. **17.292(b)** (**requiring** the magistrate to issue an order for emergency protection when the person is arrested for a family violence offense that also involves the use or exhibition of a deadly weapon); see also TEX. GOV'T CODE § 311.016(1) ("'may' creates discretionary authority or grants permission or a power.").

74.     Generally, a facial challenge to the constitutionality of a statute can succeed only when it is shown that the law is unconstitutional "*in all its applications*". State v. Johnson, 475 S.W.3d 860, 864 (Tex. Crim. App. 2015).  Texas Courts have determined that Article 17.292  of the Texas CCrP does not satisfy that criteria, explaining that not every application of the law would necessarily prevent an arrestee from returning home. Given the broad and arbitrary nature of the statute, the three court statements[19] below may reflect a minimalist or overly simplistic approach to the wide range of possible interpretations. The Flores court[20] explained that an Emergency protective order issued

---

[19] See Smith v. State, No. 02-19-00035-CR (Tex. App. Feb. 6, 2020) (concluding that even when narrowly focusing on a segment of a statute that ran a greater risk of unconstitutionality, the statute was nonetheless safe from facial challenge because some potential applications of that segment were constitutional)

[20] See Ex parte Flores, 130 S.W.3d 100, 107 (Tex. App.—El Paso 2003, pet. ref'd).

under Article 17.292 of the Texas Code of Criminal Procedure is constitutional despite the lack of a post arrest deprivation hearing, on grounds of the temporary nature of the order it provides. However,  Article 17.292 of the Texas Criminal Procedure does not preclude a trial court from issuing subsequent protective order(s) while the emergency order is in-effect, as-applied in plaintiff's case, which results in the negation of the temporary nature of the order it provides. Therefore, in every application of Article 17.292 of the Texas Code of Criminal Procedure, a court is not required to hold a post arrest hearing, and may issue serval protective orders against the arrestee, restricting him from returning home for a period of two or more years.

75.    The second statement points to the "Discretionary" language referenced in **paragraph 73**. As stated in Ex parte Flores, *"For one, when the trial court issues an emergency protective order, the statute does not require the trial court to preclude the arrestee from going near the victim's home. Rather, the statute simply provides that the trial court "may prohibit the arrested party from . . . going to or near the residence . . . of the person protected under the order."* Tex. Code Crim. Proc. Ann. art. 17.292(c) (emphasis added). The word "may" is a permissive term, and thus a restriction on approaching the victim's residence is just one of many measures that the trial court might, in its discretion, include or exclude as the situation demands". See Fienen v. State, 390 S.W.3d 328, 332 (Tex. Crim. App. 2012). However, the permissive term "may" does not

apply to a protective order issued against plaintiff under **Subsection (b)[21] of Article 17.292** of the Texas Code of Criminal Procedure. The subsection does not provide discretionary authority to a magistrate Judge, therefore a judge is required to issue a protective order as a matter of law. As a result, in every application of Article 17.292(b) of the Texas Criminal Procedure, due process is violated.

76.      The Court further reasoned that "*when the trial court does include such a restriction in its protective order, this will not always result in the arrestee's exclusion from his home, because not every arrestee lives with his victim. Article 17.292 makes an emergency protective order available when a defendant is arrested for trafficking of persons, continuous trafficking of persons, sexual assault, indecent assault, aggravated sexual assault, and stalking.* Tex. Code Crim. Proc. Ann. art. 17.292(a). 130 S.W.3d 100, 107 (Tex. App.—El Paso 2003, pet. ref'd)," further explaining that "*The same holds true if we were to limit our consideration to arrests for family violence, because while in many cases a family violence victim does live with the offender, there is nothing in the definition of family violence that strictly requires the offender to cohabitate with the victim. See Tex. Fam. Code Ann. § 71.004*". This is due to the vague and overbroad nature of the statute, as argued in **paragraph 58 and 59** of this complaint. A person accused of family violence after a disagreement or non-physical argument with his or her spouse should not

_____

[21] **17.292(b) (requiring** the magistrate to issue an order for emergency protection when the person is arrested for a family violence offense that also involves the use or exhibition of a deadly weapon)

be placed in the same category as a sex trafficker. It is offensive, overboard, and damages the reputation and standing of good men.

77.     HATEM reasserts that the lack of such safeguards violate his substantive and procedural due process rights protected by the United States Constitution, which requires a fair and just legal process that protects individual liberty and property interests, and that the State has not shown a compelling state interest in denying plaintiff a timely hearing, or a narrow tailoring of the protective order statutes to achieve such interest in the least restrictive manner. Therefore, plaintiff seeks a declaration that Article 17.292 of the Texas Criminal Procedure is unconstitutionally on its face, or in the alternative, as-applied and a preliminary injunction enjoining defendants from enforcing the statute in a manner inconsistent with due process requirements of the United States Constitution, or in a manner which would deny or restrict a defendant from accessing his property or children without clear evidence of an offense.

78.     Plaintiff alleges that League City Police Department, Galveston County, and the State of Texas have engaged in Due Process and Equal Protection violations of the Fifth and Fourteenth Amendments. Plaintiff seeks relief under 42 U.S.C. § 1983 and any other law that might provide a cause of action for the requested relief. The following relief is requested:

a.     Declare that Article 17.292 of the Texas Criminal Procedure is unconstitutional on its face or as-applied, as it violates the Due Process

42

and Equal Protection Clauses of the Fifth and Fourteenth Amendments of the United States Constitution.

b.  Declare defendants League City Police Department, Kathleen Mccumber, Kerri Foley, Galveston County, and the State of Texas have violated the due process protections guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution. Specifically, the defendants have deprived the plaintiff of his liberty and property without proper notice and a fair hearing.

c.  Declare defendants Matthew Skillern, Skillern Firm, Rawan Al-Najjar, Kerry Foley, Galveston County entered false and misleading statements falsely accusing   plaintiff of having a history of family violence, and cruelty, which has caused harm to the plaintiff's reputation.

d.  A preliminary injunction enjoining defendants from enforcing Article 17.292 of the Texas Criminal Procedure in a manner inconsistent with the due process requirements of the United States Constitution.

<u>**COUNT 6**</u>
**SELF-INCRIMINATION VIOLATION OF THE 5TH AMENDMENT**
**Texas Family Code §§ 85.001 and 85.002**
(Plaintiff against Galveston County and the State of Texas)

79.      Plaintiff realleges the facts set forth above.

80.      In this count, Plaintiff incorporates by reference the claims, allegations, and

provisions set forth in paragraphs 42 through 52 under Section 6 of this complaint.

81.      Chapter 85 of the Texas Family Code sets out the provisions for the

issuance of protective orders in Texas. The chapter outlines the procedures for obtaining

protective orders and the requirements that must be met in order for the court to issue

such orders. It also sets out the terms and conditions of protective orders and the penalties

for violating them. Under Texas Family Code § 85.001, the court is required to determine

whether *"family violence has occurred and is likely to occur in the future"*, at the close of

a hearing on an application for a protective order.

82.      As previously stated in Paragraph 50, the Plaintiff was ordered to appear for

a protective order hearing on January 14, 2021, and was informed that a warrant for his

arrest had been issued for allegedly violating the Emergency Protective Order issued

under Article 17.292 of the Texas Code of Criminal Procedure. Prior to the alleged

incident on December 23, 2020, HATEM had minimal engagement with the justice

system beyond receiving a traffic ticket once every several years and had no prior

criminal record. As a result, he did not fully understand what was occurring at the time.

Furthermore, the Skillern Firm sent dozens of emails containing the Plaintiff's private

writings and other privileged documents, such as a scanned image of a religious deed, which they intended to enter into evidence during the protective order proceeding. HATEM asked RAWAN to abstain from publishing his private work and also to return his laptop. He needed the device to enroll in a professional certification program at Rice University, which was aimed at enhancing his employment prospects. However, he was unable to register until September 2021 due to reasons explained in the following paragraph. All of this occurred a day prior to the hearing when HATEM and his father dropped off the retainer requested by the Law Office of Ted Nelson for his legal services. The Plaintiff was served notice of the hearing on Friday, January 8, 2021.

83.     Prior to the protective order hearing at Galveston County District Court on January 14, 2021, Plaintiff's attorney contacted Matthew Skillern, the attorney representing RAWAN's for the application for protective order, to discuss terms agreeable to the parties. Plaintiff indicated he would voluntarily accept some terms proposed by RAWAN, as long as all of his personal belongings were returned to him, including his laptop, eye glasses, I.D. cards, passport, and private writings. The parties reached a mutual agreement on the terms. Therefore, the protective order trial did not proceed. At the conclusion of the remote hearing on January 14, 2021, the judge stated that a written agreement would be drafted by the applicant's attorney, and the protective order would go into effect after both parties have signed the agreement. However, RAWAN failed to return HATEM's property, only returning some of his property 105 days after the

separation date on December 23, 2020. As a result, the agreement was never signed. The Court entered the protective order without plaintiff's signature.

84. Therefore, no hearing or trial was held, and no determination or findings were made by the court as to whether or not "family violence has occurred and is likely to occur in the future". Despite this fact, the protective order entered by the court alleged that *"family violence has occurred and that family violence is likely to occur in the future"*. The Court finds Respondent has continuously called, text messaged, harassed, and threatened Applicant. See Exhibit-4, **at ¶ 6 on Page 2**. HATEM denies calling, making, or sending any threatening text messages. Findings of family violence is not required under 85.002, *"If the court finds that a respondent violated a protective order by committing an act prohibited by the order as provided by Section 85.022, that the order was in effect at the time of the violation, and that the order has expired after the date that the violation occurred, the court, **without the necessity of making the findings described by Section 85.001(a)**, shall render a protective order as provided by Section 85.022 applying only to the respondent and may render a protective order as provided by **Section 85.021**"*. And the protective order entered on January 21, 2021 under cause number 20-FD-2694 assumed plaintiff would agree to Paragraph 4 of the order, which states, *"The Court finds that the parties have agreed in writing to the terms under **section 85.021** of the Texas Family Code set out below, and the Court approves that agreement"*.

85.    The paragraph above represents the initial of three different efforts made by the Court to have the Plaintiff sign a statement of guilt and acknowledge that he (a) committed "family violence," and (b) his violation of a protective order.

86.    HATEM seeks this relief under 42 U.S.C. § 1983 and any other law that might supply a cause of action for the requested relief. Plaintiff Requests that the Honorable Court:

    a.    Declare Texas Family Code § 85.001 facially unconstitutional;

    b.    Declare Texas Family Code § 85.001(a) compels testimonial information in violation of the the fifth and fourteenth amendments, and declare that Texas Family Family Code § 85.001, §85.002, § 85.021, and §85.022 may not be enforced in a manner inconsistent with the due process requirements of the U.S. Constitution. Further declare that the enforcement of Texas Family Code § 85.001, Texas Family Code §§ 85.002 and 85.021 by defendants Galveston County and the State of Texas, has resulted in violations of plaintiff's substantive and procedural due process rights. (A copy of the Protective Order issued against plaintiff is attached to this complaint as Exhibit-4.)

    c.    Declare Texas Family Code § 85.002, § 85.021, and §85.022 facially unconstitutional on the same grounds.

47

d.  Declare chapter 85 of the Texas Family Code may not be enforced in a manner consistent with the due process guaranteed by the United States Constitution.

e.  Enjoin the defendants from enforcing chapter 85 of the Texas Family Code in a manner not consistent with the due process guaranteed by the United States Constitution.

f.  Declare protective orders issued against plaintiff under the section at issue are invalid and void.

## COUNT 7
### DUE PROCESS VIOLATION OF U.S. CONST. AMEND. XIV, § 1
### Texas Family Code § 83.001
### (All Plaintiffs against all Defendants)

87.  Plaintiff realleges the facts set forth above.

88.  In this count, Plaintiff incorporates by reference the claims, allegations, and provisions set forth in paragraphs 42 through 52 under Section 6 of this complaint.

89.  Chapter 83 of the Texas Family Code allows a court to enter a temporary ex-parte order for the protection of an applicant or any other member of the family or household of the applicant, without further notice to the individual alleged to have committed family violence and without a hearing. The temporary ex parte order is valid for a period of up to 20 days and can be extended upon request or the court's own motion.

48

90.     On December 29, 2020, less than a week after the Emergency Protective Order was issued, RAWAN filed an Application for Protective Order and Temporary Ex-Parte Protective Order and Order Setting hearing. See **Exhibit A at ¶ 15; EX 2-2, and; EX 2-3.** On December 29, 2020 Daryl Zavesky issued a Complaint/ Probable Cause Affidavit, and warrant for HATEM's arrest and a ten thousand dollar bond, alleging HATEM violated the protective order by contacting his spouse. The Probable Cause Affidavit states in *"One of the last messages he 'Hatem` sent to ALNAJJAR that I observed read, "I want to die"*, and *"Im not afraid of anything"*[22]. See **Exhibit-7**, on Page 30. HATEM was charged with VIOL BOND PROTECTIVE ORDER under Texas Penal Code Section 25.07 (cause no. MD-0398265). At the time of filing this complaint, the charge was pending at the Galveston County Court at Law No.1.

91.     The Magistrate Protective order issued against plaintiff which went into effect on December 24, 2020 failed to instruct Rawan Al-Najjar to return the medication her husband had been taking at the time. See **Exhibit-1**. Rawan Al-Najjar, a physician was fully aware of the dangerous health risks associated with disrupting the medication, which has dangerous side-effects and withdrawal symptoms including Seizures, Depression, Anxiety, Irritability, Insomnia (only to name a few). HATEM was not able to sleep while he was detained for 31 hours and refused food, and began to suffer from withdrawal symptoms, which resulted in him not sleeping for over 72 hours after his release. Prior to January 5, 2021, he was not able to visit with his physician due to the

---

[22] See Exhibit A at ¶ 14

winter holiday. Apart from severe withdrawal symptoms, HATEM became ill shortly after his release, suffering from COVID-19 like symptoms. Furthermore, plaintiff alleges that prior to his arrest on December 23, 2020, HATEM and his spouse had not argued for over a year, and there was no reason to believe his marriage would end, or that he would be denied access to his home after a disagreement with his spouse. Therefore, HATEM did not make arrangements for such an event. HATEM was also worried about his wife and his newborn after he found his home raided by heavily armed SWAT upon returning from Starbucks on the night of his arrest. The League City Police Department did not allow HATEM to contact his spouse to check on them and find out what had happened.

92.     HATEM seeks this relief under 42 U.S.C. § 1983 and any other law that might supply a cause of action for the requested relief. Plaintiff Requests that the Honorable Court:

(a)     Declare Texas Family Code § 83.001 violates due process of the fourteenth amendment of the United States Constitution, and declare that Texas Family Code § 83.001 and may not be enforced in a manner consistent with the due process requirements of the United States Constitution.

(b)     Declare Texas Family Code § 83.001 is facially unconstitutional on the same grounds.

(c)     Enjoin the defendants from enforcing Texas Family Code § 83.001 in a manner not consistent with the due process guaranteed by the

United States Constitution, or Due Course of Law of the Texas

Constitution.

## COUNT 8

**DUE PROCESS VIOLATION OF U.S. CONST. AMEND. XIV, § 1**
(Plaintiff Against All Defendants)

**Texas Family Code §§ 84.001, 84.002, and § 84.004**

93.    Plaintiff realleges the facts set forth above.

94.    In this count, Plaintiff incorporates by reference the claims, allegations, and

provisions set forth in paragraphs 42 through 52 under Section 6 of this complaint.

95.    Chapter 84 of the Texas Family Code sets out the procedures for scheduling

and conducting a hearing on an application for a protective order in Texas. It requires the

court to set a date and time for the hearing on the filing of an application, and also

specifies that the Respondent must be given a minimum of **forty-eight hours'** notice of

the protective order hearing. Chapter 84 complements Chapters 85 of the Texas Family

Code, which provide for the issuance of protective orders.

96.    Plaintiff realleges the facts set forth in paragraph 50 herein. On Friday,

January 8, 2021, HATEM received an order to appear for a Protective Order hearing on

January 14, 2021, with only four business days to find an attorney and secure $3,500, the

standard rate for representation in a protective order hearing. HATEM consulted with

Attorney Tad Nelson and agreed to secure his legal services with the understanding that

he would postpone the hearing date to allow more time to prepare. **Exhibit A at ¶ 16.**

97.     On January 13, 2021, HATEM and his father visited the Law Office of Tad Nelson to drop off a deposit and sign a retainer agreement. Mr. Nelson informed HATEM that there was a warrant out for his arrest and handed him the retainer agreement without discussing it and left the office.

98.     On January 15, 2021 HATEM turned himself in, and was released from the Galveston County jail later that day on a $10,000 bond. RAWAN filed a petition for divorce on the same day. **Exhibit A at ¶ 20.** Protective Order was entered on January 21, 2021. See **Exhibit 4;** Exhibit A at ¶ 22-24.

99.     On November 3, 2022, RAWAN AL-NAJJAR filed for an application for a protective order at Galveston County Court at Law No. 2,  under cause no. 22-FD-2586, which was signed by District Judge KERRI FOLEY on November 28, 2022. The protective order superseded the unsigned protective order issued under cause no. 20FD-2694. See **Exhibit A at ¶ 43; Exhibit-6.**

### All Defendants are Entitled to Due Process, Except for Those in Protective Order Suits

100.    The **14th Amendment** states that *"no state . . . shall deprive any person of life, liberty or property without due process of law."* In the United States, parties in nearly all cases are entitled to due process and a meaningful trial. However, defendants in protective order suits are an exception to this rule. While parties in other cases, such as breach of contract, divorce, or other criminal cases, are afforded notice of the claims against them, adequate time to prepare for trial, and an opportunity to be heard, a

defendant in a protective order case is given little to no notice of trial, no meaningful time to prepare, and no meaningful opportunity to be heard. A Protective Order and a finding of family violence have serious implications just like a criminal case. The implications range from limiting a defendant's constitutional rights to causing detrimental social implications. Despite this, defendants in protective order cases are given little to no notice of trial. The rules for pleadings in a protective order case are very vague and do not require a petitioner to set forth in specific details the basis for the request.

101.    In the United States, Parties in a criminal case are afforded the highest level of protection because there are serious implications in depriving an individual of due process. Those implications include losing jobs, losing contact with family, losing reputation, losing freedoms, losing the right to vote, losing the right to bear arms, and even losing life. Protective orders and a finding of family violence also have serious implications such as depriving defendant of the right to remain in their homes and use their possessions[23],  parent and maintain custody of their children, right to free speech [24], right to bear arms[25], right to move freely[26] — just to name a few. But unlike other cases, a defendant in a protective order case is given no meaningful time to prepare for a hearing or trial. A meaningful defense against an accusation of family violence requires an

---

[23] See **Exhibit A**, at ¶ 42-44

[24] Free speech- **See Exhibit A**, at ¶ 42

[25] Firearm- **See Exhibit 4**, at Page 6-7.

[26] Move Freely - **See Exhibit A**, at ¶ 44; EX 8-M. Exhibit 4, at Page 3 ¶ k-l. See Exhibit 8-M

opportunity to obtain rebuttal evidence and the application of a standard of proof that accurately reflects the value of the rights that are at stake.

102.    Tex. Fam. Code § 84.001 requires a trial be held not later than the 14th day after the application is filed. In limited circumstances, a defendant will be afforded 20 days to prepare after the application is filed. Tex. Fam. Code § 84.002. However, the minimum amount of required notice afforded to a defendant in a protective order suit is only **forty-eight hours**' notice prior to final trial. Tex. Fam. Code § 84.004. These limitations do not allow for a meaningful trial. While the current Texas Rules of Civil Procedure have done away with the requirement of initial disclosures in protective order cases, the remaining discovery avenues are not prohibited: depositions; requests for production; requests for interrogatories; and requests for admissions. **Forty-eight hours'** notice prior to a protective order trial, as allowed by *Tex. Fam. Code § 84.004*, is not enough time to meaningfully strategize and prepare for a final trial. This is especially true for a final trial that can result in a final protective order that deprives the defendant access to his property and all contact with a child for two years or more. **See Exhibit A**, at ¶ 16-26 on Page 10-14.

103.    **Lack of Opportunity to be Heard:** a defendant in protective order case is not given a meaningful opportunity to be heard. Without time to adequately prepare for trial, a defendant cannot put forth a meaningful defense. A defendant is prevented from cross-examining witnesses and putting forth their own evidence as they are completely ambushed by the opposing party, who has complete control over the case. The negative

implications from being denied a meaningful opportunity to prepare for trial and be heard are amplified when a protective order is sought in a separate cause number by either local rule or policy, because the protective order is a final order and is subject to appeal. *See Tex. Fam. Code §81.009(a)*. The defendant is not entitled to request a rehearing or ongoing discovery as he would be if the protective order was filed in a divorce cause number where the protective order does not become a final order until the decree of divorce becomes a final order. *See Tex. Fam. Code § 81.009(b)*.

104.    The plaintiff reasserts that the legal provisions that permit protective orders and the procedures for obtaining, enforcing, and challenging them lack adequate safeguards against false, frivolous, or malicious claims, fail to demand clear and convincing evidence or findings of fact, and do not provide a meaningful hearing before an unbiased judge. Therefore, plaintiff seeks a declaratory judgment that the state statutes at issue are unconstitutional and a preliminary injunction enjoining their enforcement.

105.    HATEM seeks this relief under 42 U.S.C. § 1983 and any other law that might supply a cause of action for the requested relief. Plaintiff Requests that the Honorable Court:

> (a) Declare Texas Family Code §§ 84.001, 84.002, and § 84.004 violates due process of the fourteenth amendment of the United States Constitution, and declare that Texas Family Code §§ 84.001, 84.002, and § 84.004 may not be enforced in a manner consistent with the due process requirements of the United States Constitution.

(b) Declare Texas Family Code §§ 84.001, 84.002, and § 84.004 are facially unconstitutional on the same grounds.

(c) Enjoin the defendants from enforcing Texas Family Code §§ 84.001, 84.002, and § 84.004 in a manner not consistent with the due process guaranteed by the United States Constitution, or Due Course of Law of the Texas Constitution.

## COUNT- 9
### VIOLATION OF U.S. CONST. ART. I, § 9, CL. 3.
(Plaintiff against the State of Texas)

106. Plaintiff realleges the facts set forth above.

107. In this count, Plaintiff incorporates by reference the claims, allegations, and provisions set forth in paragraphs 41 through 105 under Section 6 of this complaint.

108. The "Statutes at Issue", which include one or more sections or subsections of Article 17.292 of the Texas Code of Criminal Procedure, and Texas Family Code Chapters 71, 83, 84, and 85, are laws passed by a the Texas State legislature or Congress.

109. The "Statutes at Issue" are legislative acts of the Texas State Legislature.

110. A Bill of Attainder also known as a Letter of Attainder, is a legislative act that declares a specific individual or group guilty of a crime without trial or due process. It essentially serves as a sentence imposed by the legislature, bypassing the normal judicial process. Letter of attainders are explicitly prohibited by the United States Constitution under Article I, Section 9, which states that "*No Bill of Attainder or ex post facto Law shall be passed*". This means that the legislative branch of government cannot

56

declare a person guilty of a crime and impose punishment without first giving the person a trial in a court of law. Stated differently, the requirement of due process of law is what distinguishes a Protective Order from a letter of attainder.

111.    Therefore, plaintiff seeks this relief under 42 U.S.C. § 1983 and any other law that might supply a cause of action for the requested relief. Plaintiff Requests that the Honorable Court:

a. Declare that the primary differentiator between a Protective Order issued in a manner consistent with the requirements of due process, and a Bill of Attainder, is the requirement of due process of law.

b. Declare that the procedures employed by Galveston County and the State of Texas for the issuance and enforcement of the protective order referred to in paragraphs 84 and 85 of this complaint are in violation of U.S. CONST. ART. I, § 9, CL. 3.

c. Declare Article 17.292 of the Texas Code of Criminal Procedure, Texas Family Code § 71.004(1), Texas Family Code § 83.001, Texas Family Code § 84.001, Texas Family Code § 84.002, Texas Family Code § 84.004, and Texas Family Code § 85.001 are legislative acts of the Texas State Legislature.

d. Declare Article 17.292 of the Texas Code of Criminal Procedure, Texas Family Code § 71.004(1), Texas Family Code § 83.001, Texas Family Code § 84.001, Texas Family Code § 84.002, Texas Family Code §

84.004, and Texas Family Code § 85.001 may not be enforced in a manner consistent with the due process requirements of the fifth and fourteenth amendment of the United States Constitution.

e.  Declare Article 17.292 of the Texas Code of Criminal Procedure, Texas Family Code § 71.004(1), Texas Family Code § 83.001, Texas Family Code § 84.001, Texas Family Code § 84.002, Texas Family Code § 84.004, and Texas Family Code § 85.001 violate U.S. CONST. ART. I, § 9, CL. 3.

f.  Issue a statement condemning Galveston County and the State of Texas for gross violations of the United States Constitution. The state's actions have resulted in harm, injury, and suffering to the Plaintiffs and those similarly situated, and a condemnation by this Court serves as a warning to the state and others that such actions will not be tolerated under our constitutional framework.

**COUNT 10**
**Violations of 42 U.S.C. § 1981**
(Plaintiff against All Defendants)

112.     Plaintiff reallege the facts set forth above.

113.     42 U.S.C. § 1981(a) guarantees individuals the same right to make and
enforce contracts without regard to race. See 42 U.S.C. § 1981(a) ("All persons within
the jurisdiction of the United States shall have the same right in every State and Territory
to make and enforce contracts . . . as is enjoyed by white citizens").

114.     42 U.S.C. § 1981(a) protects males and females of all races on the same
terms that it protects "underrepresented" racial minorities. See McDonald v. Santa Fe
Trail Transportation Co., 427 U.S. 273, 295 (1976) ("[T]he Act was meant, by its broad
terms, to proscribe discrimination in the making or enforcement of contracts against, or in
favor of, any race.").

115.     On November 24, 2016, Imam Elsayed Mohamed consummated the
marriage bond between Hatem Alghuti as groom and, Rawan Al-Najjar as bride, in
accordance with Islamic Legal Ordinance. However, they stopped cohabiting as spouses
around December 23, 2020, after an alleged incident of "domestic violence," which is
central to all the violations in the complaint Defendants are alleged to have committed.
The undisputed facts show that there is a valid agreement between the parties, the
certificate attached to this complaint as **Exhibit - 7, Page 60**, was signed by the bride,
groom, and witnessed by Tawfiq Yasin, Mohammad Issa, Ahmed Rashad Mohammad
pursuant to Chapter 2, Article 282 of the Islamic Criterion (which contains clauses that

govern contracts). Among other provisions, the clauses set the rules and procedures for witness requirements, competence, and the appointment of a legal instrument executor. It is important to note that this agreement is governed by the Islamic Criterion, which includes provisions related to marriage and divorce and has jurisdictional implications for matters concerning the marriage.

116.    At the time of their marriage, RAWAN had completed her residency and is currently working as a neonatal physician at Baylor College of Medicine. HATEM was a student at the University of Houston Clear Lake, and was engaged in Counter Violent Extremist Narrative (CVE) research. HATEM had advocated for community leaders to participate in CVE programs, and encouraged them to apply for federal grants provided by the US Bureau of Near Eastern Affairs. The screenshots on **Pages 39-52 of Exhibit-7** contain selected excerpts from reports prepared by HATEM, which served as the basis for an international forum hosted by Sheikh Abdullah bin Zayed Al Nahyan and chaired by Shaykh Abdallah bin Bayyah. These exhibits were filed at Galveston County Court under cause no. 21-FD-0102 in support of HATEM's request that RAWAN return materials related to Hatem's Religious Office (including all his CVE work). The excerpts provide the table of contents and summary of report topics, as well as the BusinessWire Press Release titled "Third Forum for Promoting Peace".  As the reports are confidential, the Exhibit was intended to provide sufficient information for inference, drawing parallels between the topics discussed during the forum and the report submitted by HATEM ten months prior.

117.    As previously stated in paragraph 83 and 84 of this complaint, after the protective order hearing on January 14, 2021, plaintiff agreed not to return to his residence until matters were resolved, as long as all of his personal belongings were returned to him. HATEM feared RAWAN would destroy or publish his private work, or enter additional false statements during the hearing. The parties arrived to an agreement, therefore, the protective order trial did not proceed. At the conclusion of the remote hearing on January 14, 2021, the judge stated that a written agreement would be drafted by the applicant's attorney, and the protective order would go into effect after both parties have signed the agreement. However, RAWAN failed to return HATEM's property, only returning some of his property 105 days after the separation date on December 23, 2020. As a result, the agreement was never signed. The Court entered the protective order without plaintiff's signature. Rawan's failure to return HATEM's property has caused significant disruption to his uncompensated work.

118.    On January 20, 2021, TAD NELSON, the attorney representing HATEM, informed him that his personal belongings, which RAWAN agreed to return, would not be returned until the divorce is finalized. It is noteworthy that the alleged incident occurred on December 23, 2020, and the scheduled three-day trial for the divorce under case number 21-FD-0102 was set for November 15, 2021, which is 47 weeks later. Refer to Email Correspondence in Exhibit -3, page 13 of 21.

> HATEM email to Nelson *"I received a call from your office this afternoon, as previously mentioned Rawan/ Attorney agreed to return all of my*

61

*property and the property of religious office including all checks, documents, and records. I will not review or sign protective order until they uphold what they agreed to and after I have verified everything has been accounted for. I reject any order that may go into effect without my signature"*.

NELSON response , *"That's not how it works Hatem. We have to look at the order for the sole reason of making sure it is consistent with the agreement entered on the record. The judge WILL enter that order on Friday. You getting your stuff will come through the divorce case"*.

119.    In February 2021, HATEM received a copy of the protective order entered by the court which included an attached terminated premarital agreement. HATEM was later served a copy of RAWAN's divorce petition around April 13, 2021. HATEM sought for a divorce in accordance with the Marital Agreement, which would allow the Imam to mediate. If mediation fails, a written agreement would finalize the divorce, and the court would enter the agreement. On November 15, 2021, about ten months after the court issued the Protective Order under cause no. 20-FD-2694, a hearing was scheduled for RAWAN's Motion for Summary Judgment, to declare the terminated pre-marital agreement, valid and enforceable. KERRI FOLEY refused to instruct RAWAN to return HATEM's property, which consisted of USB drives and files containing copies of the marital agreement and the amended terminated pre-marital agreement. Despite not meeting the necessary criteria to make such a request, KERRI FOLEY demanded that

HATEM provide evidence of the pre-marital agreement's termination. Plaintiff contends that a state with minimal connections to this case should not be able to materially enlarge a party's contractual obligations. Plaintiff also contends that Kerri Foley granted Rawan's motion to establish jurisdiction over the case based on a terminated premarital agreement that Hatem had no reason to anticipate would be used against him in the manner described in paragraphs 120 through 228 [27]. The decision to grant RAWAN's motion contributed to the majority of subsequent violations by the defendants.

120.    Prior to RAWAN's Motion for Summary Judgment hearing, HATEM made multiple requests for a hearing, which were ignored by the court. HATEM also requested that RAWAN provide financial assistance for him to seek services of a mental health professional, and other medical care. The requests were ignored or denied.

121.    Kerri Foley, the Galveston County District Judge, has exhibited a discriminatory attitude towards males or parties who cannot afford to retain the services of an attorney. Kerri Foley has refused to hear or acknowledge HATEM's **jurisdictional concerns**. In contrast, Kerri Foley has granted every request presented by RAWAN, while deliberately neglecting to provide HATEM a hearing prior to entering judgments. Additionally, Kerri Foley has refused to order RAWAN to return HATEM's personal belongings, despite it being two years since their separation date.

---

[27] U.S. Supreme Court, upon careful analysis, most of the decisions of this Court that struck down on due process grounds a state court's choice of forum law can be explained as attempts to prevent a State with a minimal contact with the litigation from materially enlarging the contractual obligations of one of the parties where that party had no reason to anticipate the possibility of such enlargement, see, e.g., Home Ins. Co. v. Dick, 281 U.S. 397 (1930); Hartford Accident & Indemnity Co. v. Delta & Pine Land Co., 292 U.S. 143 (1934); cf. John Hancock Mutual Life Ins. Co. v. Yates, 299 U.S. 178 (1936) (similar concern under Full Faith and Credit Clause, see Weintraub, supra, at 457-460).

**Violation of 42 U.S.C. § 1981**

122.    As explained above, the marriage bond was consummated in accordance with requirements set by Islamic legal ordinance. Accordingly, members of Hatem's household adopted Islamic Ordinance, social norms, and customs. There are four claims being asserted in this matter arising from Galveston County and the State of Texas' refusal to recognize the marital agreement, in violation of 42 U.S.C. § 1981.

**A.  First Claim—Conflict of Law and Violation of Article I, Section 10, Clause 1**

123.    An agreement entered under Islamic Legal Ordinance is governed by and construed in accordance with the Islamic Criterion, regardless of where the dispute occurs or where the parties are located, and without giving effect to conflicts of law. Therefore, the law specified in the contract will be applied to the contract and any disputes arising from it. The **'Conflicts of Law'** principle is well established in common law systems, including the United States. Article I, Section 10, Clause 1 (Contract Clause) also prohibits states from passing laws that impair the obligation of contracts.

124.    It is universally recognized by Islamic Councils that the private and religious affairs of an Islamic household cannot be made subject to a jurisdiction whose laws, norms, or practices are incompatible with its Islamic status. This requirement is compatible with the **'Ecclesiastical Abstention Doctrine'** practiced in U.S. Courts.

## B.  Second Claim—Jury and Witness Requirements of the Sixth Amendment

125.    The second claim is that an impartial judgment must account for the manner in which members of the household manage their affairs in accordance with their obligations under the marital contract. Thus, the plaintiff would not be given a fair trial in Texas because the State of Texas seeks to prosecute Hatem in Galveston County Court for an alleged non-violent incident occurring within the confines of his private residence without accounting for said obligations.

### i.    <u>Conflict with State Unconstitutional Witness Rules</u>

126.    In order for testimony to be valid in Islamic law, there has to be more than one witness. The rule is similar to practices of Roman law principle, **testis unus**[28], testis nullus, and **Judeo-Christian Old and New Testament** which states "***<u>One witness is not enough to convict anyone</u>*** accused of any crime or offense they may have committed. A matter must be established by *the testimony of two or three witnesses*"[29]. The **Qur'an** also referred to as the Islamic Criterion directs that one "***get two witnesses****, **out** of your own men, and if there are not two men, then a man and two women, such as ye **choose**, for witnesses, so that if one of them errs, the other can remind her.*"[30] This requirement of two witnesses was also accompanied by the requirement that the witnesses be sound of mind (adl') [31] and free from character defects. Article III, Section 3 of the **United States**

---

[28] "One witness is no witness."

[29] Holy Bible, supra note Deuteronomy 19:15

[30] QUR'AN, supra note, at 2:282 ¶ 5.

[31] In An Introduction to Islamic Law, Joseph Schacht stated that "[t]wo men or one man and two women, who possess the quality of 'adl, are required as witnesses (shahid, pl. shuhud) in a lawsuit." SCHACHT, supra note 7, at 193.

**Constitution** establishes the number of witnesses required to convict an individual of treason, "*No Person shall be convicted of Treason unless on the Testimony of **two Witnesses** to the same overt Act, or on Confession in open Court.*" The Sixth Amendment of the United States Constitution states "*to be confronted with the **witnesses** against him; to have compulsory process for obtaining witnesses in his favor*". Here, the requirement of more than one witness is implicitly established by the plural form "Witnesses". Lastly, Article I, Section 10 of the **Texas Constitution** ("Rights of Accused in Criminal Prosecutions"), also establishes that "*…He shall not be compelled to give evidence against himself and shall have the right of being heard by himself or counsel, or both, shall be confronted by the **witnesses** against him*".

127.    On July 5, 2022, Galveston County Court appointed Ricque Davis (referred herein as "DAVIS") to represent HATEM for charges bought against him related to the allegations of Domestic Violence. HATEM requested DAVIS arrange a hearing for HATEM to voice his concerns about religious freedom, and requested DAVIS file a motion to dismiss the charges on grounds of insufficient evidence. Additionally, HATEM requested the evidence on which the District Attorney is relying to pursue the charges. In response, DAVIS replied, "*The evidence in this case consists of 3 911 recordings, written statements from the parties involved, and body-cam videos the officers recorded at your home*". The written statements of the parties  are attached to this complaint, See 911 emergency response call transcripts (EX-7, pp. 1 through 4), Summary of witness (EX-7, pp. 5 through 12); Affidavit of Facts entered by RAWAN (EX-7, pp. 13-16), Rawan's

mother SAMIA (EX-7, pp. 17-20), LISA (EX-7, pp. 21-24), and Lisa's husband EDWARD (EX-7, pp. 25-28).

128.   HATEM pointed out that the only testimony in favor of the DA's allegations was provided by LISA, while the other three witness statements contradicted her account. Therefore, HATEM argued that the DA lacked probable cause or sufficient evidence to pursue the charges. DAVIS explained that the three statements which contradict the account made by LISA in her police call were considered "hearsay" in Texas and not admissible at trial. However, the police call transcripts are admissible, and not considered "hearsay" in Texas. DAVIS responded to HATEM's inquiry via SMS, explaining the other statements entered by Rawan, Samia, and Edward, "*are evidence that the state considers in evaluating they're case, but they are not admissible at trial except in very limited circumstances*". DAVIS further explained that TEXAS applies what is referred to as the "**Single Witness Rule** ", therefore LISA's testimony alone is enough to convict HATEM of the offense that the DA has accused him of committing. This is also despite the fact LISA also contradicts her own statements. Considering the circumstances surrounding the incident, which included the negative impact of the Covid lockdown on mental health, as acknowledged by the Galveston County Attorney with the rise in domestic violence cases, and the fact that HATEM was left destitute due to the actions taken by the DA, the lack of evidence, and the numerous rights already violated by the District Attorney's office, it would seem appropriate to drop the charges. However, instead of doing so, the DA chose to elevate the charges to a felony.

129.    The "**Single Witness Rule**" to convict the accused of a crime violates the requirements established by the <u>Six Amendment</u> of the United States Constitution, <u>Article I, Section 10</u> of the Texas Constitution, Holy Bible, <u>Deuteronomy 19:15</u> (King James Version), and last but not least <u>Chapter II, Article 282</u> of the Islamic Criterion. Plaintiff is unable to identify what law Galveston County or the State are applying. The plaintiff contends said practices applied by the State of Texas are vague and arbitrary.   A trial at Galveston County Court would not account for the norms and customs of the household, are alien to the Texas and United States Constitutions, religion, or the rules of his Household, and only serves to further the unjust incarceration of the innocent, as well as the mass incarceration witnessed following the passage of VAWA. Plaintiff does not agree to the jurisdiction of Texas state court.

### ii.    <u>Vague and Ambiguous Matters</u>

130.    Under Religious Precepts [32], Hatem is instructed to "**avoid doubtful matter**" to preserve "*himself in regard to his **religion** and his **honor***". Hatem is prohibited from granting jurisdiction to court's that authorize the issuance of court orders based on presumptions and speculation. Similar concept to 'unconstitutionally vague'. Galveston County Judges fail to declare their interest on the record, or alternatively, declare themselves as a disinterested third party. Both Jack Roady and Kerri Foley have received campaign contributions from gender-based political action committees.

---

[32] Muhammad al-Bukhari, Sahih al-Bukhari 52, Chp. 39 "The Book of Musaqah", Book 2, Hadith 45

68

131.    Accordingly, an Islamic Household may not allow an unaffiliated alien to subject the private or religious affairs of the household, which are inviolable under the Islamic Ordinance, to a jurisdiction whose laws, norms, or practices are incompatible with its status as an Islamic Household. Violating the above requirement constitutes a condemnable act, an act of **"Blasphemy"**, defined as attributing supreme authority to any entity or law other than, or not authorized by God, by asserting the legal or equitable status, rights, duties, powers, or privileges not authorized by the Islamic Criterion; and/or prohibiting a legal or equitable status, right, duty, power, or privilege authorized by the Islamic Criterion[33]. Plaintiff does not recognize practices applied at Galveston County and the State of Texas as legitimate.

**C.  Third Claim—Violations of Equal Protection and Religious Freedom**

132.    The third and fourth claim arise from the second claim in this matter, and relate to violations of the Equal Protection Clause of the fourteenth Amendment and the freedom of religion of the First Amendment. Unlike other 'civil' proceedings where injunctive relief is sought, a petitioner for a 'protective order' in Texas is guaranteed counsel by statute, as outlined in Tex. Fam. Code Ann. § 81.007(a) (Vernon 2000). However, since the State of Texas does not have a Public Defender, Galveston County appointed a DAVIS, a VAWA attorney to represent Hatem in cause no. MD0398254/265. HATEM does not accept being portrayed in a gender non-binary manner, as a matter of deeply held religious beliefs, and while VAWA was passed to protect women, no law or

---

[33] Jami' at-Tirmidhi 3095, Book 47, Hadith 147, Vol. 5, Book 44, Hadith 309

Public Defender protect men falsely accused of 'family violence' and persecution under VAWA or similar State Statutes.

**D. Mediation and Divorce Proceeding**

133.    On November 3, 2021, the court set a hearing on RAWAN's motion to waive mediation. During the hearing, HATEM informed KERRI FOLEY about the marital agreement and the requirement of mediation by the Imam. He also mentioned his financial difficulties, stating that he was living off of only one hundred and fifty dollars a month and could not afford to hire an attorney[34] to represent him. Therefore, if RAWAN did not comply with the marital agreement, she would need to pay his attorney fees and costs in advance to ensure a impartial proceedings. In contrast, RAWAN had earned between $200-$250k during the 2019-2020 fiscal year, and spent over twenty thousand dollars to hire the Skillern Firm for the divorce case (See **Exhibit-7, pp. 80-92**). However, HATEM's request was denied, due to allegations of "domestic violence". Near the end of the hearing, KERRI FOLEY announced that she would award attorney fees to HATEM after the trial. However, HATEM expressed concerns that the Skillern Firm was seeking a court determination of "Family Violence," which could be used against him in the two pending criminal cases. Additionally, HATEM did not have access to police reports or any evidence to defend himself, and the Skillern Firm later issued over ten subpoenas for individuals (Mainly police officers who were relying on testimony from

---

[34] See Exhibit-7, pp. 37 attachment. The attachment is a letter from Lone Star Legal Aid, Galveston Division (LEGAL AID APPLICATION NUMBER: 21-0890750), stating plaintiff is eligible for services, but due to lack of resources, Lone Star Legal Aid could not assist. This letter from was provided to the court to prove that plaintiff was qualified for legal assistance and was not able to afford an attorney.

LISA) to testify against him. In contrast, HATEM did not know how to file a motion properly. Therefore, awarding attorney fees after a trial would have no benefit, and is viewed as an attempt to deprive plaintiff of his rights. When the case was appealed in January of 2023, and transcripts of the hearing were requested, the court refused to provide them.

134.    Typically, in a divorce case where there is a significant difference in income between the parties involved, as is the case in the proceedings detailed herein, the party with less financial resources may open a shared credit line to cover legal expenses. However, doing so while the protection order is in place would be seen as a violation of the protection order. As detailed below Paragraph (n) on **Exhibit-4 (page-4)**, the Order issued under 20-FD-2694 prohibits HATEM TAWFIQ ALGHUTI from transferring, encumbering, or disposing of any property that is mutually owned or leased by the parties, except when it's in the ordinary course of business. This provision is also found in Tex. Fam. Code § 85.021(1)(B).

135.    Allegations of family violence were used by Judge Kerri Foley to deny plaintiff's right to enforce the requirements set forth in the Religious marital agreement between plaintiff and his former spouse. As a result, the court awarded RAWAN all property rights and custody over their child without a hearing or trial. In the divorce decree attached to this complaint as **Exhibit-5**, Kerri Foley also issued a statement accusing plaintiff of cruelty without any evidence to support the claim. She further awarded RAWAN $20,000. The provision relating to $20,000 is part of the Islamic

Marital Agreement, but is only awarded if HATEM initiated the divorce. Exhibit - 7, Page 60. As established by precedent in Chapter 38 of the Islamic Criterion, a Judge in Islam is required to hear both parties before making a judgment. Kerri Foley fails to meet this standard as she repeatedly rendered judgment based on allegations made by one party without hearing the accused.

136.   Before the hearing on RAWAN's Motion for Summary Judgment, HATEM confirmed with the Court Coordinator that his Jurisdictional Challenge would be heard first. This was affirmed by the coordinator. However, during the hearing, KERRI FOLEY did not adhere to the commitment. Additionally, the Plaintiff maintains that it is not appropriate to hold a hearing on a jurisdiction challenge during a trial, and that the Judge's attempt to do so was improper. Consequently, HATEM left before the trial began.

137.   Plaintiff seeks relief under 42 U.S.C. §1983, asserting Defendants violated his rights secured under **42 U.S.C. § 1981**, the Contract Clause of **Article I, Section 10, Clause 1** (see ¶ 123), the **First** (see ¶ 123-136), **Fourth** seized property by removing Plaintiff from title without impartial proceeding (see ¶ 133), **Fifth** amendment self-incrimination (see ¶ 133), **sixth** amendment witnesses requirement (see ¶ 126-129), and **Fourteenth** Amendment Equal Protection (see ¶ 132 and 133) to the United States Constitution. Defendants have refused to recognize the agreement entered into by Plaintiff, and have appointed a VAWA attorney to represent him, thereby imposing their gender non-binary ideology on him, in violation of his religious beliefs. The Plaintiff is alleging violations of the First Amendment's freedom of religion and the Fourth

Amendment's equal protection clause by Defendants, the United States Department of Justice, for failing to provide equal protection to all persons regardless of gender in a neutral manner and without imposing gender non-binary ideology as a precondition. Plaintiff further seeks a declaration that Tex. Fam. Code Ann. § 81.007(a) and Tex. Fam. Code § 85.021(1)(B) are unconstitutional in violation of the equal protection clause of the Fourteenth Amendment, see ¶ 132 and 134 respectively.

138.    Given the number of violations occurring, and the coordinated manner in which the violations are being committed, plaintiff is further alleging conspiracy to deprive Plaintiff of federally-protected rights in violation of 18 U.S.C. §§ 241 and 242. Defendants KERRI FOLEY, Galveston County, and JACK ROADY and the Galveston County Criminal District Attorney's office, State of Texas have continued to commit violations, some of which are included in paragraphs 139-228, in an attempt to overwhelm plaintiff. Plaintiff contends the tactic used is deliberate, and aims to deprive him of his civil liberties. The government does not need to prove that the defendant identified and intended harm to a specific victim or victims, and a § 241 violation can occur where the defendant interferes with the rights of a broad class of potential victims. Additionally, threatening conduct such as cross-burning may also violate § 241, subject to First Amendment limitations. The actions of the Defendants has discredited the States and the Justice system. To establish a violation of 18 U.S.C. § 241, the government must prove four elements:

a. A shared agreement between two or more individuals, **which can be established by proof of a tacit understanding;**

b. The purpose of the agreement was to injure, threaten, oppress, or intimidate, and the defendant specifically intended to do so;

c. The agreement was intended to affect any person in any state, territory, commonwealth, possession, or district;

d. The agreement was directed towards the free exercise or enjoyment of rights and privileges secured by the Constitution and federal law, and the defendant had the specific intent or particular purpose of interfering with the victim's enjoyment of the federal right.

139.   Therefore, plaintiff seeks relief under 42 U.S.C. § 1981 and 42 U.S.C. §

1983, or any other law that might supply a cause of action for the requested relief.

plaintiff requests that the Honorable Court:

a. Declare that Defendants' actions have violated Plaintiff's rights protected under 42 U.S.C. § 1981, the First Amendment freedom of religion, and the Fourth Amendment equal protection clause;

b. Declare Tex. Fam. Code Ann. § 81.007(a) and   Tex. Fam. Code § 85.021(1)(B) are unconstitutional in violation of due process and equal protection clause of the Fourteenth Amendment (see ¶ 132 and 134);

c. Enter a Declaration that Defendants, the State of Texas, Galveston County, the United States Department of Justice, OVW, KERRI FOLEY, JACK ROADY violated plaintiff's rights secured under **42 U.S.C. § 1981,** the Contract Clause of **Article I, Section 10, Clause 1** (see ¶ 123), the **First** (see ¶ 123-136), **Fourth** seized property by removing Plaintiff from title without impartial proceeding (see ¶ 133), **Fifth** amendment self-incrimination (see ¶ 133), **sixth** amendment witnesses requirement (see ¶ 126-129), and **Fourteenth** Amendment Equal Protection (see ¶ 132 and 133) to the United States Constitution.

d. Enter a Declaration that Defendants KERRI FOLEY, Galveston County, the State of Texas, JACK ROADY and the Galveston County

Criminal District Attorney's office, United States Department of Justice, OVW engaged in conspiracy to deprive Plaintiff of federally-protected rights in violation of 18 U.S.C. § 241 and § 242;

e.  Enter a Declaration that Article 17.292 of the Texas Code of Criminal Procedure, Texas Family Code § 71.004(1), Texas Family Code § 83.001, Texas Family Code § 84.001, Texas Family Code § 84.002, Texas Family Code § 84.004, and Texas Family Code Chapter 85 violate Article I, Section 10, Clause 1 (Contract Clause), and are unconstitutional;

f.  Declare Defendants KERRI FOLEY, GALVESTON COUNTY, JACK ROADY, and the STATE OF TEXAS violated plaintiff's right under Article I, Section 10, Clause 1 (Contract Clause);

g.  Enjoin Defendants from continuing to refuse to recognize Islamic agreements;

h.  Enjoin Defendants from imposing a gender non-binary view on Plaintiff;

i.  Declare VAWA is unconstitutional in violation of the the equal protection clause of the Fourteenth Amendment, and enjoin the United States from enforcing said statute in a manner which does not comply with the due process and equal protection requirements of the United States Constitution.

j.  Declare the Office on Violence Against Women ("OVW"), established under the Violence Against Women Act ("VAWA"), is unconstitutional as it violates the equal protection clause of the Fourteenth Amendment;

k.  Declare that the DOJ-OVW, Galveston County and the State of Texas are violating Title IX, 42 U.S.C. § 1981(a), and the Equal Protection Clause by discriminating in favor of women and gender-nonbinary ideologies in federal funding for protection against domestic violence or protection of the accused;

l.  The Plaintiff requests that this court preliminarily and permanently enjoin the Defendant, the State of Texas, from applying the Single Witness Rule to convict an accused person in any criminal proceeding,

and declare such application of the rule as unconstitutional. The State of Texas shall be prohibited from making a conviction relying solely on the testimony of one person, as this violates the rights guaranteed under the Sixth Amendment of the United States Constitution, Article I, Section 10 of the Texas Constitution. The court must intervene to protect the rights of the accused and prevent the State of Texas from violating the basic principles of justice and fair trial.

m.   Order the immediate release of all those currently incarcerated based solely on the testimony of one witness, and order a retrial for those individuals in compliance with the due process and requirements of the United States Constitution.

n.   Award Plaintiff compensatory and punitive damages for the harm caused by Defendants' actions; and

o.   Grant any other relief that the Court deems just and proper.

## COUNT- 11
### VIOLATIONS OF 18 U.S.C. § 241 AND 18 U.S.C. § 249
(Movant against Lisa Salazar)

140.   Movant realleges the facts set forth above.

141.   Movant was subject to a Emergency Protective Order following a **bias-motivated** false emergency call to the League City Police Department which resulted in SWAT raiding his home on December 23, 2020. According to police transcripts, LISA claims "*the man has an ak47, he was aiming it at his wife, **they are Muslim**, he's threatening to shoot her*". This allegation was not mentioned in any of the affidavits provided by the three other witnesses to the alleged incident. LISA called the police while inside of Hatem's home. In the emergency response call, LISA complained "*he's refusing to leave 'his house', she 'his wife' told him to leave, he will not leave*", see police

76

transcript. **EXHIBIT-7 on page 2** — line 21). LISA acknowledging in her statement that movant refused to leave because "*He said that he had nowhere else to go*" (see EXHIBIT-7, on page 22– Statement 14).

142.    The Operator questioned, "*are you there right now*?", LISA replied "*yes i am*", the operator appeared to be confused why LISA was calling the police inside of Hatem's house — if, according to LISA, he is a "*extremely violent Muslim*," with a AK-47 making threat's. The Operator asked "*is he holding the gun to you as well?*", with a confused expression evident by elongating "he"... Lisa replied, "*he was NOT holding the gun to me, but he was holding it to his wife, and when we walked in he put it down*". No other person present during the alleged incident witnessed this, LISA's husband Edward Salazar stated as soon as he walked through the front door he saw "Hatem was in the office sitting in the chair" (refer to **Exhibit-7**, on pp. 26—Statement 5). Operator... "*did he say anything about not letting y'all leave?*", Lisa replied NO. Operator once more asked, "*so is he kinda like keeping y'all where you are?*", Lisa again replied that was NOT the case.

143.    LISA SALAZAR has licenses as a marriage and family therapist and professional counselor in Texas. To obtain these licenses, the Texas State Board of Examiners of Marriage and Family Therapists and the **Texas State Board of Examiners of Professional Counselors** both require applicants to demonstrate their understanding of the Texas Family Code as part of the licensing process. This knowledge of the Texas Family Code is crucial for marriage and family therapist and professional counselor's to

serve their clients effectively, especially when dealing with family law and domestic relation issues, such as marriage, divorce, child custody, child support, and adoption. **Paragraph 141 and 142**, establishes LISA's motives to force HATEM out of his home in an unlawful manner. Furthermore, as established in this paragraph, LISA had knowledge of the requirements for the issuance of a protective order, and the corresponding deprivation of federally-protected rights associated with such instruments.

144.    During a hearing on HATEM's motion to dismiss charges filed in Galveston County Court at Law No.1 under cause no. MD0398254, Plaintiff presented clear evidence of the inconsistent statements, and conveyed his concerns about violations of his religious freedom. However, instead of addressing these concerns, the District Attorney's office retaliated by indicting the misdemeanor case under MD0396254 to a Felony charge. To make matters worse, I was arrested in court for the second time, on the morning of the initial hearing that was set for the motion to declare State Statutes unconstitutional and enjoin enforcement.

**COUNT- 12**
**VIOLATIONS OF EQUAL PROTECTION OF THE**
**FOURTEENTH AMENDMENT**
(Plaintiff Against U.S. Department of Justice, OVW; State of Texas; Galveston County;
Kerri Foley; Jack Roady)

145.    Plaintiff reallege the facts set forth above.

146.    Plaintiff hereby incorporates the allegations set forth in paragraphs 1 to 144, inclusive, as if set forth here in full, alleging a violation of rights secured under the Constitution and laws of the United States, including, but not limited to, the Equal

Protection Clause of the Fourteenth Amendment, or other applicable federal laws and regulations, and that the defendants DOJ, OVW, State of Texas, and Galveston County, have deprived the plaintiff of these rights while acting under the guise or color of law.

147.    According to the Justice Department's Office on Violence Against Women Official homepage[35], "Since its inception, OVW has awarded over $9 billion in grants and cooperative agreements" to implement VAWA. The Office on Violence Against Women (OVW) was created to implement the Violence Against Women Act (VAWA) and subsequent legislation. The activities of the grantees are categorized herein as either (A) educational, or (B) implementation/ enforcement.

148.    The United States Office on Violence Against Women was created following the Violence Against Women Act of 1994. According to the Department of Justice official website, the OVW was created in 1995 to administer "financial and technical assistance to communities across the country that are developing programs, policies, and practices aimed at ending domestic violence, dating violence, sexual assault, and stalking". Funding is "*awarded to local, state and tribal governments, courts, non-profit organizations, community-based organizations, secondary schools, institutions of higher education, and state and tribal coalitions. Grants are used to develop effective responses to violence against women through activities that include direct services, crisis*

---

[35] United States Department of Justice, Office on Violence Against Women, About the Office, https://www.justice.gov/ovw/about-office (last visited Apr. 10, 2023).

*intervention, transitional housing, legal assistance to victims, **court improvement, and training for law enforcement and courts***".

149.     According to the 2016 Biennial VAWA report to Congress, Grant funds were used to establish a "Domestic Violence Bureau", at the District Attorney's Office in Queens County, New York. The Bureau was comprised of 16 prosecutors and 3 paralegals who work solely on domestic violence cases. The plaintiff argues that gender-based discriminatory practices at Galveston County are compounded by other factors that encourage law enforcement, prosecutors, judges, and attorneys to issue protective orders, and pursue charges against males accused of "family violence". Such factors include incentives in the form of campaign contributions offered by gender-based political organizations, as well as federal grants available through the Office on Violence Against Women (OVW). Specifically, Defendants Jack Roady [36], the District Attorney prosecuting the plaintiff and Kerri Foley[37], the Judge presiding over the divorce case, have either made or accepted political contributions from gender-based PACs. The plaintiff is seeking injunctive relief, requesting that defendants OVW and DOJ be ordered

---

[36] See DA Office political contributions from gender-based political donors— Galveston Republican Women PAC (GPAC), Payees, Transparency USA (last visited March 10, 2023), https://www.transparencyusa.org/tx/committee/galveston-republican-women-pac-54591-gpac/payees?cycle=2018-election-cycle. See Exhibit A, paragraph 3 — Suspect Victim Dilemma. **Exhibit A at ¶ 46-49.**

[37] See Kerri Foley political contributions from gender-based political donors— Galveston Republican Women PAC (GPAC), Payees, Transparency USA (last visited March 10, 2023), https://www.transparencyusa.org/tx/payee/1497019?cycle=2018-election-cycle and https://www.transparencyusa.org/tx/payee/kerri-foley-campaign?cycle=2018-election-cycle . See Exhibit A, paragraph 3 —Suspect Victim Dilemma. **Exhibit A at ¶ 46-49.**

to disclose information to the plaintiff about their activities in Galveston County, as well as information about the recipient of OVW grants in Galveston Texas.

150.    In Texas, Protective Orders under the Texas Family Code are quasi-criminal. The Corpus Christi Court of Appeals states: "*We note that, unlike any other 'civil' proceeding in which injunctive relief is sought, a petitioner for a protective order is statutorily guaranteed counsel. See Tex. Fam. Code Ann. § 81.007(a) (Vernon 2000). Moreover, the statute specifically states that 'The county attorney or the criminal district attorney is the prosecuting attorney responsible for filing applications under this subtitle . . . .' Id. Examining the nature of a protective order, the method by which it is prosecuted, the sanctioned deprivations of liberty and property which are possible pursuant to such an order, and the possibility of incarceration, we believe the proceeding is quasi-criminal in its nature.*" Striedel v. Striedel, 15 S.W.3d 163, 167 fn. 2 (Tex. App. —Corpus Christi 2000, no pet.).

151.    As the paragraph above explains, despite the significant income disparity between HATEM and his former spouse, as further noted in Paragraph 133, and his inability to secure adequate representation against false allegations of domestic violence, RAWAN, as a petitioner for a protective order, is entitled to legal representation by statute. On November 3, 2022, RAWAN submitted a application for a third protective order (See Exhibit- 6), which was filed approximately two months prior to the date the protective order entered under 20-FD-2694 would have expired (assuming it was valid), with the aim of preventing HATEM from exercising his visitation rights with his

153.    Many of those targeted by VAWA, are victims of false domestic or sexual

violence allegations[38]. Between 2014-2016, out of a total of 125,812 cases disposed of by

prosecutors, 45% of the cases that were either found innocent by acquittal or dismissed

(victims of VAWA). Courts disposed of 6,424 criminal cases, of which 34% were found

innocent by acquittal or dismissed.

154.    Plaintiff asserts that those targeted by VAWA frequently experience

helplessness, shame, guilt, self-blame, humiliation; they may display symptoms of PTSD,

phobias, panic attacks, anxiety, and depression, and suffer from sleep or eating disorders

and drug or alcohol addiction. Victims typically lack financial security and employment

skills. Further, without housing after being forced out of their private residence following

an allegation of domestic violence , they are homeless. Accordingly, preventing victims

from returning to their homes can be a long and complex process that requires extensive

social support and significant personal determination.

### COUNT- 13
### VIOLATIONS OF THE FIFTH
### AND FOURTEENTH AMENDMENT DUE PROCESS
(Plaintiff Against Galveston County, Jack Roady, Kerri Foley, State of Texas)

155.    Plaintiff reallege the facts set forth above. Plaintiff alleges his rights to free

speech and due process were violated through the use of retaliatory and coercive tactics,

including the imposition of unconstitutional bond conditions, denying plaintiff equal

---

[38] Inferred data from the 2016 Biennial Report to Congress on the Effectiveness of Grant Programs Under the Violence Against Women Act, Executive Summary, pp. xi (U.S. Dep't of Justice, Office on Violence Against Women 2016), https://www.justice.gov/ovw/page/file/933886/download.

daughter. The application submitted on behalf of RAWAN by the RENKEN LAW FIRM stated that HATEM had violated a protective order and committed a felony.

152.    During the Protective Order hearing on November 28, 2022, the Respondent (HATEM) attempted to bring to the judge's attention a paragraph indicating that he would be convicted of a felony if the order were to be signed. HATEM subsequently requested a court-appointed attorney, to which Judge Baker responded that he was not entitled to an attorney in a civil suit and that HATEM had been given ten days' notice to hire one. When HATEM explained that he could not afford an attorney, the Judge read him his Miranda Rights. Consequently, HATEM declined to answer any questions posed by Dawn Renken, the attorney representing RAWAN and the protective order was issued. The proceedings were coordinated among Dawn Renken, the VAWA attorney appointed for HATEM in the criminal proceedings, and the Criminal District Attorney. Additionally, it is worth noting that the protective order was filed for SARAH, whom HATEM has not seen since she was only three weeks old (as of December 23, 2020). HATEM is unaware of what his daughter looks like as MATTHEW SKILLERN declined to provide HATEM with a photo, citing that it would be in violation of the protective order. The events preceding the hearing are outlined in **paragraphs 155 through 165.**

representation during a protective order hearing in paragraph 152, and coordinated activity to prevent the plaintiff from seeing his daughter.

156.    HATEM was apprehended on May 6, 2022, at Galveston County Court at Law No. 1, just before his scheduled initial court appearance for Cause No. MD-398254/265. The circumstances surrounding his arrest were unclear at the time, but Ricque Davis (referred herein as "DAVIS"), who was appointed by the court on July 5, 2022, to represent HATEM, later stated that the bail company had surrendered the bond, alleging that HATEM had stated that "he is not going to court". KERRI FOLLEY signed the "Affidavit of Surety to Surrender" attached herein as Exhibit-7, on pp. 66, without a hearing, despite HATEM denying the allegations that he stated he would not appear in court, and despite the fact he appeared. Regardless of HATEM's appearance in court and denial of the allegations, he was detained for approximately 132 hours and refused to eat during this time. On May 10, 2022, while HATEM was still in custody at the Galveston County Prison Facility, Kerri Foley presided over the second court hearing related to adding or violating bond conditions that did not exist when HATEM was arrested. Foley signed the bond conditions attached as Exhibit-7, on pp. 69-70.

157.    HATEM asked DAVIS to provide a copy of the Order signed by KERRI FOLEY on May 10, 2022, but DAVIS claimed to be unaware of such an order and insisted that the arrest was solely based on the affidavit of surrender (Exhibit-7, on pp. 66). Despite HATEM's inquiry about the order on October 10, 2022, DAVIS failed to provide a response. However, on October 25, 2022, DAVIS sent a message to HATEM

stating that the prosecutor became aware of an alleged "incident" that took place between HATEM and the alleged victim in the case and that he had to appear in court to discuss the conditions of his bond with the judge— less than 48 hours before the scheduled court appearance. Confused, HATEM responded that he did not understand what DAVIS was referring to. DAVIS explained that she was informed by the prosecutor that there was an incident between HATEM and his ex-wife, for which the police were called, but they could not arrest HATEM because the bond conditions did not have his signature on them. HATEM informed DAVIS that he is prepared to provide video surveillance footage to prove that he did not leave his residence for a week prior to the alleged incident DAVIS was referring to, and did not make contact with any person. See below.

> DAVIS : *"I was sent an email by the prosecutor saying that today she became aware of some incident that took place between you and the victim, which I'm assuming means your ex-wife, and that police were called but they couldn't arrest or do anything because the bond conditions in place right now do not have your signature on them. So now we have to get in front of the Judge to have the bond conditions reissued." (See Exhibit-7, on pp. 72).*

158.    HATEM made an appearance at Galveston County Court at Law No. 1 on October 27, 2022, for the hearing on "Additional Bond Conditions". However, due to the prosecutor's absence, the hearing was rescheduled for November 3, 2022. On November 3, 2022, DAVIS presented an order (Exhibit-7, on pp. 66) to HATEM, insisting the court

wanted the order signed. HATEM informed DAVIS that the order had already been signed by KERRI FOLEY over six months ago on May 10, 2022, and that signing such an order is a presumption of guilt, and violates his religious freedom as discussed in (Exhibit-7, on pp. 53-64), therefore, he refused to sign it.

159.    During the hearing on November 3, 2022, HATEM pointed out that the witnesses listed in the bond conditions lived just a few meters away from his home in League City. He argued that complying with the order would restrict his access to his property and child when he exercised his visitation rights. HATEM had been denied visitation and had not seen his child for almost two years. DAVIS mentioned that the order was also related to HATEM's social media posts about judicial corruption and political commentary. Despite this, HATEM insisted that he would continue to exercise his right to free speech.  Plaintiff further asserts herein, that the State may not criminally sanction the publication of truthful information about a matter of public concern. Smith v. Daily Mail Publishing Co., 443 U.S. 97 (1979). DAVIS stated she would no longer consider representing him if he didn't sign the conditions on Exhibit-7, on pp. 69-70. HATEM refused to sign so the hearing was scheduled for November 14, 2022.

160.    On November 3, 2022, RAWAN AL-NAJJAR's attorney filed an application for a protective order (cause no. 22-FD-2586) at Galveston County Court at Law No. 2, as shown in **Exhibit-7, page 75** (Galveston County Portal Information Page). This application was filed in addition to added bond conditions KERRI FOLEY wanted signed, and the pre-existing protective order entered under cause no. 20-FD-2694.

161.    As mentioned in the preceding paragraph 83, the protective order issued under cause no. 20-FD-2694 was never implemented due to RAWAN's failure to meet the agreed-upon terms of the proposed order on January 14, 2021. As shown in Exhibit 5, on page 8, the protective order was never signed.

162.    On the day of the hearing for the motion to add additional bond conditions, DAVIS stated that she was unprepared for the hearing and had filed a motion to withdraw. HATEM agreed to the motion. During the hearing, HATEM expressed that he had no knowledge of the hearing's contents and requested a reschedule to prepare adequately. However, the judge denied the request. The district attorney claimed during the hearing that HATEM was seeking to "access his daughter" due to the expiration of the protective order in less than two months from the hearing date. The DA presented a revised Bond Order (Exhibit-7, on pp. 78) that included provisions similar to a letter of attainer. These provisions compelled HATEM to sign statements such as "*DEFENDANT will not commit an act in furtherance of Assault against the Complainant or the Witnesses*" and "*DEFENDANT will not commit any further law violations.*" **The misdemeanor Charge under cause number MD0398254 was for allegations that a verbal threat was made against a family member, it was NOT for assault. (See paragraph 167 below).** Furthermore, posting non-threatening social media commentary about government corruption, and how HATEM feels his life is being threatened does not satisfy the definition of assault as alleged in the protective order. Despite the judge entering the bond conditions, HATEM refused to sign them, as per Exhibit-7, on pp. 78.

163.    On or around Friday, November 18, 2022, Galveston County Court served documents to HATEM's residence in Harris County, ordering him to appear for yet another protective order hearing on November 28, 2022. HATEM sent a response to the PO, which was returned by the court with a note stating that the response needs to be filed as a separate case.

164.    At the beginning of the hearing, HATEM attempted to speak, but was repeatedly interrupted and prevented from doing so. HATEM wanted to point out that the copy of the proposed protective order (served on his door step) in which the judge is being requested to sign, contained false allegations of a felony. If signed, he would essentially be charged with a crime without a fair trial or proper hearing.

165.    Therefore HATEM requested either the court appoint an attorney to represent him, or to reset the hearing so that he could hire an attorney. The judge responded that HATEM had ten days to find an attorney. It should be noted that four of those days were weekends and two of those days were holidays.

166.    During the protective order hearing, RAWAN AL-NAJJAR's legal counsel argued that HATEM was attempting to gain access to his child, the same claim made by the District Attorney during the hearing on additional bond conditions. However, during the bond hearing on November 14, 2022, HATEM had made it clear that he did not plan to visit his daughter until after the date RAWAN assumed the protective order issued under 20-FD2694 was set to expire, which was towards the end of January 2023.

167.    By reference, plaintiff incorporates paragraph 144 and 162 herein. Plaintiff was arrested for the fourth time while in court prior to a hearing on HATEM's "Motion to Declare State Statute Unconstitutional and Enjoin Enforcement" set for hearing on **March 15, 2023**. Prior to this event, HATEM filed a motion on 2/14/2023 to dismiss the charges under Cause No. MD0398254/265 at Galveston County Court at Law No. 1, citing the arguments below. During the hearing on the motion to dismiss charges held on February 16, 2023, the assistant DA Kimberly Bronson threatened to indict the misdemeanor case under MD0398254 as a felony assault charge. The following arguments were made by HATEM:

a.    Insufficient Evidence: The statement of LISA SALAZAR, in which the State is relying on to prosecute the case is inconsistent with the statements of the other three witnesses, EDWARD SALAZAR, RAWAN AL-NAJJAR, and SAMIA MARMASH. The inconsistencies in LISA SALAZAR's testimony calls into question the credibility of her statement and renders it insufficient to support a conviction. See **paragraph 141 and 142** herein. In the first paragraph of the motion to dismiss, plaintiff argued "*The prosecution has failed to provide sufficient evidence to establish probable cause for the charges against the Defendant, relying solely on the unreliable statement of the complaining witness. The witness has shown bias by referring to the defendant as a "Muslim Extremist." Conviction may*

*not be based on the uncorroborated testimony of a single witness who is biased or has a motive to fabricate, as is the case with the named witness".*

b.  Single Witness Rule: The "Single Witness Rule" applied by the court conflicts with the requirements set forth in Judeo-Christian and Islamic legal ordinance that a matter must be established by the testimony of two or three witnesses.

c.  The third argument in the motion to dismiss read *"Religious Freedom: Tex. Civ. Prac. & Rem. Code § 110.003, which provides that a government agency may not substantially burden a person's free exercise of religion, unless the application of the burden to the person furthers a compelling governmental interest and is the least restrictive means of furthering that interest. The defense has refused to enter a plea or acknowledge any court jurisdiction or order which would compel him to violate one or more religious precepts".*

d.  The fourth argument read "Respect for Private Household: A member of an Islamic household may not allow an unaffiliated alien to subject their private or religious affairs to a jurisdiction whose laws, norms, or practices are incompatible with their status as an Islamic Household. The Galveston County Court has failed to apply standards that account for the norms and customs of the household in its prosecution of the defendant, which is based on allegations made within the confines of his private residence."

168.    The plaintiff further stated that IF the charges against him, filed under cause no. MD0398265 — alleging he violated the Magistrate Emergency Protective Order, were proven true, it would be a consequence of the county's gross negligence, "*Movant respectfully moves for the dismissal of the alleged violation of the Emergency Protective Order on the following grounds: The Magistrate Emergency Protective Order (EPO) issued against the Defendant on December 24, 2020 by The Municipal Court of League City, failed to instruct his former spouse Rawan Al-Najjar, to return the medication the [Movant/ Defendant] had been taking at the time. As a physician, Rawan Al-Najjar was fully aware of the dangerous health risks associated with disrupting the medication, which had dangerous side-effects and withdrawal symptoms, including but not limited to suicidal thoughts, seizures, depression, anxiety, irritability, and insomnia. The Defendant did not sleep while he was detained for approximately thirty-one hours, he refused food, and began to suffer from withdrawal symptoms, resulting in his inability to sleep for over seventy-two hours after his release. Sleep deprivation amplifies the withdrawal symptoms and prolonged lack of sleep can lead to a condition known as sleep deprivation psychosis, characterized by hallucinations, delusions, and disordered thinking, which can be similar to those of a psychotic episode. The Plaintiff was not able to visit with his physician prior to January 5, 2021 due to the winter holiday. It may be consistent with statements made by Mr. Zavesky"... "The charges against the Defendant must be dismissed because they are not backed by enough evidence to prove the Defendant's liability for the County's negligence*".

169.    Plaintiff alleges violations of rights secured under the Constitution and laws of the United States were committed, including, but not limited to, the Due Process and Equal Protection Clause of the Fourteenth Amendment (See ¶ 152, 164, 165), Sixth Amendment Right to Effective Counsel (See ¶ 156 - 161), First Amendment right to free speech, violations of the freedom of the press (See ¶ 162), and free exercise of religion, or other applicable federal laws and regulations. The plaintiff asserts that the DOJ and OVW violated his right to Equal Protection as guaranteed by the Fourteenth Amendment (refer to ¶ 147-152). Plaintiff further alleges that the State of Texas and Galveston County infringed upon his right to Due Process and Equal Protection as secured under the Fifth and Fourteenth Amendments (refer to ¶ 152, 164, 165), his Sixth Amendment Right to Effective Counsel (refer to ¶ 156-161), as well as his First Amendment right to Freedom of Speech and Press (refer to ¶ 162). Galveston County and the State of Texas are also accused of committing Malicious Prosecution (refer to ¶ 167) and Negligence (refer to ¶ 168). Plaintiff alleges Defendants have deprived him of these rights while acting under the guise or color of law. According, plaintiff requests:

- An injunction to prevent the defendants from engaging in discriminatory practices that violate the plaintiff's constitutional rights.
- An order requiring the defendants to provide the plaintiff with all relevant information related to the alleged discriminatory practices, including any federal grants awarded to Galveston County and the recipient of OVW grants in Galveston, Texas.
- A declaration that the actions of the defendants violated the plaintiff's constitutional rights.
- Monetary damages for any harm caused to the plaintiff as a result of the defendants' actions.

## COUNT 14
### MALICIOUS PROSECUTION, UNDULY BURDENSOME, AND VIOLATION OF SIXTH AMENDMENT RIGHT TO EFFECTIVE COUNSEL
(Plaintiff Against U.S. Department of Justice, OVW; State of Texas; Galveston County; Kerri Foley; Jack Roady)

170.     Plaintiff States repeat and re-allege the allegations in paragraphs 1-169 as if set forth fully herein.

171.     Plaintiff further incorporates the allegations set forth in **paragraphs 112 through 169**, inclusive, as if set forth here in full, alleging a violation of rights secured under the Constitution and laws of the United States, including but not limited to, the **Sixth Amendment** right to effective counsel, or other applicable federal laws and regulations, and that the defendants DOJ, OVW, State of Texas and Galveston County, have deprived the plaintiff of these rights while acting under the guise or color of law.

172.     Galveston County has a history of racial and wealth-based discrimination, "Under binding circuit precedent, Galveston County's Policy is invidious wealth-based discrimination that violates the Constitution. ODonnell, 882 F.3d at 543–44 (quoting Rainwater, 572 F.2d at 1056–57). Plaintiff alleges that Galveston County Lawyers fear retaliation from judges. On January 21, 2021, Tad Nelson, Attorney retained by HATEM during the protective order hearing states,"The order that was created was done correct. I fixed many parts to get it in line with the judge's wishes". See Exhibit-3 (Page 17 of 23). Between February-March 2023, HATEM had consultations with several attorneys about bringing suit against Galveston County. One of the responses he received from the law office of "Mark Diaz" is that HATEM may need to hire an attorney who does not have

their primary business in Galveston, explaining "it wouldn't be fair to our clients", implying it will result in retaliation against their clients, in completely unrelated to cases. In March 2018, Andrew "Drew" Willey, a Houston-based attorney, and Jack Ewing, judge of Galveston County Court at Law No. 3, agreed to a settlement of a lawsuit filed against the Galveston County judge who was recorded saying the lawyer "overworks" cases on behalf of poor clients. The settlement was unanimously authorized by Galveston County commissioners and approved by U.S. District Judge George Hanks. The lawsuit sought to challenge the county's system of appointing attorneys for poor people charged with crimes, a process that judges control under Texas law. Pressure to resolve cases based on expediency rather than justice, prevent a lawyers from advocating too vigorously for their clients for fear of retaliation from judges eager to clear their dockets. Other cases proving mistreatment of the poor include Booth v Galveston County.

173.    Prior to court's appointment of DAVIS to represent the Plaintiff, the Court appointed Tom Dickens as counsel for HATEM. Dickens sought for HATEM to enter into a plea and spend time in prison despite not having committing any of the crimes being alleged.

174.    Plaintiff alleges that he cannot attain effective counsel in Galveston County, regardless of whether they are appointed or retained, and the court has repeatedly attempted to force him to acknowledge guilt of the crimes being alleged by signing bond conditions which contain language that presumes guilt, in further violation of the **fifth amendment**. The issue presented in paragraph 172 and 173 is in addition to the argument

presented in paragraph 167(d), that *"The Galveston County Court has failed to apply standards that account for the norms and customs of the household in its prosecution of the 'defendant', which is based on allegations made within the confines of his private residence."* The bond conditions further violate plaintiffs first amendment right to free speech.

175.    Plaintiff asserts that the defendants, including the State of Texas, Galveston County, their prosecutors, judges, and agents, have violated the plaintiffs Eighth Amendment rights under the US Constitution by subjecting him to cruel and unusual punishment. The plaintiff's allegations and facts demonstrate that these defendants aim to overwhelm individuals accused of committing family violence. If the accused refuses to confess "in line with the judge's wishes," he faces harassment, multiple arrests, restrictions on entering his residence or seeing his children, removal of his name from the title of his private residence, false charges, and denial of any defense, whether retained or appointed. These actions also violate the plaintiff's substantive and procedural due process rights under the Fifth and Fourteenth Amendments and are unduly burdensome and cruel.

**COUNT-15**
**VIOLATION OF FIRST AMENDMENT RIGHT FOR A REDRESS OF GRIEVANCE AND FREEDOM OF SPEECH**
(Plaintiff against Defendants United States Department of Justice, OVW, State of Texas, Galveston County, Jack Roady, and Kerry Foley

176.    Plaintiff reallege the facts set forth above.

177.    Plaintiff further incorporates the allegations set forth in **paragraphs 144,**

**169, 174 and 175**, inclusive, as if set forth here in full, alleging a violation of rights secured under the Constitution and laws of the United States, including, but not limited to, the First Amendment right for a redress of grievances, right to free speech, violations of the freedom of the press, and free exercise of religion, and that the defendants DOJ, OVW, State of Texas, Galveston County, Jack Roady, and Kerry Foley, have deprived the plaintiff of these rights while acting under the guise or color of law.

178.    The right to petition the government for a redress of grievances is protected under the First Amendment to the United States Constitution. It guarantees the right of individuals to bring their complaints to the attention of government officials and seek a remedy for any perceived wrongs or injustices, *"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances"*.

179.    Plaintiff further asserts herein, that the State may not criminally sanction the publication of truthful information about a matter of public concern. Smith v. Daily Mail Publishing Co., 443 U.S. 97 (1979).

180.    Violations of first amendment for a redress of grievances— During the hearing on motion to dismiss charges, Plaintiff presented clear evidence of the inconsistent statements made by his accuser (LISA), and conveyed his concerns about violations of his religious freedom. However, instead of addressing these concerns, the District Attorney's office retaliated by indicting the misdemeanor charges as a felony

under cause no. MD0396254. HATEM was arrested in court, the second time being arrested in court, on the morning of the initial hearing that was set for the "motion to declare State Statutes unconstitutional and enjoin enforcement". The the Motion, HATEM sought a restraining order to restrain defendants from further harassing him.

## COUNT 16
### Intentional Infliction of Emotional Distress and Defamation
(Plaintiff Against All Defendants)

181.   The Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

    a.   The defendants engaged in extreme and outrageous conduct that was intended to cause, or recklessly disregarded the likelihood of causing, severe emotional distress to the Plaintiff.

    b.   The defendants' conduct was extreme and outrageous, beyond all possible bounds of decency, and is considered utterly intolerable in a civilized community.

    c.   As a direct and proximate result of the defendants' extreme and outrageous conduct, the Plaintiff has suffered severe emotional distress, which has caused significant harm to his physical, emotional, and mental health.

    d.   The Plaintiff brings this claim for intentional infliction of emotional distress under 42 USC §1983 or any law that may supply a cause.

e.    The Plaintiff has standing to assert this count as he has suffered harm as a result of the defendants' intentional and outrageous conduct.

f.    Matthew Skillern and Rawan Al-Najjar consistently made false and misleading statements throughout the divorce proceedings. Specifically, in paragraph 72, Defendant Skillern and Skillern Firm consistently entered misleading statements which harmed plaintiff.

g.    Defendant Galveston County and the State of Texas violated plaintiffs privacy by allowing for a third party website, Busted NewsPaper, to post his mugshots online without permission. The posting ranked first on Google when Plaintiff's name was searched, and were posted on social media in order to humiliate him. The false and defamatory statements accused the Plaintiff of committing crimes based on the inconsistent statements made by LISA (see paragraph 141). HATEM has not been able to secure employment since completing his professional certification at Rice University. LISA's false statements have caused harm to Plaintiff's reputation and character.Defendant. LISA's false statements were made with knowledge that they were false or with reckless disregard for their truth or falsity. Defendant, LISA's false statements were made with the intent to harm Plaintiff's reputation and character.

h.  These false and defamatory statements were made with malice and with the intent to harm the Plaintiff's reputation and relationships. As a result of these false and defamatory statements, the Plaintiff has suffered harm to his reputation, emotional distress, and financial loss.

i.  Plaintiff is entitled to relief under the common law and state statutes, including damages for defamation, libel, slander, and false light. Plaintiff also seeks injunctive relief to prevent Defendant from continuing to make false and defamatory statements about Plaintiff.

## COUNT- 17
### VIOLATIONS OF TITLE IX
(Plaintiff Against U.S. Department of Justice, OVW;
State of Texas; Galveston County; Kerri Foley; Jack Roady)

182.  Plaintiffs reallege the facts set forth above.

183.  Plaintiff hereby incorporates the allegations set forth in paragraphs 108 through 167, inclusive, as if set forth here in full, alleging a violation of rights secured under the Constitution and laws of the United States, including, but not limited to, the Equal Protection Clause of the Fourteenth Amendment, or other applicable federal laws and regulations, and that the defendants DOJ, OVW, State of Texas, and Galveston County,  have deprived the plaintiff of these rights while acting under the guise or color of law.

184.     Title IX of the Education Amendments of 1972, 20 U.S.C. §1681

IX), is a comprehensive federal law that **prohibits discrimination on the basis of sex in any federally funded education program or activity**. The principal objective of Title IX is to avoid the use of federal money to support sex discrimination in education programs and to provide individual citizens effective protection against those practices[39].

## A.  OVW EDUCATION PROGRAMS

185.     The 2016 Biennial Report to Congress[40] on the Effectiveness of Grant Programs Under explains that VaWa-funded educational programs on '**family violence**' related offenses reached "more than 1.3 million individuals", including 256,189 elementary, middle or high school students, 525,715 college students, and 603,241 other youth, professionals, and community members.

186.     **OVW funded activities above are  a "program or activity" that "receive Federal financial assistance" within the meaning of Title IX.**

187.     As the names suggest, VAWA" and the office administering the activities OVW are gender focused, providing funding for educational activities aimed at promoting the notion that one particular gender is victimized, while the other gender, namely males, are the perpetrators. This inference is supported by the statement on page - xv of the Executive Summary that states "*some promising approaches to this work*

---

[39] United States Department of Justice, Civil Rights Division, Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq. (2018), https://www.justice.gov/crt/fcs/TitleIX-SexDiscrimination.

[40] The 2016 Biennial Report to Congress on the Effectiveness of Grant Programs Under the Violence Against Women Act, Executive Summary, p. XV (U.S. Dep't of Justice, Office on Violence Against Women 2016), https://www.justice.gov/ovw/page/file/933886/download.

*involve engaging men and boys in advocacy and **outreach***". The office outreach is also aimed at immigrant communities, <u>which mark high on the suspect list</u> "Grantees are encouraged and in many cases are required—to conduct **culturally and linguistically specific outreach to these populations and to develop policies**, practices, and resources that ensure these victims can access services and that their **abusers are held accountable**".

188.    The **offenders** referenced in the paragraph above are **male**, and according to the 2016 VAWA report to Congress are disproportionately black, hispanic, and other people of color[41]. In response to Violence Against Women Reauthorization Act of 2013, Janice Shaw Crouse, who is a senior fellow of Concerned Women for America's Beverly LaHaye Institute, as well as a presidential speechwriter for the first President Bush, explains[42], *"there is no escaping the negative aspects of this act. The bill is a boondoggle for feminist groups (follow the money) and the funds go to "re-train" judges and other officials in the details of "women's rights"*. Janice Shaw Crouse further stated *"Feminists like to repeat the mantra that there is a "war against women," but when women can routinely claim nebulous "psychological harm" and keep a man out of his home, away from his children, possibly losing his job and ruining his reputation, there is **more of a war against men** than against women"*.

---

[41] U.S. Dep't of Justice, Office on Violence Against Women. "2016 Biennial Report to Congress on the Effectiveness of Grant Programs Under the Violence Against Women Act." 2016, Executive Summary xiv. https://www.justice.gov/ovw/page/file/933886/download.

[42] Crouse, Janice Shaw. "The Violence Against Women Act Should Outrage Decent People." U.S. News & World Report L.P., 19 March 2012, https://www.usnews.com/debate-club/should-the-violence-against-women-act-be-reauthorized/the-violence-against-women-act-should- outrage-decent-people

189.    The following table depicts findings on alleged "victims" of domestic violence categorized by ethnicity. The information is found on the Executive Summary page xiv of the VAWA report  submitted to Congress.

| Category | Average Number of Victims Served During Each 6-Month Reporting Period |
|---|---|
| American Indians/ Alaska Native | 10,185 |
| Asian | 4,830 |
| Black/ African American | 21,210 |
| Latin/ Hispanic | 23,654 |
| Native Hawaiian/ Other Pacific Islander | 539 |
| Disabilities | 8,436 |
| Immigrant/ Refugee/ Asylum Seekers | 17,812 |
| Limited English Proficiency | 17,826 |

U.S. Dep't of Justice, OVW. "2016 Biennial Report to Congress". Executive Summary xiv

## COUNT- 18

### VIOLATION OF 18 U.S.C. § 241 AND 18 U.S.C. § 242
(Joseph Biden, United States Department of Justice, Office on Violence Against Women, the State of Texas, Galveston County, League City Police Department, Dwight D. Sullivan, Kerri Foley, Jack Roady, Kathleen Mccumber)

190.    Plaintiff reallege the facts set forth above.

191.    Federal Law prohibits conspiracy to deprive another of federally-protected rights under 18 U.S.C. § 241; and willful deprivation of federally-protected rights under color of law under 18 U.S.C. § 242.

192.    Plaintiff States repeat and re-allege the allegations in paragraphs 1-189 as if set forth fully herein.

## B.  IMPLEMENTATION / ENFORCEMENT

193.    The United States Office on Violence Against Women was created in 1995 and has since administered billions of dollars in grants, aimed at ending "domestic violence". Funding is "*awarded to local, state and tribal governments, courts, non-profit organizations, community-based organizations, secondary schools, institutions of higher education, and state and tribal coalitions. Grants are used to develop effective responses to violence against women through activities that include direct services, crisis intervention, transitional housing, legal assistance to victims, court improvement, and training for law enforcement and courts*".

### COORDINATED RESPONSE

194.    OVW implementation involves coordination between two or more persons, the office has forged partnerships among state and local government, police, prosecutors, judges, and victim advocates, to enable "*communities to hold offenders accountable for their violence*". VAWA grantees are required to work with community partners to insure a coordinated community response (CCR)[43] to domestic violence. The **offenders** referenced in this paragraph are **male**, and according to the 2016 VAWA report to Congress are disproportionately black, hispanic, and other people of color. In the 2020 Biennial Report to Congress, the report states "*OVW's grant-making and technical*

---

[43] U.S. Dep't of Justice, OVW. "2016 Biennial Report to Congress". Executive Summary xiii

*assistance account for the unique ways—and in some cases **disproportionate rates at which**—these victimizations affect underserved and vulnerable populations*"[44].

195.    The plaintiff in this case alleges that he was subjected to discrimination based on his gender and national origin or religious beliefs by the defendants, which is a violation of his First Amendment Rights, Equal Protection and Due Process rights under the 14th Amendment of the U.S. Constitution.

196.    The Galveston County Court, like many other courts across the United States, routinely violates the Equal Protection Clause of the Fourteenth Amendment by enforcing protective orders in a discriminatory manner. This practice particularly affects the poor[45] and people of color[46] in cases, especially where a male is alleged to have committed "family violence". Galveston County has a history of discrimination against these groups[47]. Plaintiff alleges Galveston County has engaged in discriminatory practices under the guise of law, specifically, laws pertaining to "family violence", and deprived plaintiff of constitutionally protected rights through the arbitrary and discriminatory application of protective order statutes. According to the VAWA report

---

[44] The 2020 Biennial Report to Congress on the Effectiveness of Grant Programs Under the Violence Against Women Act, Executive Summary, pp. X (U.S. Dep't of Justice, Office on Violence Against Women 2020). https://www.justice.gov/ovw/page/file/1525621/download

[45] Booth v. Galveston County, Civil Action No. 18-cv-00104, 3:18-cv-00104 Document 3-1 (TXSD 2018), p. 18.

[46] The 2016 Biennial Report to Congress on the Effectiveness of Grant Programs Under the Violence Against Women Act, Executive Summary, p. XV (U.S. Dep't of Justice, Office on Violence Against Women 2016), pp.41. https://www.justice.gov/ovw/page/file/933886/download.

[47] According to Case 3:18-cv-00104 Document 3-1 filed in TXSD on 04/08/18 page 21 of 47 (pp.18), "Under binding circuit precedent, Galveston County's Policy is invidious wealth-based discrimination that violates the Constitution. ODonnell, 882 F.3d at 543–44 (quoting Rainwater, 572 F.2d at 1056–57); accord Barnett v. Hopper, 548 F.2d 550, 554 (5th Cir. 1977) ("To imprison an indigent when in the same circumstances an individual of financial means would remain free constitutes a denial of equal protection of the laws."), vacated as moot, 439 U.S. 1041 (1978)."

*"The U.S. has a history of migration, and a diverse, changing population. In 2015, over one-third (38.4%) of the population identified as a member of a racial or ethnic minority group—some studies indicate that some minority populations may experience disproportionately higher rates of domestic/ sexual violence".*

197.    During the two-year period covered by the 2016 report, VAWA grantees funded under the "ARREST PROGRAM" boast many achievements in cases involving "violence against women". These achievements include Law enforcement authorities arrest of 66,095 individuals (77,892 arrests in 2020), which included 7,367 arrests made for **violating protection orders (7,872 arrests in 2020)**. Out of 125,812 cases disposed of by prosecutors, 55% resulted in convictions **(stated achievement no. 2)**. Similarly, courts disposed of 6,424 criminal cases, of which 66% ended in convictions **(stated achievement no. 3)**. The courts monitored an average of 1,824 offenders for compliance with court-ordered conditions during 13,345 individual review hearings. Probation agencies supervised an average of 5,120 offenders and carried out a total of 249,752 monitoring activities[48]. Furthermore, those supervised **offenders who violated protection orders or did not attend mandatory batterer intervention had their probation revoked more than half (61%) of the time (66% in 2020)**.

---

[48] Probation agencies supervised a semi-annual average of 4,381 offenders and conducted a total of 176,750 monitoring activities for the year 2020. 2020 VAWA Report to Congress - Executive Summary pp.xiv.

198.     Beginning in FY 2016, the **ARREST PROGRAM** was renamed to the "Improving Criminal Justice Responses to Sexual Assault, Domestic Violence, Dating Violence, and Stalking Grant Program". While the report stated that the reason behind renaming the program was to "more accurately reflect the program's scope", the achievements and scope of the 1994 crime bill are best illustrated by the U.S. prison population, which more than doubled since the inception of the bill. See the paragraph below.

199.     Violence against Women Act ("VAWA") was passed as part of the Violent Crime Control and Law Enforcement Act of 1994, a "crime bill" which contributed to a two fold increase in the Prison Population in the United States. Approximately one-third of the prison population in the United States are non-Hispanic Black people, despite making up under 15% of the U.S. population as a whole. The prison population in the U.S. is estimated to represent around 20% of the worldwide prison population. Ironically, the U.S. only makes up slightly over 4% of the global population. According to the 2020 Biennial Report to Congress, the report states *"They promote a coordinated community response to these crimes, meaning an approach in which law enforcement, victim services providers, prosecutors, courts, and others work together in a seamless, systemic way"*[49].

---

[49] The 2020 Biennial Report to Congress on the Effectiveness of Grant Programs Under the Violence Against Women Act, Executive Summary, pp. IX, (U.S. Dep't of Justice, Office on Violence Against Women 2020). https://www.justice.gov/ovw/page/file/1525621/download

## A.  Weaponizing the Legal System and Illegal Coercion

200.    Apart from targeting vulnerable members of society, the movement recently has taken a coercive approach towards imposing their ideology through the legal system and law enforcement. Virginia Democratic delegate Elizabeth Guzman Introduced House Bill 5802 that would reportedly penalize parents with a felony or misdemeanor who do not affirm their children's gender identity or sexual orientation[50].

### i.   Targeting Religious Liberty

201.    The feminist ideology and Abrahamic traditions (Judaism, Christianity, and Islam) have different perspectives on gender roles, sexuality, and the role of women in society. Feminist ideology promotes gender 'equality' and challenges traditional gender roles and stereotypes that have been reinforced by Abrahamic traditions. It is important to recognize that not all individuals who identify as feminists or as adherents of a Abrahamic traditions hold the same view or interpretations of their respective beliefs. It is possible for individuals to hold different beliefs and still engage in respectful dialogue and cooperation.

### ii.  Right to Reject Non-Binary Gender Ideology

202.    Islamic Science requires the application of reason. Arguing against traditional gender roles by stating gender is non-binary goes against the principle of non-contradiction, which serves as the foundation of rational discourse. If one can claim that

---

[50] House Bill No. 580 - Virginia General Assembly (2020 Session):§ 63.2-100 Code of Virginia, relating to child abuse and neglect; gender identity or sexual orientation, H.B.580. (2020), https://lis.virginia.gov/cgi-bin/legp604.exe?201+ful+HB580+pdf

something is and is not at the same time, then any claim can be made and there can be no basis for reasoned discussion. The proposition cannot be both true and false at the same time and in the same sense. Worded differently, it is fundamentally unreasonable, irredeemably irrational to claim "A" and not "A" are identical. This is against the well established background —such insistence upon the mandatory acceptance of contradiction by the likes of Virginia Democratic delegate Elizabeth Guzman who seek to weaponize the legal system to impose her gender identity[51] ideology on others. For HATEM, It is not religion that stands in the way of feminist thought, its reason. Threatening imprisonment, and harassing plaintiff because he applies the principle of non-contradiction will not change his view on the subject.

203.    Muslim and other conservative communities in Dearborn Michigan made headlines on October, 2022, after hundreds of concerned parents packed a Dearborn Public Schools board meeting to voice their concerns about "sexually explicit" LGBTQ books, arguing they are inappropriate for children. Dearborn joins a list of public school districts that have faced community members objecting to a number of books with LGBTQ or sexual themes. Muslim Speakers repeatedly said their concerns were that the books under debate were pornographic and incompatible with their religious beliefs.

---

[51] House Bill No. 580 - Virginia General Assembly (2020 Session):§ 63.2-100 Code of Virginia, relating to child abuse and neglect; gender identity or sexual orientation, H.B.580. (2020), https://lis.virginia.gov/cgi-bin/legp604.exe?201+ful+HB580+pdf

### iii. Brief Analysis—Islamic Thought and Clash with the Ideology Behind VAWA

204.    The concept of "honor" in eastern cultures may not be relevant in the current society in Galveston County. It is a code which is not easily conveyed to those who are not integrated into the social fabric of Islamic faith/ culture, nonetheless, it shapes the behavior of individuals, and the norms of those communities that adhere to the order. This is not to say the construct never existed in Texas[52], as the practice of duels is well established, and even a stereotype which resonates in the minds of individuals when they think of Texas. The practice was generally reserved for Noble or aristocratic classes, which may provide context as to what may be at the root of these constructs— i.e. maintaining a certain standing, which nowadays has been artificially substituted for material possessions and defamation lawsuits. Regardless, the construct is still very much alive in various forms in places across the world, particularly in places such as Japan, Turkey and the Middle East.

205.    The concept of honor should not be confused with "ego" or conflated with what is sometimes referred to as "toxic masculinity." It is a quality that applies to both genders equally, and whether it is a positive or negative force is a topic for further discussion. In many cultures, honor serves as a driver that enables individuals to organize themselves and understand their place (role) in the family unit, the community, and even in history—whether that be as a man or woman, a father or mother, a son or daughter, or

---

[52] Allen, Douglas, W., and Reed, Clyde, G., 2006, "The Duel of Honor: Screening for Unobservable Social Capital," American Law and Economics Review: 1–35. https://www.sfu.ca/~allen/duelingaler.pdf

even as a ruler. Understanding one's role in time and in history is a spiritual element of the Islamic faith. While this may sound positive, there are also negative extremes of honor that are worth mentioning. In some cultures, losing one's job can lead to suicide, as in Japan. In other cases, such as in certain Middle Eastern societies, there have been reports of horrific "honor killings." However, it is important to consider the opposite extreme: a society that attempts to eliminate roles, i.e. "gender roles" altogether.

206.    The most recent trend which is being coerced is the idea which involves applying social constructs to gender categories and roles in order to challenge the idea that they are innate and cannot be changed — with the goal of altering the perceived distinction between the two gender categories. It is important to point to the fact that from an Islamic viewpoint, religion is not the driving force behind the natural ordering of society, rather religion simply complements the laws of nature. All societies, regardless of geographical location, culture or religion have arrived at the same conclusion when it comes to gender roles, this is not a result religion, but rather an acknowledgement of the different biological roles that men and women play in reproduction and family life—it's nature.

207.    The Paragraph below, provides a brief analysis for understanding what is referred to in this complaint as "feminism", and is not limited to the gender politics of the feminist movement or to the use of VAWA as a form of propaganda war against, and persecution of, those targeted by feminist including anti-feminist of either gender, and adherents of the Abrahamic Tradition. The purpose is to address the

110

ideological dimension of the movement in support of the claim that wholesale violations of rights are being committed in violation of 18 U.S.C. § 241, and that plaintiff is currently being persecuted not prosecuted in Galveston County.

208.   The feminist idea can be traced back to the foundations of liberalism and the medieval dispute over the ontological status of universals which split Catholic theologians into two camps — some recognized the existence of the common (species, genus, universalia), while others believed in only certain concrete, individual things, and interpreted their generalizing names as purely external conventional systems of classification. The nominalists took the position that only individual things and beings are real, denying the reality of universals. From a philosophical perspective, this is the theoretical origin of liberal individualism. Here, humans were seen only as individuals and nothing else, and all forms of collective identity (religion, class, etc.) were to be abolished. To see what makes this a powerful perspective, consider how it illuminates two trends of contemporary global liberalism. After rejecting the most influential forms of collective identity and defeating its collectivist ideological rivals, communism and fascism, liberalism discovers "two more forms of collective identity": gender and humanity itself. We are currently in the phase of "gender politics, the transformation of the category of gender into something 'optional' and dependent on individual choice." Transgenderism, in other words, is the logical application of the principle of individualism or nominalism to the latest form of collective identity standing in the way of "progress".

111

**B.  Censorship and Propaganda**

209.    In response to Violence Against Women Reauthorization Act of 2013,

Janice Shaw Crouse, who is a senior fellow of Concerned Women for America's Beverly

LaHaye Institute, as well as a presidential speechwriter for the first President Bush,

explains[53], *"Decent people should be outraged at the __climate of false accusations, rush__*

*__to judgment and hidden agendas__ that characterize the situation that has developed*

*during the 18 years of this law. One of the ways such bills exist is through clever naming*

*of leftist proposals. We have "prochoice" instead of "pro-abortion" and we have this law,*

*which promises to end violence against women. Those who oppose such positive-*

*sounding measures appear to be heartless and are on the defensive at the outset"*.

210.    Historical use of Propaganda— the statement made by Janice Shaw Crouse

indicates the use of deceptive tactics such as astroturfing is used by the feminist

movement to further their ideological and political objectives, while posing as 'women

advocates' or other slogans which aim to establish the appearance of a group which

promotes women causes. From a factual and historical standpoint, there is enough

evidence to support this conclusion. Edward Bernays is often referred to as the "father of

propaganda" or the "father of public relations." He was an influential figure in the

development of modern public relations and propaganda techniques in the 20th century,

and often credited with helping to bring certain ideas of the feminist movement into

---

[53] Crouse, Janice Shaw. "The Violence Against Women Act Should Outrage Decent People." U.S. News & World Report L.P., 19 March 2012, https://www.usnews.com/debate-club/should-the-violence-against-women-act-be-reauthorized/the-violence-against-women-act-should- outrage-decent-people

mainstream public thinking. Bernays organized a well known public relations campaign called the "Torches of Freedom" in March of 1929, which involved women smoking cigarettes during the Easter Sunday Parade in New York City. The campaign was meant to promote cigarettes as a symbol of women's liberation and to challenge the social taboo against women smoking in public. The Torches of Freedom" campaign, had significant impact on the public's perception of smoking and helped to break down some of the social barriers that prevented women from smoking in public. The campaign also helped to associate smoking with ideas of women's liberation and equality, which was a powerful message at the time. Bernays motivation for organizing the campaign was largely driven by his work for the American Tobacco Company, and Bernays' role in promoting smoking among women should not be seen as a central or defining aspect of the feminist movement. The feminist movement was a much broader and more complex social and political movement than just smoking cigarettes. The movement was and continues to be driven by a wide range of issues related to women's rights, including gender equality in the workplace, equal pay, reproductive rights.

211.     Plaintiff asserts, that while breaking down some of the social barriers mentioned above, such as workplace discrimination, equal pay, are beneficial, there are elements of the movement that have taken a aggressive, even coercive approach to propagating their ideals in recent years—often viewed by the religious community as an attempt to impose their position on matters related to marriage, family, gender identity, and reproductive rights.

212.    On 20 March 2021, Recep Tayyip Erdogan, Turkey's President, announced the country's withdrawal from the Istanbul Convention by presidential decree after religious conservatives and various Muslim orders began an intense lobbying effort against the Convention, lambasting it for destroying families, degrading family values, and targeting vulnerable populations. The Council of Europe's Convention on preventing and combating violence against women and domestic violence (the "Istanbul Convention") treaty aimed to set comprehensive standards for protecting women against all forms of violence. Türkiye was the first country to sign and ratify the convention followed by nearly all member states of the Council of Europe and the European Union. Amnesty International decried the move, arguing that seven hundred thirty-two millionths of **one percent** or of the total female population of Turkey (roughly 300 out of 41 million) have lost their lives as a result of domestic violence in 2020. Although tragic, Plaintiff argues that there is no way to evaluate whether the benefit of the gender based convention — or the U.S. equivalent (VAWA) outweighs the harm due to lack of data. Breaking up a family can have severe and enduring consequences for both individuals and society. **Approximately a quarter** of U.S. children under the age of 18 live with one parent and no other adults, more than three times the world average [54], with over half of those households headed by single mothers. According to Congressional Record Volume

---

[54] Pew Research Center, 'U.S. has world's highest rate of children living in single-parent households' (12 December 2019) https://www.pewresearch.org/fact-tank/2019/12/12/u-s-children-more-likely-than-children-in-other-countries-to-live-with-just-one-parent/ accessed 31 March 2023.

159, Number 85 [55], fatherless households account for 85% of children that possess behavioral problems, which is twenty times the national average as reported by Center for Disease Control, 71% of all high school dropouts as per the National Principals Association Report, and 63% of youth suicides observed in fatherless homes by the U.S. Department of Health. VAWA and the gender-based organizations have contributed to these figures. Based on the 2020 VAWA report to Congress, *"About **one in four women** and one in 10 men have experienced contact sexual violence, physical violence, and/or stalking by an intimate partner and reported an IPV- related impact during their lifetime (Smith et al., 2018)"*[56].

213.    The Plaintiff challenges the accuracy of the figures presented by VAWA indicating that 25% of women experience physical or sexual abuse, arguing that the data does not account for false accusations, cases like RAWAN's where abuse allegations are made to gain an advantage in divorce proceedings. Additionally, the Plaintiff asserts that the statistics do not consider instances of fraudulent claims made by individuals like LISA, who, as a family therapist, is well-versed in family law and knowingly submitted biased and false statements without fear of repercussions under the current VAWA (in) justice system.

214.    Christian communities/ nations of Eurasian have also taken similar

---

[55] Congressional Record Volume 159, Number 85 (Friday, June 14, 2013). Available at:
https://www.govinfo.gov/content/pkg/CREC-2013-06-14/html/CREC-2013-06-14-pt1-PgE878-2.htm.

[56] The 2020 Biennial Report to Congress on the Effectiveness of Grant Programs Under the Violence Against Women Act, Executive Summary, pp. xi, (U.S. Dep't of Justice, Office on Violence Against Women 2020). https://www.justice.gov/ovw/page/file/1525621/download

measures against the movement in recent years. In a 2022 Report[57] Peter Mandaville, Senior Advisor, Religion & Inclusive Societies states in a 2022 report published on the United States Institute of Peace website, "The Ukrainian Orthodox Church-Moscow Patriarchate, or UOC-MP) began to emphasize the idea that Russia should be viewed as a guardian of Christian civilization and traditional family values in opposition to the relatively secular orientation of many European Union nations and what it portrayed as Western efforts forcibly export feminism and support for LGBTQ rights". The Russian Orthodox Church recognized that "family violence" has been used by feminist groups to export Western "gender ideology". While Putin has led the way via a longstanding strategic alliance with the Russian Orthodox Church, a similar dynamic is at work in other emerging powers — including China, India and Brazil — whose current leaders have all found political utility in religion.

### i.   Misinformation, Defamation, and Censorship of Truthful Speech

215.    The lack of representation for males and other religious groups targeted by state agencies seeking to impose certain gender ideologies negatively impacts American families, women's rights, children, and the public. Plaintiff asserts that the state has not shown a compelling state interest achieved by denying plaintiff or defendant's of a protective order proceeding the same due process afforded to parties in a civil suit, or a elevated standard of proof applied to a criminal proceeding. Plaintiff further asserts the

---

[57] Mandaville, Peter. "How Putin Turned Religion's 'Sharp Power' Against Ukraine." United States Institute of Peace, 9 February 2022, https://www.usip.org/publications/2022/02/how-putin-turned-religions-sharp-power-against-ukraine

state has not shown a compelling state interest or a narrow tailoring of the statutes to achieve that interest in a manner which prevents destroying families.

216.    Plaintiff challenges the constitutionality of gender-based advocacy and laws that result in negative consequences for families, on grounds of equal protection clause of the U.S. Constitution.

217.    The Plaintiff asserts that the activities conducted under the Violence Against Act (VAWA) represent the most egregious civil rights violations in recent memory. However, the extent of the terror inflicted upon those falsely accused of "violence against women" cannot be fully conveyed in this complaint. Plaintiff contends that the regime perpetuated by those implementing VAWA has been prolonged by employing a combination of tactics, which include silencing dissent. In addition to information suppression, those implementing VAWA have adopted clever naming conventions that Plaintiff asserts constitute astroturfing, while also attacking the character of the accused, damaging their reputation and standing. Lastly, the deployment of the full power and resources of federal, state, and local authorities against individuals, depriving them of their most basic civil liberties, and terrorizing them with random arrests. Plaintiff has been arrested four times, two unexpected arrests occurred when he appeared in court. The foregoing does not include the criminal or divorce proceedings that often result in the plundering of the accused's financial resources, further unlawful arrests, and the exhaustion of any support they may receive from family and friends.

218.    Former Missouri attorney general Eric Schmitt has accused the Biden administration of collaborating with social media companies to suppress and censor information that was later acknowledged as truthful[58]. In a lawsuit filed by Missouri and Louisiana against Defendant Joseph Biden and his team,  alleged that they "colluded with social media giants Meta, Twitter, and YouTube to censor free speech in the name of combating so-called 'disinformation' and 'misinformation.'" The lawsuit claims that this coordination led to the unprecedented suppression and censorship of truthful information. The case is currently in the discovery phase, and a hearing is expected to include witness testimony detailing evidence collected to show that the Defendant Joseph Biden coerced social media companies to censor speech it deemed unfavorable. In the lawsuit, Louisiana and Missouri are requesting a declaration that Defendant Joseph Biden violated their constitutional rights to free speech and press, as well as injunctive relief to prevent further censorship of their speech by the defendants. Plaintiff has provided Exhibit-7(L), which consists of screen shots taken between 2022-2023, showing non-defamatory and appropriate truthful posts made by men who are complaining about being prevented from seeing their children for years and their suffering. These posts were flagged or blocked by Twitter as inappropriate. The screen shots are available on page 94 of the Exhibit.

219.    The Biden Foundation, a nonprofit organization under section 501(c)(3) of the United States tax code, was established by Defendant Joseph Biden and his spouse in 2017. The foundation had the stated mission to **"champion progress and prosperity for**

---

[58] Louisiana and Missouri v. Biden, No. 3:22-cv-01213 (May 5, 2022).

**American families."** However, on April 25, 2019, the foundation announced its suspension of operations, effective immediately. This suspension included "activities related to fundraising, staffing, policy, and partnership collaboration across its policy pillars" according to a statement from the foundation. The foundation was a means for the Defendant Joseph Biden and his spouse to remain engaged in causes they worked on as private citizens after leaving the Obama White House, such combatting violence against women. The foundation reported raising $6.6 million in its first year. (Wilkie) [59]. See screenshots provided at Exhibit-7(L) taken by plaintiff of the official Facebook page for the foundation, with the majority of posts promoting transgender issues[60].

220.    Defendant JOSEPH ROBINETTE BIDEN JR. is being sued in his capacity as a former senator of the State of Delaware, because the majority of his contributions to VAWA occurred during that period, as he continued his violations as a private citizen through the Biden Foundation. Joseph Biden was instrumental[61] to the drafting and passage of the Violence Against Women Act (VAWA), and spent years working on passing the Legislation as Senator. Furthermore, the foundation had the stated mission to **"champion progress and prosperity for American families"**, this lawsuit provides evidence that the defendant, his legislation, and astroturfing have caused significant harm

---

[59] Wilkie, Christina. "Biden Foundation Suspends Operations Effective Immediately." CNBC, 25 Apr. 2019, https://www.cnbc.com/2019/04/25/biden-foundation-suspends-operations-effective-immediately.html.

[60] Biden Foundation. Facebook, Facebook, Inc., https://facebook.com/BidenFoundation

[61] Violence Against Women Reauthorization Act of 2011, 112th Cong. 2d Sess., S. Rep. No. 112-153, at 2 (Mar. 12, 2012) (statement of Sen. Leahy, Chairman, Comm. on the Judiciary) (championed by then-Senator Joseph Biden and Senator Orrin Hatch), https://www.congress.gov/112/crpt/srpt153/CRPT-112srpt153.pdf.

to the plaintiff's family. This harm is particularly concerning given the defendant's promise to adjust his physical behavior towards women, which was made in response to allegations that his intimate behavior was inappropriate. Several women, including former Nevada politician Lucy Flores, have reported feeling violated by Defendant Joseph Biden. Flores specifically stated that Biden made her feel "uneasy, gross, and confused" when he kissed the back of her head at a 2014 campaign event.[62]

221.   Plaintiff incorporates the allegations set forth in **paragraphs 112 through 220**, inclusive, as if set forth here in full, alleging a violation of rights secured under the Constitution and laws of the United States, including, but not limited to, 18 U.S.C. § 241 and 242, the Equal Protection Clause of the **Fourteenth Amendment**, the **Sixth Amendment** right to effective counsel, **fifth amendment** prohibition of compelled disclosure, and self-incrimination, the right to carry and bare arms of the **second amendment**, the right to be secure in person and property, and the right to security or the right to be free from unreasonable searches and seizures of the **Fourth amendment**, the **First Amendment** right to free speech, violations of the freedom of the press, and free exercise of religion, or other applicable federal laws and regulations, and **Eighth Amendment** prohibition of the use of cruel and unusual punishment, and that the defendant JOSEPH ROBINETTE BIDEN JR., has deprived the plaintiff of these rights while acting under the guise or color of law. Plaintiff is further alleging fraud against

---

[62] Oliphant, J. & Gibson, G. (2019, April 3). Biden, mulling White House run, seeks to stem fallout from women's complaints. Reuters. https://www.reuters.com/article/uk-usa-election-biden-idUKKCN1RF2J8

defendants JOSEPH ROBINETTE BIDEN JR., for his role at the Biden Foundation, and sues in his personal capacity. The Defendant's actions, including those carried out as a private citizen through the Biden Foundation, are alleged to have played a significant role in the abuses that followed the Plaintiff's arrest on December 23, 2020. The Plaintiff asserts that these activities were instrumental in the abuses he suffered and maintains that the Defendant's continued involvement had a direct impact on the events that transpired.

Plaintiff requests the Court:

a. Declare that defendant JOSEPH ROBINETTE BIDEN JR. has violated the plaintiff's rights secured under the Constitution and laws of the United States, including but not limited to 18 U.S.C. § 241; and willfully deprived plaintiff of federally-protected rights under color of law under 18 U.S.C. § 242, the Equal Protection Clause of the Fourteenth Amendment, the Sixth Amendment right to effective counsel, fifth amendment prohibition of compelled disclosure and self-incrimination, the right to carry and bear arms of the Second Amendment, the right to be secure in person and property, and the right to security or the right to be free from unreasonable searches and seizures of the Fourth Amendment, the First Amendment right to free speech, violations of the freedom of the press, and free exercise of religion, or other applicable federal laws and regulations, and Eighth Amendment prohibition of the use of cruel and unusual punishment.

b. Enjoin defendant JOSEPH ROBINETTE BIDEN JR., from engaging in any further activities that violate plaintiff's rights secured under the Constitution and laws of the United States, including those alleged in paragraphs 112 through 222.

c. Order defendant JOSEPH ROBINETTE BIDEN JR., in his personal capacity, to refrain from any activities that propagate for the violation of plaintiff's rights secured under the Constitution and laws of the United States, including those alleged in paragraphs 112 through 222.

    d.  Enter a declaration that defendant JOSEPH ROBINETTE BIDEN JR.'s has engaged in astroturfing by deliberately and deceptively using slogans like "champion progress and prosperity for American families" at the Biden Foundation without disclosing the truth about the gender non-binary messaging being propagated. Further declare, the defendant's activities have caused harm to families. Declare the aforementioned activities constitute an act of **fraud** , and plaintiff has suffered as a result, and that defendant is liable for any damages resulting from such fraud.

    e.  Order defendant JOSEPH ROBINETTE BIDEN JR., in his personal or official capacity, to pay compensatory and punitive damages to plaintiff for the injuries suffered as a result of defendant's violations of plaintiff's rights secured under the Constitution and laws of the United States, including those alleged in paragraphs 112 through 222, and for the fraud committed against plaintiff through his involvement with the Biden Foundation.

222.    Victims of VAWA activities urgently need immediate relief, and a program of equal scope is necessary to address the adverse effects that this law has had on numerous children and families across the United States. While reparations may provide a positive beginning, the plaintiff argues that further action is needed, such as the establishment of a national truth and reconciliation commission, to confront the ongoing abuses of VAWA, and facilitate nationwide healing for the true victims terrorized by the coordinated nation-wide purge like activities.

**COUNT 19**
**VIOLATION OF 18 U.S.C. § 245 AND 18 U.S.C. § 247**
Plaintiffs against: Matthew A. Skillern, Skillern Firm,
Lisa Salazar, Kerri Foley, Jack Roady, Galveston County.

223.    Plaintiff realleges the facts set forth above.

224.    Prior to his separation,  the Religious office established by HATEM provided CVE (Countering Violent Extremism) expertise to an accredited religious college in Berkeley, California, with students and faculty from different states and countries. Additionally, the board members hold an annual international peace conference.

225.    The previous paragraphs demonstrate that the Religious office engaged in activities that had an impact on interstate or international commerce, as required by 18 U.S.C. § 247.

226.    Defendant RAWAN AL-NAJJAR, along with the SKILLERN FIRM and MATTHEW A. SKILLERN, purposefully presented religious materials to the court with the intention of discrediting and humiliating HATEM based on his religious beliefs and his work in CVE. As part of the Protective Order hearing on January 14, 2021, RAWAN attached an affidavit in support of her application for Protective Order, referencing "Hijaz," and a  trust certificate. As a result, in the original answer to the divorce petition, Plaintiff requested for the court *"make an order sustaining this special exception, requiring that Petitioner amend the original Petition to plead sufficient facts to demonstrate that the entity conveyed in the "Trust Certificate" referenced in Paragraph*

123

*(2)(b) and (c) of this Original Answer fails to fall within the legal definition of a foreign mission as provided under 22 U.S. Code § 4302 (a)(3), providing that if and to the extent that petitioner fails to provide sufficient evidence or refuses to so amend, within 10 days from the filing of this Original Answer, or before an appropriate specific future date petitioner must file notice with OFM in accordance with instructions provided by Respondent, pay legal fees associated with said filing and for resolving dispute provided under 2(a) of this Original Answer, and that this action will be dismissed"*. A determination on this matter is requested in the last count of this complaint.

227.    The U.S. Madinah Mission (the "MADINAH MISSION") is an American mission established upon the foundations of the seventh century Madinah Charter. The Madinah Charter aimed to establish peace, equality, and justice among all people, regardless of their religious beliefs or social status. It served as a compact between Christian, Jewish, and Non-Religious communities, and enforced freedom of religion, as established under Chapter 2, Article 256 of the Islamic Criterion, "THERE SHALL BE no coercion in matters of faith". See Exhibit-7(M).

228.    Plaintiff alleges violations under 18 U.S.C. § 245 and 18 U.S.C. § 247 by defendants Lisa Salazar, Skillern Firm, Matthew Skillern, Kerri Foley, Jack Roady, Galveston County, the State of Texas. HATEM seeks this relief under 42 U.S.C. § 1983 and any other law that might supply a cause of action for the requested relief. Plaintiff Requests that the Honorable Court:

a.     Declare that the U.S. Madinah Mission a foreign or international mission;

b.     Declare that the Hejaz ("Al- Hedjaz") is a foreign Country;

c.     Enter a Preliminary Injunction restraining Defendants from taking any adverse actions against Hatem Tawfiq Alghuti, the presiding officer of the Mission and acting Public Defender of the People of Texas, or any action that may restrict his ability to perform his duties, and Order the Defendants to pay all expenses related to the establishment of the U.S. Madinah Mission;

d.     Declare that the presiding officer of the U.S. Madinah Mission shall hold equal status, rank, and privileges held by an Ambassador at Large until further notice from the court;

## VII.  RELIEF

WHEREFORE, Plaintiff Hatem Tawfiq Alghuti ask this Court to enter judgment in

his favor and to provide the following relief:

**Grant relief as requested in Count One and Two**

1. Enter declaratory judgment that Subsection (1) of Texas Family Code § 71.004 is facially unconstitutional. Declare Texas Family Code § 71.004(1) is unconstitutionally vague and compels testimonial information in violation of the fifth amendment, and Texas Family Code § 71.004 *invites arbitrary enforcement* and may not be enforced in a manner consistent with the due process requirements of the United States Constitution. Further Declare Texas Family Code §§ 71.004(3) and 71.0021(a) facially unconstitutional on the same grounds; Further declare that the arbitrary enforcement of Texas Family Code § 71.004(1) has resulted in the unintended or inappropriate application of the statute in violation of plaintiff's substantive due process rights;

2. **Preliminarily and permanently enjoin Defendants** from enforcing Subsection (1) of the Texas Family Code § 71.004, and Texas Family Code §§ 71.004(3) and 71.0021(a) in a manner not consistent with the due process guaranteed by the United States Constitution. Defendants in a protective order case have no adequate remedy at law other than the judicial relief sought herein, and unless the State of Texas is enjoined from issuing Magistrate Emergency Protective orders, and Protective Orders (including ex parte and final orders),  without the required criteria, Defendants in a protective order will be irreparably injured by the continued violation of their constitutional rights.

**Grant relief as requested in Count Three, Four, and Five**

3. Enter declaratory judgment that Article 17.292(a) of the Texas Code of Criminal Procedure is unconstitutionally vague in violation of the the fifth and fourteenth amendments, and declare that Article 17.292 of the Texas Code of Criminal Procedure *invites arbitrary enforcement* of law in a manner inconsistent with the due process requirements of the U.S. Constitution.

   - Declare subsection (a) and (b) of Article 17.292 of the Texas Code of Criminal Procedure is facially unconstitutional on the same grounds, further declare that Article 17.292 the Texas Code of Criminal Procedure may not be enforced in a

manner consistent with the due process requirements of the United States Constitution;

4. Enter declaratory judgment that the arbitrary enforcement of Article 17.292(b) of the Texas Code of Criminal Procedure by defendants League City Police Department, Kathleen Mccumber, Galveston County, and the State of Texas, has resulted in the unintended or inappropriate application of the statute in violation of plaintiff's substantive and procedural due process rights. A copy of the Magistrate Emergency Protective Order issued against plaintiff is attached to this complaint as Exhibit-1.

5. Enter declaratory judgment that the arbitrary enforcement of Article 17.292(b) of the Texas Criminal Procedure by defendants League City Police Department, Kathleen Mccumber, Galveston County, and the State of Texas, has resulted in the unlawful seizure of plaintiff's property in violation of the fourth amendment of the United States Constitution. (A copy of the Magistrate Emergency Protective Order issued against plaintiff is attached to this complaint as Exhibit-1.)

- Further declare subsection (a) and (b) of Article 17.292 of the Texas Code of Criminal Procedure is facially unconstitutional as-applied on the same grounds.

6. Enter declaratory judgment that Article 17.292 of the Texas Criminal Procedure is unconstitutional and violates the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments of the United States Constitution;

7. Enter declaratory judgment that defendants League City Police Department, Kathleen Mccumber, Kerri Foley, Galveston County, and the State of Texas deprived the plaintiff of his liberty and property without proper notice and a fair hearing, in violation of due process;

8. Enter declaratory judgment that defendants Matthew Allen Skillern, Skillern Firm, Rawan Al-Najjar, Kerry Foley, and Galveston County made false and misleading statements accusing the plaintiff of having a history of family violence and cruelty, causing harm to the plaintiff's reputation;

9. **Preliminarily and permanently enjoin Defendants** from enforcing Article 17.292 of the Texas Criminal Procedure in a manner inconsistent with the due process requirements of the United States Constitution. Plaintiffs have no adequate remedy at law other than the judicial relief sought herein, and unless Defendants are enjoined from issuing Magistrate Emergency Protective orders

without the required criteria, Plaintiffs will be irreparably injured by the continued violation of their constitutional rights.

**Grant relief as requested in Count Six, Seven, and Eight**

10. Enter declaratory judgment that Texas Family Code § 85.001 is facially unconstitutional, and further declare that Texas Family Code § 85.001(a) compels testimonial information in violation of the fifth amendment, and Texas Family Code § 85.001 may not be enforced in a manner consistent with the due process requirements of the fifth and fourteenth amendment of the United States Constitution. Further Declare Texas Family Code §§ 85.001(a) §85.0021, and §*85.022* facially unconstitutional on the same grounds;

11. Enter declaratory judgment that Texas Family Code § 83.001 violates due process of the fourteenth amendment of the United States Constitution, and declare that Texas Family Code § 83.001 and may not be enforced in a manner consistent with the due process requirements of the United States Constitution. Furthermore Declare Texas Family Code § 83.001 is unconstitutional on the same grounds;

12. Enter declaratory judgment that Texas Family Code § 84.001, §84.002, and § 84.004 *fail to provide adequate notice to prepare for a meaningful defense against family violence allegations, and do not allow for a meaningful trial in a manner consistent with the due* process requirements of the fourteenth amendment of the United States Constitution. Further Declare Texas Family Code § 84.004 facially unconstitutional on the same grounds;

13. **Preliminarily and permanently enjoin Defendants** from enforcing Texas Family Code §§ 85.001, 85.001(a), 85.002, 85.0021, 85.021(1)(B), 85.022, 83.001, 84.001, 84.002, and 84.004, or any related provision or regulation, in a manner that violates Plaintiffs' rights under the United States Constitution. Specifically, Defendants are prohibited from compelling testimonial information in violation of the Fifth Amendment, failing to provide adequate notice or a meaningful trial in violation of the Fourteenth Amendment, or enforcing provisions that are facially unconstitutional. Plaintiffs have no adequate remedy at law other than the judicial relief sought herein; and unless Defendants are enjoined from such actions, Plaintiffs will be irreparably injured by the continued violation of their constitutional and statutory rights.

14. Enter an order:

- Compelling Defendants the State, their agents, servants, employees, attorneys, and all persons in active concert and participation with the State (collectively referred herein as the "State of Texas") to establish routine procedures to validate reports and assess information to effectively differentiate between suspects and witnesses. Such procedures should ensure that an adequate investigation has been conducted and that probable cause exists before issuing an emergency protective order.

- Compelling the State of Texas to provide adequate safeguards against false, frivolous, or malicious accusations prior to granting applications for emergency protective orders. Before issuing such orders, the State of Texas must establish clear and convincing evidence of an offense or findings of fact.

- Restraining State of Texas from enforcing Protective Order Statutes where (a) it is determined or alleged that the motive for a protective order application filed for reasons other than protection against harm; (b) determination of family violence is used in a divorce proceeding; (c) evidence of physical injury is NOT found or alleged.

- Restraining State of Texas from enforcing Protective Orders in a manner not consistent with due process requirements of the fifth and fourteenth amendments of the United States Constitution. Specifically, in cases where the accused does not, or did not have a criminal history prior to an allegation of family violence, and no physical injury is reported or alleged.

- Defendants Judge Kerri Foley, Jack Roady, and judges at Galveston County must declare their interests on the record in any proceeding involving protective orders. They must also declare any affiliation with, or contributions received from gender-based political organizations or groups that may interfere with their ability to conduct their respective duties in an impartial manner.

- Defendant Galveston County must make public and disclose to the plaintiff any federal funding received in furtherance of the Violence Against Women Act (VAWA), including grants, material, or other support from the Office of Violence against Women over the course of five years from the date this complaint is filed.

**Grant relief as requested in Count Nine**

15. Enter declaratory judgment that the primary differentiator between a Protective Order issued in accordance with due process and a Bill of Attainder is the requirement of due process of law. Declare that the procedures employed by Galveston County for the issuance and enforcement of the protective order mentioned in paragraphs 81 and 82 of the complaint violate U.S. CONST. ART. I, § 9, CL. 3;

16. Enter a declaratory judgment that all sections and subsections of Article 17.292 of the Texas Code of Criminal Procedure and the Texas Family Code are legislative acts of the Texas State Legislature. Declare that one or more sections of the Article 17.292 of the Texas Code of Criminal Procedure and Texas Family Code, as outlined in the previous declarations, cannot be enforced consistently with the due process requirements of the Fifth and Fourteenth Amendments to the United States Constitution. Further declare that the state statutes found to be unconstitutional herein further violate U.S. CONST. ART. I, § 9, CL. 3;

17. Enter a declaration condemning the actions of Galveston County and the State of Texas for gross violations of the United States Constitution. The actions of the state have caused harm, injury, and suffering to the Plaintiffs and those in similar circumstances. The condemnation by this Court will serve as a warning to the state and others that such actions will not be tolerated under our constitutional framework;

18. Grant any other relief the court deems just and proper.

**Grant relief under Count Ten**

19. Declare the Single Witness Rule Unconstitutional in violation of the Six Amendment;

20. Declare Tex. Fam. Code Ann. § 81.007(a) and  Tex. Fam. Code § 85.021(1)(B) are unconstitutional in violation of due process and equal protection clause of the Fourteenth Amendment (see ¶ 132 and 134);

21. Enter a Declaration that Defendants, the State of Texas, Galveston County, the United States Department of Justice, OVW, KERRI FOLEY, JACK ROADY violated plaintiff's rights secured under **42 U.S.C. § 1981**, the Contract Clause of **Article I, Section 10, Clause 1** (see ¶ 123), the **First** (see ¶ 123-136), **Fourth**

seized property by removing Plaintiff from title without impartial proceeding (see ¶ 133), **Fifth** amendment self-incrimination (see ¶ 133), **sixth** amendment witnesses requirement (see ¶ 126-129), and **Fourteenth** Amendment Equal Protection (see ¶ 132 and 133) to the United States Constitution;

22. **Preliminarily and permanently** enjoin the Defendant, the State of Texas, from applying the Single Witness Rule to convict an accused in any criminal proceeding. The State of Texas shall be prohibited from making a conviction relying solely on the testimony of one person, as this violates the rights guaranteed under the Sixth Amendment of the United States Constitution, Article I, Section 10 of the Texas Constitution. The court must intervene to protect the rights of the accused and prevent the State of Texas from violating the basic principles of justice and fair trial;

23. Enter a declaration that the Religious Marital Agreement is valid and enforceable, and that plaintiff's free exercise of religion has been substantially burdened by the Court's failure to recognize the marital contract;

24. Enter a declaration that Defendant KERRI FOLEY violated Plaintiff's due process rights secured under the fifth and fourteenth amendments of the United States Constitution. Further Declare that KERRI FOLEY violated 42 U.S.C. § 1981, and as a result Plaintiff has suffered harm;

25. Enter a Declaration that Article 17.292 of the Texas Code of Criminal Procedure, Texas Family Code § 71.004(1), Texas Family Code § 83.001, Texas Family Code § 84.001, Texas Family Code § 84.002, Texas Family Code § 84.004, and Texas Family Code Chapter 85 violate Article I, Section 10, Clause 1 (Contract Clause), and are unconstitutional;

26. Declare Defendants KERRI FOLEY, GALVESTON COUNTY, JACK ROADY, and the STATE OF TEXAS violated plaintiff's right under Article I, Section 10, Clause 1 (Contract Clause);

27. Declare the Divorce proceedings under 21-FD-0102 were not conducted in a impartial manner, that KERRI FOLEY carried out her duties as Judge in a biased and discriminatory and cruel manner. Declare the protective orders issued under 20-FD-2694 and 22-FD-2586 are invalid, unenforceable, void, and all other orders entered by KERRI FOLEY against Plaintiff are void;

28. Declare that Defendants' actions have violated Plaintiff's rights protected under 42 U.S.C. § 1981, the First Amendment freedom of religion, and the Fourth Amendment equal protection clause;

29. Enjoin Defendants from continuing to refuse to recognize the Islamic agreement;

30. Enjoin Defendants, the United States Department of Justice, the State of Texas from imposing a gender non-binary view on Plaintiff;

31. Declare that the DOJ-OVW, Galveston County and the State of Texas are violating Title IX, 42 U.S.C. § 1981(a), and the Equal Protection Clause by discriminating in favor of women and gender-nonbinary ideologies in federal funding for protection against domestic violence or protection of the accused;

32. Declare Violence Against Women Act ("VAWA") is unconstitutional in violation of the the equal protection clause of the Fourteenth Amendment, and enjoin the United States from enforcing said statute in a manner not consistent with the due process and equal protection requirements of the United States Constitution.

33. Declare the Office on Violence Against Women ("OVW"), established under the Violence Against Women Act ("VAWA"), is unconstitutional as it violates the equal protection clause of the Fourteenth Amendment;

34. Order Defendant Rawan Al-Najjar to return all property belonging to Hatem Tawfiq Alghuti;

35. Enter a Declaration that Defendants KERRI FOLEY, Galveston County, the State of Texas, JACK ROADY and the Galveston County Criminal District Attorney's office, United States Department of Justice, OVW engaged in conspiracy to deprive Plaintiff of federally-protected rights in violation of 18 U.S.C. §§ 241 and 242;

36. Enter Order for the Appropriate agency of the United States to criminally investigate the defendants engaged in conspiracy against the people of the United States;

37. **Preliminarily and permanently enjoin Defendants** from engaging in acts in violation of 18 U.S.C. § 241;

38. Enter an order compelling the Defendant, the United States Department of Justice to provide sufficient funding for the establishment of a task force to develop a

Chancery Court System for Family Law. Hatem Tawfiq Alghuti shall be entrusted with the leadership of the task force;

39. Enter an Order compelling the Defendant, the United States Department of Justice, to provide sufficient funding for the establishment of a Chancery Court System for Family Law which is compatible with family values for adherents of the Abrahamic Traditions and the Constitution of the United States, as directed by the task force during the preliminary phase;

40. Enter a statement of acknowledgement that the Court has received testimony and a declaration from Hatem Tawfiq Alghuti, indicating that family courts in Texas are not compatible with traditional family values held by the majority of Texas residents who adhere to the Abrahamic religious tradition, the Constitution of the State of Texas and the United States;

41. Enter a Preliminary Injunction which shall remain in effect until further notice, restraining the Defendant, the State of Texas from using the term "domestic violence" in any family law proceedings where physical harm is not reported. The term "domestic disputes" shall refer to any incidents of family disputes. The injunction shall remain in effect until further order of the court;

42. Enter a Preliminary Injunction which shall remain in effect until further notice, ordering Family Courts in Texas to immediately cease and desist from issuing or enforcing any criminal penalties related to family law matters in which no physical harm is reported. Issue a court mandate that the existing family courts must comply with the Texas Constitution and the United States Constitution in all family law proceedings. Issue an order that the injunction shall remain in effect until such time as the task force has completed its work and a new Chancery Court System for Family Law has been established in Texas, and the court has issued a subsequent order regarding the operation of the new system.

43. Award Plaintiff compensatory and punitive damages for the harm caused by Defendants' actions; and Grant any other relief that the Court deems just and proper.

**Grant relief under Count Eleven**

44. Enter a Declaration that LISA SALAZAR conspired to deprive plaintiff of federally-protected rights in violation of OF 18 U.S.C. § 241; and,

- Willfully and knowingly attempted to injure plaintiff through dangerous weapons, motivated by plaintiff's specific characteristics in violation of 18 U.S.C. § 249(a)(2), 18 U.S.C. § 249(a)(1);

- Willfully and knowingly damaged religious real property, and was motivated by the Islamic characteristic associated with that property in violation of 18 U.S.C. § 247(c);

- Willfully and knowingly damaged religious real property in or affecting interstate commerce 18 U.S.C. § 247(a)(1);

- Willfully and knowingly attempted to injure or intimidate plaintiff because of plaintiff's specific characteristics or his participation in enumerated protected activities as described under 18 U.S.C. § 245(b)(2);

45. Enter a preliminary injunction ordering the Texas State Board of Examiners of Marriage and Family Therapists and the Texas State Board of Examiners of Professional Counselors to suspend any license provided to LISA SALAZAR's;

46. Enter a declaration that the statements made by LISA SALAZAR in the police report are inconsistent, false, and defamatory;

47. Declare that LISA's false statements have caused harm to Plaintiff's reputation and character. Declare LISA's false statements were made with knowledge that they were false or with reckless disregard for their truth or falsity, and that LISA's false statements endangered the lives of Plaintiff, his infant daughter, and were made with the intent to harm Plaintiff's reputation and character. Further declare that as a result of these false and defamatory statements, the Plaintiff has suffered harm to his reputation, emotional distress, and financial loss;

48. Award Plaintiff compensatory and punitive damages for the harm caused by Defendants' actions; and Grant any other relief that the Court deems just and proper.

**Grant relief under Count Twelve**

49. Enter a Declaration that Galveston County, the State of Texas, have violated the Equal Protection Clause of the Fourteenth Amendment by enforcing protective orders in a discriminatory manner.

50. Enter a declaratory judgment that the United States Department of Justice, Office on Violence Against Women violates the Equal Protection Clause of the Fourteenth Amendment.

51. Enter a declaration that *Tex. Fam. Code § 81.007(a) violates is unconstitutional as-applied, in violation of the* Equal Protection Clause of the Fourteenth Amendment.

52. Enter a order requiring the Department of Justice (DOJ) to promptly provide payment for the defense of all cases involving protective orders or allegations of non-violent family violence, including payment for plaintiff's legal counsel to effectively prosecute this complaint. This will not waive right of plaintiff to seek damages resulting from DOJ actions.

**Grant relief under Count Thirteen**

53. Enter a declaration that the DOJ, OVW, the State of Texas, and Galveston County violated the plaintiff's right to equal protection as guaranteed by the Fourteenth Amendment and infringed upon his right to due process secured under the Fifth and Fourteenth Amendments. Declare that defendants deprived the plaintiff of these rights while acting under the guise or color of law.

54. Enter a Declaration that the DOJ, OVW, the State of Texas and Galveston County violated his right to Effective Counsel in violation of the Sixth Amendment (refer to ¶ 156-161), as well as his First Amendment right to Freedom of Speech and Press (refer to ¶ 162).

55. Enter a declaration that Galveston County and the State of Texas engaged in malicious prosecution (refer to ¶ 167) and negligence (refer to ¶ 168), resulting in the plaintiff suffering mental anguish.

56. Enter an injunction to prevent the defendants from engaging in discriminatory practices that violate the plaintiff's constitutional rights.

57. Enter an order requiring defendants to provide the plaintiff with all relevant information related to the alleged discriminatory practices, including any federal grants awarded to Galveston County and the recipient of OVW grants in Galveston, Texas.

58. Award plaintiff Monetary damages for any harm caused to the plaintiff as a result of the defendants' actions.

**Grant relief under Count Fourteen**

59. Enter a declaration that defendants, the State of Texas, Galveston County, their prosecutors, judges, and agents, as alleged and supported by the facts in paragraph 175, violate the Eighth Amendment of the United States Constitution, which prohibits cruel and unusual punishment. Declare that the prosecution procedures used by the defendants for allegations of domestic violence are unduly burdensome. Further declare, that said defendants violated U.S.C. § 241 , and have deprived the plaintiff of his rights secured under the United States Constitution while acting under the color of law.

60. Enter Declaration that the defendants engaged in defamation, and intentional conduct that caused plaintiff emotional distress. Declare plaintiff's First Amendment right to petition the government for a redress of grievances and freedom of speech were violated by defendants. Declare plaintiff was subject to malicious prosecution, that the prosecution is unduly burdensome, and plaintiffs Sixth Amendment right to effective counsel was violated.

61. Enter a declaration that the defendants State of Texas, Galveston County, have violated the plaintiff's right guaranteed under the Sixth Amendment, and, an impartial trial cannot be conducted in a manner consistent with the due process requirements of the fifth and fourteenth amendments in Galveston County .

62. Enter a declaration that the bond conditions imposed by Galveston County on November 14, 2021, are unconstitutional and violate the First, Second, Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, and declare that the bond conditions are invalid and void. Enter a preliminary injunction to prohibit the defendants from further detaining or harassing the plaintiff.

**Grant relief under Count Fifteen**

63. Enter a declaration that the State of Texas, Jack Roady, the Galveston County District Attorney's Office, and Galveston County have violated the plaintiff's rights secured under the Constitution and laws of the United States, including, the Equal Protection Clause of the Fourteenth Amendment, the First Amendment

right to free speech, violations of the freedom of the press and free exercise of religion, or other applicable federal laws and regulations.

64. Declare the defendants have violated the plaintiff's right to bear arms guaranteed by the Second Amendment, the right to be secure in his person and property, and by forcing plaintiff to take a genetic test, have violated the right to be free from unreasonable searches and seizures, guaranteed by the Fourth Amendment. Further declare, the defendants have violated the Fifth Amendment prohibition of compelled disclosure and self-incrimination and the Sixth Amendment right to effective counsel.

65. Declare the defendants have violated the Eighth Amendment prohibition of the use of cruel and unusual punishment.

**Grant relief under Count Sixteen**

66. Enter a declaration that defendants have intentionally inflicted emotional distress upon Plaintiff, and the Plaintiff has suffered severe emotional distress, which has caused significant harm to his physical, emotional, and mental health.

67. Enter a declaration that Defendants Galveston County and the State of Texas violated plaintiffs privacy by disclosing images of mugshots taken by the county while plaintiff was detained, and allowing a third party website to gain access to the photos, and distribute the images online without plaintiffs permission, and in a humiliating manner.

68. Declare that Galveston County violated the fourth amendment of the United States Constitution by compelling Plaintiff to take a genetic test.

69. Enter a Declaration that defendants Mathew A. Skiller, Skillern Firm, and Rawan Al-Najjar have entered false and defamatory statements accusing the Plaintiff of committing crimes prior to proper determination, or a impartial trial. Furhter declare the false or misleading statements entered by these defendants were made with knowledge that they were false or misleading, with reckless disregard for the truth or falsity, and that the false or misleading statements were made with the intent to incriminate, and harm, or damage Plaintiff's reputation and character.

70. Declare that Plaintiff is entitled to relief under the common law and state statutes, including damages for defamation, libel, slander, and false light, and malicious prosecution. Plaintiff also seeks injunctive relief to prevent Defendant from

continuing to make false and defamatory statements about Plaintiff, and seek criminal penalties against the defendants.

**Grant relief under Count Seventeen**

71. Declare that the OVW funded educational activities are a "program or activity" that "receive Federal financial assistance" within the meaning of Title IX.

72. Declare office the activities of the Office of Violence Against Women including the educational programs are primarily gender focused, and violate the equal protection clause of the Fourteenth Amendment;

73. Declare that the solution proposed by OVW for dealing with those accused of "domestic violence" is imprisonment, and that the passage of the crime bill led to substantial increases in incarceration in the United States;

74. Declare that OVW unfairly targets males, black, Hispanic, and other people of color, and that this targeting amounts to discriminatory practices in violation of their constitutional rights. Further declare the Department of Justice and Office of Violence Against Women violate Title IX;

75. Enter a Declaration that defendants Jack Roady, Kerri Foley, Galveston County, the State of Texas, the United States Department of Justice, Office on Violence Against Women, have engaged in discriminatory practices which disproportionately targets males, the poor and people of color.

76. Enter a Declaration that all state and federal laws which encourage discriminatory practices which disproportionately targets males, the poor and people of color are unconstitutional.

77. Enter a declaration that defendants the United States Department of Justice, Office on Violence Against Women have engaged in conspiracy to violate the rights of males, the poor, people of color, under the guise or color of law.

78. Enter a declaration that defendants willfully and knowingly conspired to deprive plaintiff of his federally-protected rights under color of law as defined under 18 U.S.C. § 241 and §242;

79. Enter a declaration that defendants Kerri Foley, Matthew Skillern and Skillern Firm, willfully and knowingly damaged religious real property in or affecting

interstate commerce 18 U.S.C. § 247(a)(1); Further declare that defendants willfully and knowingly attempted to intimidate plaintiff because of plaintiff's specific characteristics or his participation in enumerated protected activities as described under 18 U.S.C. § 245(b)(2);

80. Enter a Declaration that defendants League City Police Department, Kathleen Mccumber, Galveston County, and the State of Texas, entered false and defamatory statements accusing the Plaintiff of committing crimes prior to proper investigation, a hearing, or a impartial trial. Further declare the statements entered by these defendants were made with knowledge that may be false or misleading statements, were made with the intent to incriminate, harm, or damage Plaintiff's reputation and character.

81. Declare that Plaintiff is entitled to relief under the common law and state statutes, including damages for defamation, libel, slander, and false light, and malicious prosecution. Plaintiff also seeks injunctive relief to prevent Defendant from continuing to make false and defamatory statements about Plaintiff, and seeks criminal penalties against Jack Roady and Kerri Foley.

82. Preliminarily and permanently enjoin Defendant KERRI FOLEY from presiding over any proceedings in which plaintiff is named as a party.

83. Preliminarily and permanently enjoin Defendants for further harassing, detaining plaintiff.

**Grant relief under Count Eighteen**

84. Declare that defendants United States Department of Justice, OVW have violated the plaintiff's rights secured under the Constitution and laws of the United States, including but not limited to 18 U.S.C. § 241; and willfully deprived plaintiff of federally-protected rights under color of law under 18 U.S.C. § 242, the Equal Protection Clause of the Fourteenth Amendment, the Sixth Amendment right to effective counsel, fifth amendment prohibition of compelled disclosure and self-incrimination, the right to carry and bear arms of the Second Amendment, the right to be secure in person and property, and the right to security or the right to be free from unreasonable searches and seizures of the Fourth Amendment, the First Amendment right to free speech, violations of the freedom of the press, and free exercise of religion, or other applicable federal laws and regulations, and Eighth Amendment prohibition of the use of cruel and unusual punishment.

85. Enter a Declaration that defendant JOSEPH ROBINETTE BIDEN JR. has violated the plaintiff's rights secured under the Constitution and laws of the United States, including but not limited to 18 U.S.C. § 241; and willfully deprived plaintiff of federally-protected rights under color of law under 18 U.S.C. § 242, the Equal Protection Clause of the Fourteenth Amendment, the Sixth Amendment right to effective counsel, fifth amendment prohibition of compelled disclosure and self-incrimination, the right to carry and bear arms of the Second Amendment, the right to be secure in person and property, and the right to security or the right to be free from unreasonable searches and seizures of the Fourth Amendment, the First Amendment right to free speech, violations of the freedom of the press, and free exercise of religion, or other applicable federal laws and regulations, and Eighth Amendment prohibition of the use of cruel and unusual punishment.

86. Preliminarily and permanently enjoin defendants Joseph Biden, United States Department of Justice, Office on Violence Against Women, the State of Texas, Galveston County, League City Police Department, Dwight D. Sullivan, Kerri Foley, Jack Roady, Kathleen Mccumber, from engaging in any further activities that violate plaintiff's rights secured under the Constitution and laws of the United States, including those alleged in paragraphs 112 through 222.

87. Order defendant JOSEPH ROBINETTE BIDEN JR., in his personal capacity, to refrain from any activities that propagate for the violation of plaintiff's rights secured under the Constitution and laws of the United States, including those alleged in paragraphs 112 through 222.

88. Enter a declaration that defendant JOSEPH ROBINETTE BIDEN JR.'s has engaged in astroturfing by deliberately and deceptively using slogans like "champion progress and prosperity for American families" at the Biden Foundation without disclosing the truth about the gender non-binary messaging being propagated. Further declare, the defendant's activities have caused harm to families. Declare the aforementioned activities constitute an act of **fraud** , and plaintiff has suffered as a result, and that defendant is liable for any damages resulting from such fraud.

89. Order defendant JOSEPH ROBINETTE BIDEN JR., in his personal or official capacity, to pay compensatory and punitive damages to plaintiff for the injuries suffered as a result of defendant's violations of plaintiff's rights secured under the Constitution and laws of the United States, including those alleged in paragraphs

112 through 222, and for the fraud committed against plaintiff through his involvement with the Biden Foundation.

90. Enter a order granting relief to all those targeted by VAWA. Plaintiff does not waive any other claims or rights arising out of the same or similar facts, and nothing in the Order shall be construed as a waiver of any such claims or rights, including filing a class-action complaint on behalf of those similarly situated. Dismissal of charges against plaintiff is without prejudice to plaintiff's right to pursue any and all claims or remedies in any other forum or jurisdiction.

- Hatem Tawfiq is seeking both declaratory and injunctive relief, which would require the Department of Justice (DOJ) to promptly provide payment for the defense of all cases involving protective orders or allegations of non-violent family violence. Additionally, Tawfiq is requesting that the DOJ, OVW (Office on Violence Against Women), and the issuing authority provide restitution and compensation to each individual who has been subject to such protective orders within ten years from the date of filing this complaint. The compensation should be equal to the per diem daily allowance established by the General Services Administration (GSA) for the area in which the protective order was issued, multiplied by the number of days the protective order was in effect, and further multiplied by a factor of 2.5.
- Require the issuing authority to pay the per diem daily allowance established by the General Services Administration (GSA) for the area in which the protective order was issued to anyone denied reentry into there homes due to a protective order, for the first thirty days.
- Hatem Tawfiq seeks declaratory and injunctive relief that prohibiting the OVW from inciting gender-bias in educational programs, and for the DOJ to fund an independent review on the harm caused by the activities of OVW and its grantees.

**Grant relief under Count Nineteen**

- Declare that the U.S. Madinah Mission a foreign or international mission;
- Declare that the Hejaz ("Al- Hedjaz") a foreign Country;
- Enter a Preliminary Injunction restraining Defendants from taking any adverse actions against Hatem Tawfiq Alghuti, the presiding officer of the Mission and Public Defender of the People of Texas, or any action that may restrict his ability to perform his duties, and Order the

Defendants to pay all expenses related to the establishment of the U.S. Madinah Mission;

- Declare that the presiding officer of the U.S. Madinah Mission shall hold equal status, rank, and privileges held by an Ambassador at Large until further notice from the court;

91. Enter a judgment assessing the United States Department of Justice, Office of Violence Against Women, the State of Texas, and all other defendants, with _____ MILLION U.S. DOLLARS in compensatory and punitive damages. The damages shall be disproportionately apportioned against the United States, the State of Texas, and their agencies respectively. Enter an Order that HATEM TAWFIQ ALGHUTI be awarded judgment in the amount of _____ MILLION U.S. DOLLARS for the following violations: defamation, libel, slander, false light, malicious prosecution, false arrests, damaging religious property, intentional infliction of emotional distress, and violations of rights secured under the Constitution of the United States, and that said payment shall be paid in the form and manner instructed by Hatem Tawfiq Alghuti.

92. Award attorney fees to the plaintiff as appropriate under the law.

93. Grant any other relief the court deems just and proper.

Respectfully submitted this 19 day of April, 2023.

**Hatem Tawfiq Alghuti**
*Plaintiff*

13507 Hidden Dell Ct,
Houston, TX 77059
Email: h.t.alghuti@gmail.com
Tel: (281)667-2662

## VIII.  Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

A. I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Respectfully submitted this 19 day of April, 2023.

/s/ *Hatem Tawfiq Alghuti*
**Hatem Tawfiq Alghuti**
*Plaintiff*

13507 Hidden Dell Ct,
Houston, TX 77059
Email: h.t.alghuti@gmail.com
Tel: (281)667-2662

Sensitive
Data

United States Courts
Southern District of Texas
F I L E D

# EXHIBIT-1

NO. _____

|  |  |  |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE MUNICIPAL COURT |
| VS. | § | OF |
|  | § |  |
| _____Hatem, Gouti_____ | § | LEAGUE CITY, |
| Defendant | § | GALVESTON COUNTY, TEXAS |

## MAGISTRATE'S ORDER FOR EMERGENCY PROTECTION

On the _23rd_ day of _____December_____ , 20 _20_ , the Court determined that the statutory requirements have been satisfied to invoke the Court's authority under Art. 17.292, Texas Code of Criminal Procedure, to issue this Magistrates Emergency Protective Order against _____Hatem, Gouti_____ (herein "Defendant"), and there is good cause to issue this Order based on the following findings.

### FINDINGS

The Court finds that on the _23rd_ day of _____December_____ , 20 _20_ , Defendant was arrested by _____Ofc. M. Serenil_____ , a duly-authorized Peace Officer, for the offense(s) of:

_____TERRORISTIC THREAT OF FAMILY/HOUSEHOLD_____

an offense involving "family violence" as defined in Chapter 71, Texas Family code, or

an offense under Sections 22.011 (Sexual Assault), 22.021 (Aggravated Sexual Assault), or 42.072, Texas Penal Code (Stalking), Texas Penal Code .

The Court also finds that the arrest was for an offense involving:

serious bodily injury to the victim, or

the use or exhibition of a deadly weapon during the commission of an assault.

**Note:** Pursuant to CCrP article 17.292(j), in Order for Emergency Protection issued under Subsection (b)(2) of this article for an offense that also involved the use or exhibition of a deadly weapon during the commission of an assault remains in effect to the 91st day, but not less than the 61 day after issuance.

The Court further finds that:

request was properly made for a Magistrate's Emergency Protective Order.

confidentiality of addresses and specific descriptions of locations is necessary for the safety of the persons protected by this order.

## ORDERS

**Protected Person(s):**

Based on the information presented, this Court enters this Order for Emergency Protection on behalf of the: (Applicant / Victim) ALNAJJAR, RAWAN _____ and the following child(ren) or persons:

"Mohammed Ali" Abu Sharifeh; Sarah Alghuti

**Prohibited Acts:**

**IT IS ORDERED** by this Court, pursuant to Article 17.292, Texas Code of Criminal Procedure, that Hatem, Gouti _____, Defendant is **prohibited from**:

committing family violence or an assault on any person protected under the order;

committing an act in furtherance of an offense under Section 42.072, Penal Code (stalking);

communicating directly with a member of the family or household or with the person(s) protected under the order (listed herein above) in a threatening or harassing manner;

communicating a threat through any person to a member of the family or household or to a person protected under the order;

going within 200 yards of ALNAJJAR, RAWAN _____, the Applicant, and the following child(ren) protected under this Order:
"Mohammed Ali" Abu Sharifeh; Sarah Alghuti

going within 200 yards of the residence located at ~~_____~~ or the residence of members of ALNAJJAR, RAWAN _____'s family or household;

going within 200 yards of the place of employment, of the Applicant located at ~~_____~~ (address) or the place of employment, or business of members of ALNAJJAR, RAWAN 's family or household;

going within 200 yards of any child care facility where a child protected under this order attends, including: (name & address) _____
_____ ; or,

going within 200 yards of any school where a child protected under this order attends, including: Iman Academy 825 Jetstream Ct. Webster, TX 77598 _____ .

**Confidentiality of Addresses:**

Based on the facts presented, the Court further finds that for the safety of the person or persons protected under this order, the addresses and specific locations of the person or persons protected by the order remain confidential and shall be omitted from the order.

**Delivery to the Respondent:**

IT IS FURTHER ORDERED that the Defendant shall be served a copy of this Protective Order in open court at the time it signed and that said Protective Order shall be in full force and effect on issuance.

        This Order was read to Defendant and a copy was given to Defendant in open court at the time it was issued.

**Notice to the Victim:**

        If Victim is not present when Order is issued:

IT IS FURTHER ORDERED THAT THE LAW ENFORCEMENT AGENCY IN WHOSE CUSTODY Defendant is held at the time of issuance of this Order shall make a good faith effort to notify, within 24 hours, the victim named in this Order that this Order has been issued by calling the victim's residence and place of employment.

**Required Notifications:**

IT IS FURTHER ORDERED that copies of this Protective Order shall be sent:
    to the Chief of Police in League City, Texas AND the Chief of Police of
    _____,the municipality where an individual(s) protected by the order resides;
    to the Sheriff of Galveston County and the Sheriff of the county where the individual
    protected by the order resides;
    to the Constable in Pct. 4   , Galveston County, Texas;
    to the principal, director, or person in charge of the school or childcare facility attended
    by a person protected by the order and named herein.
    to the victim (*if not present at hearing*)

**Suspension of Concealed Handgun License:**

Unless Defendant is a peace officer, as defined by Section 1.07, Texas Penal Code, and actively engaged in employment as a sworn full-time paid employee of a State agency or political subdivision, IT IS ORDERED that the license to carry a concealed handgun of Hatem, Gouti _____, Defendant, is suspended for the duration of this order. A copy of this order shall be forwarded to the Department of Public Safety. On receipt of this order suspending the license to carry a concealed handgun, the department shall record suspension of the license, report the suspension to the local law enforcement agencies, as appropriate, and demand surrender of the suspended license from the license holder.

**Duration of Order:**

ALL SAID, MAGISTRATE'S EMERGENCY PROTECTIVE ORDER IS SIGNED AND ENTERED AND TAKES EFFECT this the _____ day of _____, 20 ___, and remains in effect until the _____ day of _____, 20 ___.

_____
Judge Presiding
City of League City
Galveston County Magistrate

## WARNING

A VIOLATION OF THIS ORDER BY COMMISSION OF AN ACT PROHIBITED BY THE ORDER MAY BE PUNISHABLE BY A FINE OF AS MUCH AS $4,000 OR BY CONFINEMENT IN JAIL FOR AS LONG AS ONE YEAR OR BY BOTH. AN ACT THAT RESULTS IN FAMILY VIOLENCE OR A STALKING OFFENSE MAY BE PROSECUTED AS A SEPARATE MISDEMEANOR OR FELONY OFFENSE. IF THE ACT IS PROSECUTED AS A SEPARATE FELONY OFFENSE, IT IS PUNISHABLE BY CONFINEMENT IN PRISON FOR AT LEAST TWO YEARS.

THE POSSESSION OF A FIREARM BY A PERSON, OTHER THAN A PEACE OFFICER, AS DEFINED BY SECTION 1.07, PENAL CODE, ACTIVELY ENGAGED IN EMPLOYMENT AS A SWORN, FULL-TIME PAID EMPLOYEE OF A STATE AGENCY OR POLITICAL SUBDIVISION, WHO IS SUBJECT TO THIS ORDER MAY BE PROSECUTED AS A SEPARATE OFFENSE PUNISHABLE BY CONFINEMENT OR IMPRISONMENT.

NO PERSON, INCLUDING A PERSON WHO IS PROTECTED BY THIS ORDER, MAY GIVE PERMISSION TO ANYONE TO IGNORE OR VIOLATE ANY PROVISION OF THIS ORDER. DURING THE TIME IN WHICH THIS ORDER IS VALID, EVERY PROVISION OF THIS ORDER IS IN FULL FORCE AND EFFECT UNLESS A COURT CHANGES THE ORDER.

NO. _____

| | | |
|---|---|---|
| THE STATE OF TEXAS<br>VS. | §<br>§<br>§ | IN THE MUNICIPAL COURT<br>OF |
| _____ Hatem, Gouti _____<br>Defendant | §<br>§<br>§ | LEAGUE CITY,<br>GALVESTON COUNTY, TEXAS |

## RECEIPT ACKNOWLEDGMENT

I, _____ Hatem, Gouti _____, hereby acknowledge that I have received a copy of this Protective Order in open Court at the hearing in this matter pursuant to 17.292, Texas Code of Criminal Procedure.

_____
DEFENDANT

I, _____, Officer certain of said Court of Galveston County, Texas, delivered a copy of this Protective Order to _____ on this the ___ day of _____, 20__.

_____
OFFICER

# OFFICIAL RECEIPT



**Dwight D. Sullivan**
**Galveston County Clerk**
**600 59th Street**
**Suite 2001**
**Galveston, Texas 77551**
**(409) 766 - 2200**
**Any overpayments of $5 or more will be refunded at the end of the month.**

Payor
Loren Jackson

Receipt N
**2021-7001-C**

Transaction Da
10/25/202

| Description | | Amount Paid |
|---|---|---|
| Miscellaneous Payment | | |
| | Copies - Certified | 6.00 |
| | Certified Copy | 5.00 |
| | Copies | 1.00 |
| | Copies - Certified | 6.00 |
| | Certified Copy | 5.00 |
| | Copies | 1.00 |
| | Copies - Certified | 6.00 |
| | Certified Copy | 5.00 |
| | Copies | 1.00 |
| **SUBTOTAL** | | 18.00 |

**PAYMENT TOTAL** | 18.00

Credit Card (Ref #100229583446) Tendered | 18.00
Total Tendered | 18.00
Change | 0.00

| 10/25/2021 | Cashier B. Hernand | Audit |
|---|---|---|
| 04:27 PM | Station BH | 4344878 |

# OFFICIAL RECEIPT

10/25/21, 4:18 PM

Certified Payments



## All Transactions Approved

### Bureau: 4389844 - Galveston County Courts

| Invoice Item | Amount | Quantity | Conv. Fee | Result |
|---|---|---|---|---|
| Payment ID: 100229583446 Certified Copies | $18.00 | 1 | $1.00 | Approved |
| Total Amounts + All Fees: | $19.00 | | | |

## BILLING INFORMATION

Payment will be billed to:

Loren Jackson

Card ending in ...0000 (Visa)

Processed at 10/25/2021 4:18:47 PM CDT

## LEGAL NOTICE

Certified Payments provides a service for consumers and businesses to make payments via their credit card for various types of services and taxes. By utilizing Certified Payments, you, the cardholder, are subject to the following terms and conditions. By submitting your payment through Certified Payments, you are agreeing to the terms and conditions listed in the Legal Notices link below. Please read all terms and conditions carefully.

Privacy Statement - www.certifiedpayments.net/PrivacyStatement.aspx
Legal Notice - www.certifiedpayments.net/LegalNotices.aspx

| | | | |
|---|---|---|---|
| DA Control Number: | 2021-MD-000272 | SO Number: | 408558 |
| Cause No: | MD 3982 65 | Court: | |
| Defendant: | HATEM TAWFIQ ALGHUTI | | |
| Address: | 13507 HIDDEN DELL CT  HOUSTON TX 77059 | | COUNTY COURT AT LAW NO. 1 |
| Offense Code: | 38990027 - VIOL BOND/PROTECTIVE ORDER | | OF GALVESTON COUNTY |
| CJIS TRN #: | 9217454214; 9217454214  A001; A001 | | |
| Filing Agency: | Galveston County Sheriff's Office | Officer Name: | ZAVESKY |
| Complainant: | RAWAN MOHAMMAD ISSA ALNAJJAR | | |
| Location: | BONDED | Date Filed: | February 1, 2021 |
| C/C: | | | |
| Co-Defendant: | | Co-Defendant Control No: | |
| Bondsman: | GALVESTON AREA | Bond Amount: | $10000 |

## COMPLAINT

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS

PERSONALLY APPEARED before me the undersigned authority this Affiant, who after being by me duly sworn, deposes and says your Affiant has good reason to believe and does believe that one, HATEM TAWFIQ ALGHUTI, hereinafter styled Defendant, heretofore, on or about the 29th day of December, 2020, in the County of Galveston and State of Texas did then and there intentionally and knowingly violate the terms of an order issued by Kathleen McCumber of the Municipal Court of League City of Galveston County, Texas, on the 23rd day of December, 2020, under authority of Article 17.292 of the Texas Code of Criminal Procedure, by intentionally and knowingly communicating directly with Rawan Alnajjar, a protected individual, in a threatening or harassing manner, to-wit: contacting the said protected individual by text messages.

AGAINST THE PEACE AND DIGNITY OF THE STATE

Sworn to and subscribed before me this February 1, 2021

JACK ROADY
CRIMINAL DISTRICT ATTORNEY
GALVESTON COUNTY, TEXAS

AFFIANT

ASSISTANT CRIMINAL DISTRICT ATTORNEY
GALVESTON COUNTY, TEXAS

FILING ORIGINAL

FILED

2021 FEB -2  PH 1:07

COUNTY CLERK
GALVESTON COUNTY, TEXAS

STATE OF TEXAS
COUNTY OF GALVESTON

CERTIFIED COPY CERTIFICATE

The above is a full, true, and correct photographic copy of the original record now in my lawful custody and possession, as the same is recorded in the Official Public Records of County Court at Law No. 1 in my office.

I hereby certify on October 25, 2021.



DWIGHT D. SULLIVAN, County Clerk
Galveston County, Texas

by Becky Hernandez Deputy
Becky Hernandez

| | | | |
|---|---|---|---|
| DA Control Number: | 2020-MD-006963 | SO Number: | 408558 |
| Cause No: | MD398254 | Court: | |
| Defendant: | HATEM TAWFIQ ALGHUTI | | COUNTY COURT AT LAW NO. 1 |
| Address: | 13507 HIDDEN DELL CT  HOUSTON TX 77059 | | OF GALVESTON COUNTY |
| Offense Code: | 16020010 - TERRORISTIC THREAT OF FAMILY/HOUSEHOLD | | |

| | |
|---|---|
| CJIS TRN #: | 9252315179; 9252315179  A001; A001 |

| | | | |
|---|---|---|---|
| Filing Agency: | League City Police Department | Officer Name: | SERENIL, M. |
| Complainant: | RAWAN MOHAMMAD ISSA ALNAJJAR | | |
| Location: | BONDED | Date Filed: | February 1, 2021 |
| C/C: | | | |
| Co-Defendant: | | Co-Defendant Control No: | |
| Bondsman: | GALVESTON AREA | Bond Amount: | $2500 |

## COMPLAINT

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS

PERSONALLY APPEARED before me the undersigned authority this Affiant, who after being by me duly sworn, deposes and says your Affiant has good reason to believe and does believe that one, HATEM TAWFIQ ALGHUTI, hereinafter styled Defendant, heretofore, on or about the 23rd day of December, 2020, in the County of Galveston and State of Texas did then and there threaten to commit an offense involving violence to a person, namely, to kill her and/or her family, with intent to place Rawan Alnajjar in fear of imminent serious bodily injury.

AGAINST THE PEACE AND DIGNITY OF THE STATE

Sworn to and subscribed before me this February 1, 2021

JACK ROADY
CRIMINAL DISTRICT ATTORNEY
GALVESTON COUNTY, TEXAS

_____
AFFIANT

ASSISTANT CRIMINAL DISTRICT ATTORNEY
GALVESTON COUNTY

FILING ORIGINAL

FILED

2021 FEB -2  PM 12: 55

COUNTY CLERK
GALVESTON COUNTY, TEXAS

STATE OF TEXAS
COUNTY OF GALVESTON

CERTIFIED COPY CERTIFICATE

The above is a full, true, and correct photographic copy of the original record now in my lawful custody and possession, as the same is recorded in the Official Public Records of County Court at Law No. 1 in my office.

I hereby certify on October 25, 2021.



DWIGHT D. SULLIVAN, County Clerk
Galveston County, Texas

by _Becky Hernandez_ Deputy
    Becky Hernandez

MD 398 254

SPN: _____          Case No:  206588

NO. _____                                    IN THE JUSTICE COURT OF
                                               GALVESTON COUNTY, TEXAS
THE STATE OF TEXAS              RECEIVED
                                               PRECINCT NO: _____
vs                          20 DEC 28 AM 11: 18

HATEM ALGHUTI

**PEACE OFFICER'S REQUEST FOR MAGISTRATE'S PROBABLE**
**CAUSE FINDING IN ACCORDANCE WITH ART 17.033, C.C.P.s**

The Defendant in the above styled and number cause was arrested, without a warrant, for the offense of TERRORISTIC THREAT FAMILY/HO
request that a magistrate review the probable cause affidavit prepared by this officer concerning the facts of the arrest, and/or conduct an
examining trial into this offense and then sign a written finding of probable cause if such a finding is supported by the evidence.

_____ ✓ _____ This misdemeanor case requires a probable cause finding within 24 hours of arrest.
_____ _____ This felony case requires a probable cause finding within 48 hours of arrest.

Respectfully Submitted,

OFFICER'S SIGNATURE                            LCPD
                                               DEPARTMENT

                                               12/23/2020      11:43:18PM
SERENIL, MANDA                                 DATE           TIME
PRINTED OFFICER'S NAME

**MAGISTRATE'S PROBABLE CAUSE FINDING-BOND SETTING ORDER**

The above styled and numbered cause was filed in Justice of the Peace Court in Galveston County, Texas. Defendant was arrested without a
accordance with Art. 17.033, C.C.P., this court:

_____ ✓ has reviewed the complaint together with the probable cause affidavit submitted by the arresting officer, and/or
_____ has conducted an examining trial in the case

_____ ✓ Court finds probable cause for further detention DOES exist.

_____ Court finds probable cause for further detention DOES NOT exist and ORDERS the Sheriff of Galveston County, Texas to
immediately RELEASE the defendant from custody.

_____ ✓ This finding was made on the 24 day of December 20 20 at 10:00 o'clock, A.M.
(within 24 hours of this misdemeanor Defendant's arrest)

_____ This finding was made on the _____ day of _____, 20 _____ at _____ o'clock, _____.M.
(within 48 hours of this felony Defendant's arrest)

_____ ✓ Finding made is based on ☐ live testimony  ☑ affidavit  ☐ lack of affidavit  ☐ no live testimony
        ☐ other: _____

_____ Defendant's bond is set at $ 2500      ☐ Pre-Trial Release authorized, if checked.

☐ Additional Conditions of Bond: _____

Signed this the 24 day of _____ 20                    MAGISTRATE'S SIGNATURE
                                                        COURT:

                                                        Kathleen McCumber, League City Municipal Court
                                                        PLEASE PRINT MAGISTRATE'S NAME

                    2021 FEB -2 PM 12: 56

                    FILED

Art. 17.033, C.C.P., 07/16/01    COUNTY CLERK
                                 GALVESTON COUNTY, TEXAS

STATE OF TEXAS                    CERTIFIED COPY CERTIFICATE
COUNTY OF GALVESTON

The above is a full, true, and correct photographic copy of the original record now in my lawful custody and possession, as the same is
recorded in the Official Public Records of County Court at Law No. 1, in my office.

                                               DWIGHT D. SULLIVAN, County Clerk
                                               Galveston County, Texas

I hereby certify on October 25, 2021.

                                               by Becky Hernandez          Deputy
                                                  Becky Hernandez

MD 3 9 8 2 5 4

### Statutory Warnings By Magistrate
### Arts. 15.17, 26.04, C.C.P.

THE STATE OF TEXAS       §
COUNTY OF GALVESTON      §

This is to certify that on this day, designated below, I administered to herein identifed accused the warning and admonishment required by Articles 15.17 and 26.04 of the Texas Code of Criminal Procedure, by informing him/her in clear language the following:

| ALGHUTI, HATEM | 02/24/1986 | 12/23/2020 | 2019 |
|---|---|---|---|
| Name of Accused | DOB | Arrest Date | Arrst/Time |

(1) You have been accused of the offense(s) of:

| Charge #1: TERRORISTIC THREAT FAMILY/HOUSEHOLD | Bond: $2,500.00 | Charge #4: | Bond: |
|---|---|---|---|
| Charge #2: | Bond: | Charge #5: | Bond: |
| Charge #3: | Bond: | Charge #8: | Bond: |

(2) You have a right to retain counsel
(3) You have the right to remain silent.
(4) You have a right to have an attorney present during any interviews with peace officers or attorneys representing the State.
(5) You have the right to terminate the interview at any time.
(6) You have the right to request the appointment of counsel, if you are indigent and cannot afford counsel.
(7) You have the right to an examining trial.
(8) You are not required to make a statement and that any statement made by you may be used against you.

Upon inquiry by the Court, the defendant stated the defendant is a citizen of

☑ the United States of America, or

☐ the country of _____, (check one) a ☐ mandatory ☐ discrecationary notification country.

☐ Are you a U.S. Veteran ☐ Yes ☑ No **OR** ☐ currently serving in the U.S. Military
The Court further informed the defendant that

☐ As a non-U.S. Citizen, who is being arrested or detained, you are entitled to have us notify you country's consular

representatives here in the United States. Do you want to us to notify your country's consular officials? ☐ Yes ☐ No

☐ Because of your nationality, we are required to notify your country's consular representative here in the United States that you
have been arrested or detained. We shall notify your country's consular officials as soon as possible.
In a addition, after advising the Accused of his/her right to counsel (check one)

☐ Arrestee requested appointed Counsel and forms were completed and forwarded to _____

(court or designee) on _____ by ☐ Hand delivery ☐ Interoffice mail ☐ U.S. Mail

☑ Arrestee did not request appointed counsel

Further, I find that the Accused ☐ IS ☑ IS NOT currently on bail for a separate offense, ☐ that I do not have enough inrormation to make th determination.

Total BOND(s) for these combined offense(s) is set at $2500. Each being set individually as stated herein above.

☐ Pre-Trial Release bond is authorized, if checked.

I certify the above statutory warning and other matters stated herein occurred at (check one) ☐ 5700 Avenue H, Galveston, Galveston

County, Texas, or at ☐ _____, Galveston County, Texas on

_____ 20___ Time: 10:03 ☐ M./P.M.

FILED

2021 FEB -2 PM 12: 56

☐ Defendant refused to sign

PRESIDING MAGISTRATE

Kathleen McCumber, League City Municpal Court

MAGISTRATE'S TITLE/POSITION
GALVESTON COUNTY, TEXAS

This is to certify that on this day, designated below, I received the above warning and admonishment required by Articles 15.17 and 26.04 of th of Criminal Procedure.

Date _____
COUNTY CLERK
GALVESTON COUNTY, TEXAS

Defendant Signature _____

(Original to Court; Copies to GCSD & CDA)

Rev. 09/19/2013 (Form#GC-3)

sensitive Data

United States Courts
Southern District of Texas
FILED

Nathan Ochsner, Clrt

# EXHIBIT-2

## CAUSE NO. 20-FD-2694

| | | |
|---|---|---|
| **RAWAN AL-NAJJAR** | § | **IN THE DISTRICT COUNTY** |
| | § | |
| **AND** | § | **COURT AT LAW NO. 2** |
| | § | |
| **HATEM TAWFIQ ALGHUTI** | § | **GALVESTON COUNTY, TEXAS** |

### APPLICANT'S RELIEF REQUESTED AT PROTECTIVE ORDER HEARING

### TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, **RAWAN AL-NAJJAR**, Applicant, in the above entitled and numbered cause, and respectfully requests the following relief from the Court on Temporary Orders in this matter:

### FINDINGS

_____ The Court finds that the Applicant and Respondent are in and intimate or dating relationship and are members of the same household.

_____ The Court finds that family violence has occurred.

_____ The Court finds that family violence is likely to occur again in the future.

_____ The Court finds that Respondent committed an act constituting a felony offense involving family violence against the applicant or a member of the applicant's family or household, regardless of whether Respondent has been charged with or convicted of the offense.

_____ The court therefore grants a lifetime protective over against Respondent for the protection of Applicant, Rawan Al-Najjar, SAMIA ADEL MARMASH and the minor children SAMIA ADEL MARMASH, MOHAMMAD ALI ABU SHARIFEH ("Protected Persons").

_____ The court finds that the protective order is in the best interest of the child.

### ORDERS

### It is therefore ORDERED that Respondent is prohibited from:

a. _____ Committing family violence as described in section 71.004 of the

Texas Family Code.

b. _____ Doing any act other than a defensive measure to protect Respondent that is intended to result in physical harm, bodily injury, assault, or sexual assault against any Protected Person.

c. _____ Doing any act other than a defensive measure to protect Respondent that is a threat that reasonably places any Protected Person in fear of imminent physical harm, bodily injury, assault or sexual assault.

d. _____ Committing abuse of a child of the family or household as defined by Texas Family Code section 261.001(1) (C), (E), (G), (H), (I), (J), (K) and (M).

e. _____ Communicating directly with any Protected Person in a threatening or harassing manner.

f. Communicating a threat through any person to any Protected Person.

g. _____ Communicating in any manner with any Protected Person except through Respondent's attorney.

h. _____ Engaging in conduct directed specifically toward any Protected Person, including following Protected Person, that is reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass Protected Person.

i. _____ Going to or near, or within 250 feet of, any location where any Protected Person is known by Respondent to be and from remaining within 250 feet after Respondent becomes aware of Protected Person's presence.

j. _____ Going to or near the residences or places of employment or business of any Protected Person. Specifically Respondent is prohibited from going to or near Baylor College of Medicine located at One Baylor Plaza, Houston,

Texas 77030 and Respondent is required to maintain at least 250 feet between himself and Protected Person.

k. _____ Going to or near the residences, child care facilities, or schools SARAH HATEM ALGHUTI and MOHAMMAD ALI ABU SHARIFEH normally attend or in which SARAH HATEM ALGHUTI and MOHAMMAD ALI ABU SHARIFEH normally reside. Specifically, Respondent is prohibited from going to or near Iman Academy Southeast located at ~~525 Mistreaver St., Webster, TX 77598~~ and is required to maintain at least 250 feet between himself and Applicant.

l. _____ Removing SARAH HATEM ALGHUTI and MOHAMMAD ALI ABU SHARIFEH from the possession of RAWAN AL-NAJJAR.

m. _____ Harming, threatening, or interfering with the care, custody, or control of a pet, companion animal, or assistance animal, as defined by section 121.002 of the Texas Human Resources Code, that is possessed by or in the actual or constructive care of any Protected Person.

n. _____ Transferring, encumbering, or otherwise disposing of property mutually owned or leased by the parties, except when in the ordinary course of business.

o. _____Possessing a firearm or ammunition unless Respondent is a peace officer, as defined by section 1.07 of the Texas Penal Code, actively engaged in employment as a sworn, full-time paid employee of a state agency or political subdivision.

p. _____ Interfering with Applicant's use of the residence located at ~~4604 Baylor Cove, League City, Texas 77573~~, including but not limited to

disconnecting utilities or telephone service or causing such services to be disconnected.

## FIREARMS

_____ Respondent's license to carry a handgun issued under subchapter H, chapter 411, of the Texas Government Code, if issues, be suspended.

## EXCLUSIVE USE OF PROPERTY

_____RAWAN AL-NAJJAR is granted exclusive possession of the parties' residence located at ~~RAWAN AL-NAJJAR, League City, Texas 77573~~

_____RAWAN AL-NAJJAR is granted exclusive possession of 2019 Volkswagen Tiguan SE motor vehicle.

## CHILDREN

_____RAWAN AL-NAJJAR is granted exclusive possession of the child, SARAH HATEM ALGHUTI

_____Respondent is denied access to the child of the child, SARAH HATEM ALGHUTI

_____Respondent is ORDERED to pay RAWAN AL-NAJJAR child support in accordance with the Texas child support guidelines outlined in the Texas Family Code for 1 child when a parent is unemployed with the first payment being due and payable on February 1, 2021 and on the first of each month thereafter.

_____Respondent is ORDERED to pay RAWAN AL-NAJJAR cash medical support in the amount of the cost of the monthly health insurance premium, $_____with the first payment being due and payable on February 1, 2021 and on the first of each month thereafter.

## OTHER

_____ Respondent be ordered to complete a battering intervention and prevention

program or counseling as provided by section 85.022(a) of the Texas Family Code.

**<u>ATTORNEY'S FEES</u>**

_____ Respondent be ordered to pay the SKILLERN FIRM located at 701 N. Post Oak Rd. Ste. 600 Houston, Texas 77024 reasonable and necessary attorney's fees in the amount of $_____ via check, cashier's check and money order on or before February 15, 2021.

# EX 2-1

# CIVIL CASE INFORMATION SHEET

Galveston County - District County Court at Law

Filed: 12/29/2020 1:41 PM
JOHN D. KINARD - District Clerk
Galveston County, Texas
Envelope No. 49277050
By: Angela Jarvis
12/29/2020 2:46 PM

CAUSE NUMBER *(FOR CLERK USE ONLY)*: __20-FD-2694__   COURT *(FOR CLERK USE ONLY)*: _____

STYLED   Rawan Al-Najjar and Hatem Tawfiq Alghuti

(e.g., John Smith v. All American Insurance Co; In re Mary Ann Jones; In the Matter of the Estate of George Jackson)

A civil case information sheet must be completed and submitted when an original petition or application is filed to initiate a new civil, family law, probate, or mental health case or when a post-judgment petition for modification or motion for enforcement is filed in a family law case. The information should be the best available at the time of filing.

## 1. Contact information for person completing case information sheet:

| | | Names of parties in case: | Person or entity completing sheet is: |
|---|---|---|---|

Name: Matthew A. Skillern

Email: matthew@skillernfirm.com

Plaintiff(s)/Petitioner(s): Rawan Al-Najjar

Person or entity completing sheet is:
- [X] Attorney for Plaintiff/Petitioner
- [ ] Pro Se Plaintiff/Petitioner
- [ ] Title IV-D Agency
- [ ] Other: _____

Address: 701 N. Post Oak Road, Suite 600

Telephone: 713-229-8855

City/State/Zip: Houston, Texas 77024

Fax: 713-481-8800

Defendant(s)/Respondent(s): Hatem Tawfiq Alghuti

Additional Parties in Child Support Case:

Custodial Parent: _____

Non-Custodial Parent: _____

Presumed Father: _____

Signature: *Matthew Skillern*

State Bar No: 24041926

[Attach additional page as necessary to list all parties]

## 2. Indicate case type, or identify the most important issue in the case *(select only 1)*:

| Civil | | | Family Law | |
|---|---|---|---|---|
| **Contract** | **Injury or Damage** | **Real Property** | **Marriage Relationship** | **Post-judgment Actions (non-Title IV-D)** |
| *Debt/Contract*<br>[ ] Consumer/DTPA<br>[ ] Debt/Contract<br>[ ] Fraud/Misrepresentation<br>[ ] Other Debt/Contract:<br>_____ | [ ] Assault/Battery<br>[ ] Construction<br>[ ] Defamation<br>*Malpractice*<br>[ ] Accounting<br>[ ] Legal<br>[ ] Medical<br>[ ] Other Professional<br>Liability:<br>_____ | [ ] Eminent Domain/<br>Condemnation<br>[ ] Partition<br>[ ] Quiet Title<br>[ ] Trespass to Try Title<br>[ ] Other Property:<br>_____ | [ ] Annulment<br>[ ] Declare Marriage Void<br>*Divorce*<br>[X] With Children<br>[ ] No Children | [ ] Enforcement<br>[ ] Modification—Custody<br>[ ] Modification—Other |
| *Foreclosure*<br>[ ] Home Equity—Expedited<br>[ ] Other Foreclosure<br>[ ] Franchise<br>[ ] Insurance<br>[ ] Landlord/Tenant<br>[ ] Non-Competition<br>[ ] Partnership<br>[ ] Other Contract:<br>_____ | [ ] Motor Vehicle Accident<br>[ ] Premises<br>*Product Liability*<br>[ ] Asbestos/Silica<br>[ ] Other Product Liability<br>List Product:<br>_____<br>[ ] Other Injury or Damage:<br>_____ | **Related to Criminal Matters**<br>[ ] Expunction<br>[ ] Judgment Nisi<br>[ ] Non-Disclosure<br>[ ] Seizure/Forfeiture<br>[ ] Writ of Habeas Corpus—<br>Pre-indictment<br>[ ] Other: _____ | **Title IV-D**<br>[ ] Enforcement/Modification<br>[ ] Paternity<br>[ ] Reciprocals (UIFSA)<br>[ ] Support Order | |
| | | | **Other Family Law**<br>[ ] Enforce Foreign<br>Judgment<br>[ ] Habeas Corpus<br>[ ] Name Change<br>[X] Protective Order<br>[ ] Removal of Disabilities<br>of Minority<br>[ ] Other:<br>_____ | **Parent-Child Relationship**<br>[ ] Adoption/Adoption with<br>Termination<br>[ ] Child Protection<br>[ ] Child Support<br>[ ] Custody or Visitation<br>[ ] Gestational Parenting<br>[ ] Grandparent Access<br>[ ] Parentage/Paternity<br>[ ] Termination of Parental<br>Rights<br>[ ] Other Parent-Child:<br>_____ |
| **Employment** | **Other Civil** | | | |
| [ ] Discrimination<br>[ ] Retaliation<br>[ ] Termination<br>[ ] Workers' Compensation<br>[ ] Other Employment:<br>_____ | [ ] Administrative Appeal<br>[ ] Antitrust/Unfair<br>Competition<br>[ ] Code Violations<br>[ ] Foreign Judgment<br>[ ] Intellectual Property | [ ] Lawyer Discipline<br>[ ] Perpetuate Testimony<br>[ ] Securities/Stock<br>[ ] Tortious Interference<br>[ ] Other: _____ | | |
| **Tax** | **Probate & Mental Health** | | | |
| [ ] Tax Appraisal<br>[ ] Tax Delinquency<br>[ ] Other Tax | *Probate/Wills/Intestate Administration*<br>[ ] Dependent Administration<br>[ ] Independent Administration<br>[ ] Other Estate Proceedings | [ ] Guardianship—Adult<br>[ ] Guardianship—Minor<br>[ ] Mental Health<br>[ ] Other: _____ | | |

## 3. Indicate procedure or remedy, if applicable *(may select more than 1)*:

- [ ] Appeal from Municipal or Justice Court
- [ ] Arbitration-related
- [ ] Attachment
- [ ] Bill of Review
- [ ] Certiorari
- [ ] Class Action
- [ ] Declaratory Judgment
- [ ] Garnishment
- [ ] Interpleader
- [ ] License
- [ ] Mandamus
- [ ] Post-judgment
- [ ] Prejudgment Remedy
- [X] Protective Order
- [ ] Receiver
- [ ] Sequestration
- [ ] Temporary Restraining Order/Injunction
- [ ] Turnover

## 4. Indicate damages sought *(do not select if it is a family law case)*:

- [ ] Less than $100,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees
- [ ] Less than $100,000 and non-monetary relief
- [ ] Over $100,000 but not more than $200,000
- [ ] Over $200,000 but not more than $1,000,000
- [ ] Over $1,000,000

# EX 2-2

Filed: 12/29/2020 1:41 PM
JOHN D. KINARD - District Clerk
Galveston County, Texas
Envelope No. 49277050
By: Angela Jarvis
12/29/2020 2:46 PM

# JOHN D. KINARD

## DISTRICT CLERK GALVESTON COUNTY

## REQUEST FOR ISSUANCE OF SERVICE

Case Number: **20-FD-2694**

Galveston County - District County Court at Law No. 2
Court Description:

Name(s) of Documents to be served: Application for Protective Order and Temporary Ex Parte Protective Order and Order Setting Hearing

### SERVICE TO BE ISSUED ON (Please list exactly as the name appears in the pleading to be served)

Issue Service To:   HATEM TAWFIQ ALGHUTI

Address of Service:   13507 Hidden Dell Ct.

City, State & Zip:   Houston, Texas 77059

Agent (IF APPLICABLE)

### TYPE OF SERVICE TO BE ISSUED:

| | | | |
|---|---|---|---|
| ☐ Citation | ☐ Citation by Posting | ☐ Citation by Publication | ☐ Citation Rule 106 Service |
| ☐ Temporary Restraining Order | ☐ Precept | ☐ Notice | ☐ Secretary of State Citation |
| ☒ Protective Order | ☐ Citation Scire Facias | ☐ Attachment | ☐ Certiorari |
| ☐ Garnishment | ☐ Habeas Corpus | ☐ Injunction | ☐ Sequestration |
| ☐ Subpoena | | | |
| ☐ Other (Please Describe): | | | |

*All service fees for Sheriff and Constable are collected by the clerk of court at the time of request.*

### UPON ISSUANCE OF SERVICE: (CHECK ONE ONLY)

☐ Send to Sheriff

☐ Galveston County Constable Name and Address

☐ Civil Process Server (Include the name of the Authorized Person to pick-up):

☐ Call attorney for pick up (Phone Number):

☐ Mail to attorney at:

☒ Email Service to:   caitlin@skillernfirm.com

☐ District Clerk serve by certified mail

☐ Send to League City

### ISSUANCE OF SERVICE REQUESTED BY:

Attorney/Party Name:  **Matthew A. Skillern**

Phone Number:  **7132298855**   Email Address:  **matthew@skillernfirm.com**

Revision 2.0

# EX 2-3

NOTICE - PROTECTIVE ORDER    THE STATE OF TEXAS

CAUSE NO. 20-FD-2694- County Court at Law No. 2

**Rawan Al-Najjar vs. Hatem Tawfiq Alghuti**

TO ANY SHERIFF, ANY CONSTABLE OR AUTHORIZED PERSON WITHIN THE STATE OF TEXAS GREETING:

TO: **Hatem Tawfiq Alghuti**
  **13507 Hidden Dell Ct.**
  **Houston, Texas 77059**

AN APPLICATION FOR A PROTECTIVE ORDER has been filed **29th day of December, 2020** in the court stated in this notice alleging that you have committed family violence. You may employ an attorney to defend yourself against this allegation. You or your attorney may but are not required to file a written answer to the application. You may file an answer in the office of the District Clerk of Galveston County, Texas, by mailing same to 600 59th Street, Ste. 4001, P. O. Box 17250, Galveston, Texas 77551-2388. Any answer must be filed before the hearing on the application. If you receive this notice within 48 hours before the time set for the hearing, you may request the court to reschedule the hearing not later than 14 days after the date set for the hearing. If you do not attend the hearing, a default judgment may be taken and a protective order may be issued against you.

WARNING
"A PERSON WHO VIOLATES THIS ORDER MAY BE PUNISHED FOR CONTEMPT OF COURT BY A FINE OF AS MUCH AS *$500.00 OR $2000.00* OR BY CONFINEMENT IN JAIL FOR AS LONG AS SIX MONTHS OR BOTH."

NO PERSON, INCLUDING A PERSON WHO IS PROTECTED BY THIS ORDER, MAY GIVE PERMISSION TO ANYONE TO IGNORE OR VIOLATE ANY PROVISION OF THIS ORDER. DURING THE TIME IN WHICH THIS ORDER IS VALID, EVERY PROVISION OF THIS ORDER IS IN FULL FORCE AND EFFECT UNLESS A COURT CHANGES THE ORDER."

"IT IS UNLAWFUL FOR ANY PERSON, OTHER THAN A PEACE OFFICER, AS DEFINED BY SECTION 1.07, PENAL CODE, ACTIVELY ENGAGED IN EMPLOYMENT AS A SWORN, FULL-TIME PAID EMPLOYEE OF A STATE AGENCY OR POLITICAL SUBDIVISION, WHO IS SUBJECT TO A PROTECTIVE ORDER TO POSSESS A FIREARM OR AMMUNITION."

**YOU ARE COMMANDED TO BE AND APPEAR** before Associate Judge Stephen Baker located at the Galveston County Justice Center Courts Building, 600 59th Street, Judicial District Court, 3rd floor, in the Lerner Courtroom, Galveston, Texas, in and for Galveston County, Texas on the **on this the 14th day of January, 2021** at **3:00 P.M.** to show cause, if any you have, why this APPLICATION FOR PROTECTIVE ORDER should not be granted.

A copy of the Application for Protective Order and Temporary Ex Parte Protective Order is attached to this notice.

GIVEN UNDER MY HAND and seal of said Court at my office in Galveston, Galveston County, Texas, **on this the 7th day of January, 2021.**

  ATTEST:
  **John D. Kinard**, District Clerk
  District Court, Galveston County, Texas

By: /s/ Joe Taylor III, Deputy _____

Issued at the request of:
**Matthew A. Skillern**
**701 N. Post Oak #600**
**Houston, Texas 77024**

---

OFFICER'S OR AUTHORIZED & DISINTERESTED PERSON'S RETURN

Came to hand on _____, 20__, and executed the same on _____, 20___ at _____

A.M./P.M., by delivering the accompanying copy of _____

by serving _____ in person in _____ County, Texas.

               _____, Sheriff

               _____ County, Texas

FEES $_____         By: _____, Deputy

# EX 2-4

Filed: 1/14/2021 10:54 AM
JOHN D. KINARD - District Clerk
Galveston County, Texas
Envelope No. 4970212
By: Angela Jarvis
1/14/2021 11:03 AM

CAUSE NO. 20-FD-2694

| | | |
|---|---|---|
| **RAWAN AL-NAJJAR** | § | IN THE COUNTY COURT AT LAW NO. |
| *Plaintiff(s).* | § | 2 |
| | § | |
| v. | § | |
| | § | OF |
| **HATEM TAWFIQ ALGHUTI** | § | |
| *Defendant(s).* | § | GALVESTON COUNTY, TEXAS |
| | § | |

## AFFIDAVIT OF SERVICE

I, Quiyon Thomas, being duly sworn, state:

I am not a party to or interested in the outcome of this suit.

I received the following documents on January 7, 2021 at 6:16 pm. I served these documents on Hatem Tawfiq Alghuti in Harris County, TX on January 8, 2021 at 10:13 am at 13507 Hidden Dell Ct, Houston, TX 77059 by personal service by handing the following documents to an individual identified as Hatem Tawfiq Alghuti.

Application for Protective Order and Temporary Ex Parte Protective Order and Order Setting Hearing

Additional Description:
I rung the doorbell and asked the resident if he was servee. He confirmed identity and I served him via direct delivery.

Middle Eastern Male, est. age 34, glasses: N, Black hair, 200 lbs to 220 lbs, 6' to 6' 3".
Geolocation of Serve: http://maps.google.com/maps?q=29.5996089852,-95.1438200087
Photograph: See Exhibit 1

My full name is Quiyon Thomas. My date of birth is 1/30/1981. My address is 6205 Ozark Trail, Pearland, TX 77584.

Quiyon Thomas  (346) 269-2724
Certification Number: PSC-13615
Expiration Date: 2/28/2021

Subscribed and sworn to before me this 8th day of January, 2021, by

Dan W. Griffin.

Witness my hand and official seal.

My commission expires: 9/27/2022

Notary Public

DAN W GRIFFIN
Notary ID #131741141
My Commission Expires
September 27, 2022

## Exhibit 1

(Summary)





United States Courts
Southern District of Texas
FILED

Nathan Ochsner, Clerk of Court

# EXHIBIT-3

## MISREPRESENTATION BY ATTORNEY TAD NELSON

1.  On **Friday** January 08, 2021, between 10-11 am ALGHUTI received documents sent by
    Galveston County Court to 13507 Hidden Dell Ct Houston Tx 77059, demanding
    ALGHUTI to attend a hearing on **Thursday** January 14, 2021 at 3:00 PM the following
    week.

2.  Legal Advice | Hatem Al-Ghuti scheduled an initial consultation with Attorney Tad Nelson
    around 3 p.m. on Friday, January 8, 2021. (Initial Consultation Fee $150.00). Hatem filled
    out an application which requested both his social security number as well as his spouse
    SSN.

    - Al-Ghuti agreed to move forward with the legal services proposed by Tad Nelson
      with understanding that Mr. Nelson would postpone hearing in order to allow time for
      Al-Ghuti to prepare a response.

    - After securing the $3,500.00 legal fee requested by Mr. Nelson on Tuesday , January
      12, 2021 Tom Gouti (Hatem's Father) contacted the Law Office of Tad Nelson, and
      receive reassurance from Mr. Nelson that he would postpone the Hearing. Mr. Nelson
      arranged for Al-Ghuti to drop off retainer deposit the following day.

    - On Wednesday, January 13, 2021 Al-Ghuti and his father arrived at the Law Office of
      Tad Nelson around 2:00 - 3:00 PM to drop off the deposit/ sign retainer agreement
      {see **Exhibit 1**} and discuss the hearing. Upon arriving, Mr. Nelson spent a few
      minutes speaking with Al-Ghuti and father, contacted the opposing attorney (Matthew
      A. Skillern), informed Al-Ghuti he had a warrant out for his arrest , handed him a
      retainer agreement, then stated he would see Hatem tomorrow for the hearing (in less
      than 24 hours) as he walked out of the office. Not only was Al-Ghuti shocked at the
      news a warrant was out for his arrest, Hatem was not even given the opportunity to
      discuss the agreement, or ask why the attorney was dishonest about postponing the
      hearing, which was to take place in less than 24 hours from the time the retainer
      agreement was handed to Hatem. See Nelson's response (**EXHIBIT A - Page 1 and
      Page 2**)

        Sent to Tad Nelson January 21, 2021, 6:39 PM

        *"I would like to clarify a few things. We hired you with the understanding that you
        would request for the court to provide more time because we only had four
        business days to respond"*

*"by the time we came up with the money we had less than 24·hrs. On 1/13/20 you
also informed me I had yet another warrant of arrest handed me the contract (not
a mutual contract ) and walked out of the office. I entered that hearing not having
a clue what it was , what questions would be asked, and options available for any
given scenario."*

*Not only was I forced to appear at the hearing unprepared, uninformed, feeling
exhausted, ill , coughing, with a fever...It's worth noting my brother-in-law I am
staying with tested positive with covid shortly after.*

*This entire process is absolutely unacceptable*

## HEARING

3.  The Law office of Matthew A. Skillern (Representing ALNAJJAR) sent over 20 emails to
    ALGHUTI Thursday morning, several hours before the scheduled hearing.

4.  On January 14, 2021, 9:21 AM , ALGHUTI emailed Nelson images of SMS exchange
    between Hatem and Rawan (see Exhibit 3A) which conveyed the following:

    A)  Hatem Al-Ghuti would never again enter the neighborhood/ house located at 4704 Eagle
        Cove Lane due to the humiliation he experienced as a result of the apparent false hostage
        call (according to statements made by officer) - sent December 29, 2020

    B)  Hatem Al-Ghuti agreed not to text Rawan if the property of the Religious Office is
        returned back to Al-Ghuti and if Rawan continues to cares for his Daughter- January 2 ,
        2021

        •  Rawan Al-Najjar Replied "NO" to both Requests

    C)  Prior to the hearing Nelson and Skillern discussed terms both parties would consider to
        move forward. Hatem was not aware of what the hearing entailed (see Exhibit A - Page 1
        and Page 2). Hatem mentioned he would consider some of the terms of a protective order
        (see 481/1336) specific to Rawan only, not his Daughter, provided that all property
        mentioned below #5 were returned to Hatem. The hearing did not take place because the
        parties agreed to move forward with the agreed terms. At the end of the hearing the judge
        stated that agreement would be prepared, and that the court order would become effective
        once both parties have signed the agreement.

5. On January 18, 2021, 6:56 AM ALGHUTI requested for Nelson to notify Judge about concerns with respect to Religious Office- per agreement AL-NAJJAR was to return all items in the office including but not limited to all paper work , work being prepared for the United States, records , writings, code books, sketches , blueprints, plans, models, instruments, notes , or information relating to religious office. Copies of records and personal identification documents, checks , certificates, bank statements , patent drafts / sketches, laptops, USB drives, books, stamps. Personal Property - medical and financial records, personal identification documents, books, glasses.

6. In an email sent by Nelson to ALGHUTI on January 20, 2021, 9:45 AM, Nelson mentioned the Judge was expecting an executed agreement within a **two week** time frame (assumption - two weeks from the hearing date). Within a 24 hour period and less than a two hour notice, Mr Nelson sends a text message to Hatem stating the Judge was expecting the signatures. See Exhibit A - Page 5

## NELSON TEXT MESSAGES / CALLS

A. Nelson sent text message after 10:30 am on January 21, 2021 requesting ALGHUTI to call
B. Nelson sent text message after 11:30 am on January 21, 2021 stating Judge Baker wants to enter PO with signatures on January 21, 2021 by 1:30 PM

ALGHUTI became aware of the text messages after 3:40 pm (1/21/21) and called Nelson at 3:50 pm (no answer)

**See Message Below sent by Hatem Al-Ghuti to Tad Nelson**

Hatem | *"Mr Nelson- I'd like to mention that I find it troubling I was not notified of the Court appearance on 1/21/21 , having been misinformed by you on 1/20/21 that the judge would be expecting a signed agreement in two weeks. Rawan was present at the appearance. You texted "Judge Baker wants to enter PO today! At 1:30. With our signatures" at 11:37 am on 1/21/21 only two hours prior to appearance. I did not see the text message until after 3 pm on 1/21/21."* (Copied - mary.Goan@co.galveston.tx.us and info@txbf.org in email)

7. In five separate occasions, over the span of about a week, Hatem Al-Ghuti had requested for Tad Nelson to clarify statements he had made regarding an "existing agreement on the record" (see Exhibit B - Page 5-6) , Mr Nelson failed to clarify his statements. On February 10, the court delivered a copy of, what may be, a draft of the "final agreement" and attached a copy of a terminated agreement to the Document (see Exhibit B- Court Document 2/10). The terminated agreement had been signed November 17, 2016 (as a temporary agreement)

**Page 3 of 4**

one week prior to the marriage date. The agreement was terminated (12/11/19 at 12:54 PM) and formally terminated by both parties at the end of 2020. Please note, the terminated agreement was never mentioned at any point, neither prior to the scheduled hearing or anytime after. Moreover, Hatem's property and the property of the Religious Office were not returned per agreement. See below

**Hatem Al-Ghuti Email to Tad Nelson February 17, 2021, 12:06 PM**

Hatem | *"Good Afternoon Mr Nelson- I'm curious why I was not notified that Exhibit B (an agreement that has been terminated) would be an attached to the the court document? What does that terminated agreement have to do with the protective order? And why Exhibit B takes precedence over returning my property and the property of the office? What should be done at this point? Can you notify the court that exhibit B is terminated, that I cannot subject the religious office under the jurisdiction of the court."*

**Response by Tad Nelson | February 17, 2021, 4:40 PM**

Tad | *"That's how it works. Sorry."*

**Page 4 of 4**

# EXHIBIT A

 **Hatem Al-Ghuti**
h algnuti@gmail.com
Hide details

To.   Tad Nelson

Date:  January 18, 2021, 6:56 AM

Mr Nelson

I'm writing to request for certain provisions found in the executed Retainer Contract be revised. Please let me know if you are available to discuss proposed revisions later today.

Apart from the specific revisions I'm requesting, I would like to clarify a few things. We hired you with the understanding that you would request for the court to provide more time because we only had four business days to respond , and by the time we came up with the money we had less than 24 hrs. On 1/13/20 you also informed me I had yet another warrant of arrest handed me the contract (not a mutual contract ) and walked out of the office. clear under no circumstance was anything related to my religious office to be subject to the courts jurisdiction ....that said, I would like it to be made clear to the court that the verbal agreement made was specific to Rawan Alnajjar only , and nothing else is implied. For any agreement to be considered Rawan will need to send all items found in my office back to me, and I would need to inspect to verify that everything has been accounted for.

Regards

Hatem Alghuti
281-667-2662

Page 1

 **Tad Nelson**
tad@tadlaw.com
Hide details

To:       Hatem Al-Ghuti

Date:   January 18, 2021, 7:07 AM

I will be in the office this morning. What are you asking me? The Protective Order was not the time to ask for more time. We made sure that would be addressed once the divorce was filed.

All things considered we were left in a good position to address your daughter later.

Please let me know what your issues are from the contract and I will oblige you.

Thanks, Tad

Sent from my iPhone

> On Jan 18, 2021, at 6:56 AM, Hatem Al-Ghuti <h.alghuti@gmail.com> wrote:

Page 2

 **Hatem Al-Ghuti**
h.alghuti@gmail.com
Hide details



To:    Tad Nelson

Date:   January 20, 2021, 1:28 AM

Hello Mr Nelson

Did you hear back from Rawan's attorney?

Also could you please clarify response below

 **Tad Nelson**
to me
Jan 20  Details



You will have N opportunity to sign. But only to make
sure it is what we agreed to in court. We can't
change the deal.

Sent from my iPhone

> On Jan 20, 2021, at 1:28 AM, Hatem Al-
> Ghuti <h.alghuti@gmail.com> wrote:

 **Hatem Al-Ghuti**
to Tad
Jan 20  Details

What deal?

That's not what the judge said, he said it becomes
effective when both parties sign.

Page 3



**Tad Nelson**
to me
Jan 20  Details

That is correct. But you can
not just choose not to sign. We have an entry date. If
you don't sign I have to go to court and tell judge
why. Thanks, Tad

Sent from my iPhone

> On Jan 20, 2021, at 9:05 AM, Hatem Al-
> Ghuti <h.alghuti@gmail.com> wrote:

> What deal?



'Tad'

**Hatem Al-Ghuti**
h.alghuti@gmail.com
Hide details

To:      Tad Nelson

Date:    January 20, 2021, 9:10 AM

What/ when is the entry date?


**Hatem Al-Ghuti**
h.alghuti@gmail.com
Hide details

To:      Tad Nelson

Date:    January 20, 2021, 9:13 AM

And if my terms have not been met , I can chose not
to sign.


**Tad Nelson**
to me
Jan 20  Details

I think he gave us to weeks. I will check when I go in.

# EXHIBIT B

 **Hatem Al-Ghuti**
to Ted
Jan 16 Details

Good Evening Mr. Nelson,

I would like to verify the following is correct - concerning Thursday's hearing

1. The opposing attorney will send an amended "Protective Order Agreement  " for me to review

2. Both Parties must sign the agreement

3. The executed agreement will be sent to the court

Questions related to files and other Records held by Rawan

1. Does Rawan current have all my property or held by her attorney ?

2. To date, What material has been photocopied ?

I also had a few concerns related to your Retainer Contract I would like to address, please let me know if you are available on Monday to discuss

Hatem Al Ghuti
(281)667-2662

Tad Nelson Response {January 16, 2021, 5:22 PM}

1.  It is not an amended order. It is a new order because there was nothing to amend. This order isn't a continuation of the Emergency Order.

2.  Yes. Both must. But you don't have any choice in the matter. The agreement on the record is a done deal.

    - Hatem {January 16, 2021, 7:55 PM} | Specifically, will the effective date (New Order agreement) be after both parties have signed the agreement?
    - Hatem (January 16, 2021, 9:34 PM) | And "agreement on the record" refers to the verbal commitment made during the hearing specific to Rawan Alnajjar. Is that Correct?

3.  YES

1.  The attorney has nothing.

2.  I don't know what they have copied. I will ask Monday if you would like.

**Page 2**



**Hatem Al-Ghuti**
h al ghuti @gmail com
Hide details

To:      Tad Nelson

Date:   January 20, 2021, 11:20 PM

Mr Nelson,

I received a call from your office this afternoon, as previously mentioned Rawan/ Attorney agreed to return all of my property and the property of religious office including all checks, documents, and records. I will not review or sign protective order until they uphold what they agreed to and after I have verified everything has been accounted for. I reject any order that may go into effect without my signature.


Regards


Hatem Al Ghuti
281-667-2662




**Tad Nelson**
tad@tadlaw.com
Hide details

To:      Hatem Al-Ghuti

Date:   January 21, 2021, 7:19 AM

That's not how it works Hatem. We have to look at the order for the sole reason of making sure it is consistent with the agreement entered on the record. The judge WILL enter that order on Friday. You getting your stuff will come through the divorce case.

We can provide a list to her lawyer and try to facilitate you getting your stuff for you.

That's why I want you to come in ASAP.

Thanks, Tad

Sent from my iPhone

Page 3

 **Hatem Al-Ghuti**
h.alghuti@gmail.com
Hide details

To:    Tad Nelson

Date:   January 21, 2021, 9:19 AM


(1) What agreement entered on the record are you
referring to? (2) The judge will Enter what Order on
Friday?

And absolutely not, I never agreed to anything which
stated I agree to allow the office property at 4704
while any order is in place.... I reject.


Hatem Alghuti
281-667-2662

 **Hatem Al-Ghuti**
h.alghuti@gmail.com
Hide details

To:    Tad Nelson

 gouti@sbcglobal.net

 hanan.gouti@gmail.com

Date:   January 21, 2021, 3:35 PM

Mr Nelson


Please confirm you are receiving my emails. I have repeatedly asked the same questions with no response


**(1) AGREEMENT ON THE RECORD**

NELSON | January 21, 2021, 7:19 AM
"We have to look at look at the order for the sole reason of making sure it is consistent with the agreement entered on the record."

_____

ALGHUTI | January 21, 2021, 9:19 AM
"(1-1) What agreement entered on the record are you referring to?"

_____

ALGHUTI | January 16, 2021, 9:34 PM
(1-2)"And "agreement on the record" refers to the verbal commitment made during the hearing specific to Rawan Alnajjar. Is that Correct?"


**(2) COURT ENTRY**

NELSON | January 21, 2021, 7:19 AM
"The judge WILL enter that order on Friday."

_____

ALGHUTI | January 21, 2021, 9:19 AM
"(2-1)The judge will Enter WHAT Order on Friday?"

## (4) EFFECTIVE DATE

Your conversation with my father this afternoon you mentioned that the order is effective , what order is effective, is it the same order mentioned above ("The judge WILL enter that order on Friday.")?

---

ALGHUTI | January 20, 2021, 11:20 PM
"I reject any order that may go into effect without my signature."

---

ALGHUTI | January 16, 2021, 7:55 PM

"Specifically, will the effective date (New Order agreement) be after both parties have signed the agreement? "

---

## OFFICE PROPERTY

All items in the office including but not limited to all paper work , medical and financial records, personal identification documents, copied of records and personal identification documents, checks , certificates, bank statements , drafts of patent, laptops, USB drives, books, stamps,

Rawan May leave the printer , desk , filing cabinet, bookcase , rug , Desk light at the former office.

ALGHUTI | January 20, 2021, 11:20 PM
"Rawan/ Attorney agreed to return all of my property and the property of religious office including all checks, documents, and records. I will not review or sign protective order until they uphold what they agreed to and after I have verified everything has been accounted for. I reject any order that may go into effect without my signature."

ALGHUTI | January 18, 2021. 6:56 AM

For any agreement to be considered Rawan will need
to send all items found in my office back to me, and I
would need to inspect to verify that everything has
been accounted for.

 **Tad Nelson**
tad@tadlaw.com
Hide details

To: Hatem Al-Ghuti

Date: January 21, 2021, 5:14 PM

The order that was created was done correct. I fixed
many parts to get it in line with the judge's wishes.

It is finished. I will get you a copy that is filed. You will
need to be served soon as well.

Tad Nelson

The Law Offices of

# TadNelson& Associates

820 East Main Street League City. Texas 77573
281.280.0100

**Page 7**



**Hatem Al-Ghuti**
h.alghuti@email.com
Hide details

To:   Tad Nelson

 hanan.gouti@gmail.com

 gouti@sbcglobal.net

Date:  January 21, 2021, 6:39 PM

Mr Nelson-

Again, you have repeatedly failed to answer any of
my questions and concerns. What "order was
created"? Was the order "created" or was it already
"on the record" as you have repeatedly claimed in
prior emails.

My understanding is The order was to be in
accordance with what the parties agreed to, the
precondition to such an order was that all
documents, records , writing, code book, sketch,
photograph, photographic negative, blueprint, plan,
map, model, instruments, notes , or information,
relating to religious office would be returned.

Earlier this week I requested that you notify the judge
of the concerns I had related to my office. Have you
conveyed any of my concerns to the Judge?

The judge stated during the hearing that the order
would become effective when both parties executed
the agreement.

Providing a two hour notice that the judge wanted
signatures at 1:30 pm (you texted around 11:30 am
(1/21/21) is not reasonable...especially when you
misinformed me that the court was expecting the
executed agreement in two weeks. I saw the text you
sent today after 3:40 pm.

I already notified you that a reasonable amount time
is required to respond to the court, and complained
about similar practice used prior to the hearing ...

"Apart from the specific revisions I'm requesting, I
would like to clarify a few things. We hired you with
the understanding that you would request for the
court to provide more time because we only had four
business days to respond" (Document served around

**Page 8**

*"by the time we came up with the money we had less than 24 hrs. On 1/13/20 you also informed me I had yet another warrant of arrest handed me the contract (not a mutual contract ) and walked out of the office. I entered that hearing not having a clue what it was , what questions would be asked, and options available for any given scenario."*

Not only was I forced to appear at the hearing unprepared, uninformed, feeling exhausted, ill , coughing, with a fever...It's worth noting my brother-in-law I am staying with tested positive with covid shortly after.

This entire process is absolutely unacceptable

Regards
Hatem Alghuti
281-667-2662

 **Tad Nelson**
tad@tadlaw.com
Hide details

To:    Hatem Al-Ghuti

Date:   January 21, 2021, 7:31 PM

I can't explain this on email. Please call me when you can.

Sent from my iPhone

> On Jan 21, 2021, at 6:39 PM, Hatem Al-Ghuti <h.alghuti@gmail.com> wrote:

 **Hatem Al-Ghuti**
h.alghuti@gmail.com
Hide details

To:    Tad Nelson

Date:   January 21, 2021, 9:50 PM

Mr Nelson

During our call and previous email you had mentioned that you had fixed the order to get many parts in line with the Judges wishes, I just wanted to remind you that I didn't hire you to serve the judges

Page 9



**Hatem Al-Ghuti**
h.alghuti@gmail.com
Hide details

To:  Tad Nelson

Date: February 17, 2021, 12:06 PM

Good Afternoon Mr Nelson

I'm curious why I was not notified that Exhibit B (an agreement that has been terminated) would be an attached to the the court document?

What does that terminated agreement have to do with the protective order? And why Exhibit B takes precedence over returning my property and the property of the office?

What should be done at this point? Can you notify the court that exhibit B is terminated, that I cannot subject the religious office under the jurisdiction of the court.


Regards,

Hatem Alghuti




**Tad Nelson**
tad@tadlaw.com
Hide details

To:  Hatem Al-Ghuti

Date: February 17, 2021, 4:40 PM

That's how it works. Sorry.

Sent from my iPhone

> On Feb 17, 2021, at 12:06 PM, Hatem Al-Ghuti
<h.alghuti@gmail.com> wrote:
>
> Good Afternoon Mr Nelson



**Hatem Al-Ghuti**
to Tao, info, Mary Cnan
Feb 14 Details

Mr Nelson ,

Please send and electronic copy of the revised
retainer agreement striking out all the lines/
provisions related to interest charges / promissory
notes - we previously agreed to remove (for my
record). Also, please sign your initial next to each
revised line.

Unfortunately both my laptops are in office, I cannot
type or print. Also "Exhibit B" attached to the
documents sent by the Galveston County Court on
2/10/21 has been terminated by both parties ... not
sure what grounds the court concluded it has
jurisdiction over the religious office when all attempts
to provide evidence have been hindered / obstructed
by failing to return the records of the Office.

Regards,

Hatem Alghuti
(281)667-2662



**Hatem Al-Ghuti**
to Tad. info. Mary Goon
Feb 14 Details

Mr Nelson-

Has the judge been informed that all parties ,
including Al-Najjar (recorded proof is available),
Edward (conveyed via SMS on 11/28/20), Lisa ,
Samia were aware of the protected "special status"
of the office?

Also, I find it troubling that I was not notified of a
scheduled Court appearance on 1/21/21 , having
been misinformed by you on 1/20/21 that the judge
would be expecting a signed agreement in two
weeks (Note: after Rawan returned office property).
You texted at 11:37 am (1/21/21) that "Judge Baker
wants to enter PO today! At 1:30. With our
signatures" two hours prior to scheduled
appearance.

Hatem Alghuti
281-667-2662

2:44

+1 (281) 414-1054

Siri found new contact info
Tad +1 (281) 414-1054  add...

Hope to see you in the morning.
We need to look at the
document together

Text Message
Wed, Jan 20, 8:34 PM

Hope to see you in the morning.
We need to look at the
document together

iMessage
Thu, Jan 21, 10:35 AM

Please call me. This is Tad

Thu, Jan 21, 11:37 AM

Please call. Judge Baker wants
to enter PO today! At 1:30. With
our signatures

The sender is not in your contact list
Report Junk



Page 12





**Hatem Al-Ghuti**
ti.alghuti@gmail.com
Hide details

To    matthew@skillernfirm.com

Date    March 7, 2021, 3.46 PM

Good Afternoon Matthew,

Please provide instructions on how to proceed in collecting property of the Religious Office and remaining personal property.

**OFFICE PROPERTY**

All items in the office including but not limited to all paper work , work being prepared for the United States, records , writings, code books, sketches , blueprints, plans, models, instruments, notes , or information relating to religious office. Copies of records and personal identification documents, checks , certificates, bank statements , patent drafts / sketches, laptops, USB drives, books, stamps,



United States Courts
Southern District of Texas
FILED

Nathan Ochsner, Clerk of Court

# EXHIBIT-4

NO. 20-FD-2694

| RAWAN AL-NAJJAR | § | IN THE DISTRICT COURT |
| | § | |
| AND | § | NO. 2 JUDICIAL DISTRICT |
| | § | |
| HATEM TAWFIQ ALGHUTI | § | GALVESTON COUNTY, TEXAS |

## FINAL PROTECTIVE ORDER

On January 14, 2021 the Court heard the Application of RAWAN AL-NAJJAR for a Protective Order.

### *Appearances*

Applicant, RAWAN AL-NAJJAR, appeared in person and through attorney of record, MATTHEW A. SKILLERN, and announced ready.

Respondent, HATEM TAWFIQ ALGHUTI, appeared through attorney of record, TAD NELSON, and announced ready.

The Court finds that the parties have agreed ~~in writing~~ to the terms under section 85.021 of the Texas Family Code set out below, and the Court approves that agreement. The Court further finds that the parties have been informed that the agreed order is enforceable civilly or criminally.

### *Jurisdiction*

The Court, after examining the record and hearing the evidence and argument of counsel, finds that all necessary prerequisites of the law have been satisfied and that this Court has jurisdiction over the parties and subject matter of this case.

### *Findings*

The Court finds that Applicant is Respondent's spouse.

The Court finds that Applicant and Respondent are intimate partners pursuant to

20-FD-2694
DCPOAJ
Protective Order – Associate Judge
2142578

18 U.S.C. § 921(a)(32).

The Court further finds good cause exists for prohibiting Respondent from communicating with Applicant except through Respondent's attorney or a person appointed by the Court. The Court finds Respondent has continuously called, text messaged, harassed, and threatened Applicant.

The Court finds that family violence has occurred and that family violence is likely to occur in the future. The Court finds that the following protective orders are for the safety and welfare and in the best interest of Applicant and other members of the family and household and are necessary for the prevention of family violence.

### *"Protected Person"*

In this order, "Protected Person" means Applicant, RAWAN AL-NAJJAR.

### *Orders*

IT IS ORDERED that Respondent, HATEM TAWFIQ ALGHUTI, is:

   a. Prohibited from committing family violence as defined by section 71.004 of the Texas Family Code.

   b. Prohibited from doing any act other than a defensive measure to protect Respondent that is intended to result in physical harm, bodily injury, assault, or sexual assault against any Protected Person.

   c. Prohibited from doing any act other than a defensive measure to protect Respondent that is a threat that reasonably places any Protected Person in fear of imminent physical harm, bodily injury, assault, or sexual assault.

   d. Prohibited from committing abuse of a child of the family or household as defined by Texas Family Code section 261.001(1)(C), (E), (G), (H), (I), (J), (K) and (M).

e.  Prohibited from communicating directly with any Protected Person in a threatening or harassing manner.

f.  Prohibited from communicating a threat through any person to any Protected Person.

g.  ~~Prohibited, on the basis of good cause shown above, from communicating in any manner with any Protected Person except through Respondent's attorney.~~

h.  Prohibited from engaging in conduct directed specifically toward any Protected Person, including following Protected Person, that is reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass Protected Person.

i.  ~~Prohibited from going to or near, or within 250 feet of, any location where any Protected Person is known by Respondent to be and further prohibited from remaining within 250 feet after Respondent becomes aware of Protected Person's presence.~~

j.  Prohibited from going to or near the residences or places of employment or business of any Protected Person.

k.  Respondent is specifically prohibited from going ~~to or near~~ *within 200 yards of* Baylor College of Medicine located at One Baylor Plaza, Houston, Texas 77030, ~~and is specifically ordered to maintain at least 250 feet between himself and Applicant.~~

l.  Respondent is specifically prohibited from going ~~to or near~~ *within 200 yards of* Applicant's residence located at 4704 Eagle Cove, League City, Texas 77573 ~~and is specifically ordered to maintain at least 250 feet between himself and~~

~~Applicant.~~

m.  Prohibited from harming, threatening, or interfering with the care, custody, or control of a pet, companion animal, or assistance animal, as defined by section 121.002 of the Texas Human Resources Code, that is possessed by or in the actual or constructive care of any Protected Person.

n.  Prohibited from transferring, encumbering, or otherwise disposing of property mutually owned or leased by the parties, except when in the ordinary course of business.

o.  **Prohibited from possessing a firearm or ammunition, unless Respondent is a peace officer, as defined by section 1.07 of the Texas Penal Code, actively engaged in employment as a sworn, full-time paid employee of a state agency or political subdivision.**

p.  Prohibited from interfering with Applicant's use of the residence located at 4704 Eagle Cove, League City, Texas 77573, including but not limited to disconnecting utilities or telephone service or causing such services to be disconnected.

q.  **IT IS ORDERED that the license to carry a handgun that was issued to Respondent, HATEM TAWFIQ ALGHUTI, under section 411.177 of the Texas Government Code, is suspended.**

### *Warnings Acknowledged*

IT IS ORDERED and found that Respondent, HATEM TAWFIQ ALGHUTI, was given warnings in open Court regarding possession or any firearms and ammunition and warnings that RAWAN AL-NAJJAR cannot give HATEM TAWFIQ ALGHUTI permission to violate the Protective Order. HATEM TAWFIQ ALGHUTI acknowledges the forgoing

by sighing this Protective Order.

### *Relief Not Granted*

IT IS ORDERED that all relief requested in the Application for Protective Order but not expressly granted is denied.

### *Order Forwarded*

A copy of this order, along with the information provided by Applicant's attorney that is required under section 411.042(b)(6) of the Texas Government Code, shall be forwarded by the clerk of this Court, not later than the next business day after the date the court issues the order, to the sheriff and the appropriate constable of Galveston County, Texas, no later than the next business day after the date the Court issues this order.

### *Effective Period*

This order shall continue in full force and effect for two years following the date this order is signed.

### *Effect on Previous Order*

The Court finds that an order for emergency protection has been previously issued under article 17.292 of the Texas Code of Criminal Procedure. The Court further finds that, pursuant to article 17.292(f-1) of the Texas Code of Criminal Procedure, to the extent that a condition imposed by that previously issued order conflicts with a condition imposed by this order, this order supersedes the order previously issued under article 17.292 of the Texas Code of Criminal Procedure.

### <u>WARNINGS</u>

**A PERSON WHO VIOLATES THIS ORDER MAY BE PUNISHED FOR CONTEMPT OF COURT BY A FINE OF AS MUCH AS $500 OR BY**

CONFINEMENT IN JAIL FOR AS LONG AS SIX MONTHS, OR BOTH.

NO PERSON, INCLUDING A PERSON WHO IS PROTECTED BY THIS ORDER, MAY GIVE PERMISSION TO ANYONE TO IGNORE OR VIOLATE ANY PROVISION OF THIS ORDER. DURING THE TIME IN WHICH THIS ORDER IS VALID, EVERY PROVISION OF THIS ORDER IS IN FULL FORCE AND EFFECT UNLESS A COURT CHANGES THE ORDER.

IT IS UNLAWFUL FOR ANY PERSON, OTHER THAN A PEACE OFFICER, AS DEFINED BY SECTION 1.07, PENAL CODE, ACTIVELY ENGAGED IN EMPLOYMENT AS A SWORN, FULL-TIME PAID EMPLOYEE OF A STATE AGENCY OR POLITICAL SUBDIVISION, WHO IS SUBJECT TO A PROTECTIVE ORDER TO POSSESS A FIREARM OR AMMUNITION.

A VIOLATION OF THIS ORDER BY COMMISSION OF AN ACT PROHIBITED BY THE ORDER MAY BE PUNISHABLE BY A FINE OF AS MUCH AS $4,000 OR BY CONFINEMENT IN JAIL FOR AS LONG AS ONE YEAR, OR BOTH. AN ACT THAT RESULTS IN FAMILY VIOLENCE MAY BE PROSECUTED AS A SEPARATE MISDEMEANOR OR FELONY OFFENSE. IF THE ACT IS PROSECUTED AS A SEPARATE FELONY OFFENSE, IT IS PUNISHABLE BY CONFINEMENT IN PRISON FOR AT LEAST TWO YEARS.

IT IS UNLAWFUL FOR ANY PERSON WHO IS SUBJECT TO A PROTECTIVE ORDER TO POSSESS A FIREARM OR AMMUNITION. POSSESSION OF A FIREARM OR AMMUNITION, AS DEFINED IN 18 U.S.C. § 921, WHILE THIS PROTECTIVE ORDER IS IN EFFECT MAY BE A FELONY UNDER FEDERAL LAW PNISHABLE BY UP TO TEN YEARS IN PRISON, A $250,000 FINE, OR BOTH.

PURSUANT TO 18 U.S.C. § 925(a)(1), THE RESTRICTIONS ON POSSESSION OF FIREARMS OR AMMUNITION FOUND AT 18 U.S.C. § 922(g)(8), AND IMPOSED BY THIS PROTECTIVE ORDER, DO NOT APPLY TO FIREARMS OR AMMUNITION ISSUED BY THE UNITED STATES OR ANY DEPARTMENT OR AGENCY THEREOF OR ANY STATE OR ANY DEPARTMENT, AGENCY, OR POLITICAL SUBDIVISION THEREOF, WHICH RESPONDENT POSSESSES IN CONNECTION WITH THE DISCHARGE OF OFFICIAL GOVERNMENT DUTIES. THE POSSESSION OF PRIVATELY

**OWNED FIREARMS AND AMMUNITION, HOWEVER, REMAINS UNLAWFUL AND VIOLATES THE TERMS OF THIS PROTECTIVE ORDER.**

**IT IS UNLAWFUL FOR ANY PERSON WHO IS SUBJECT TO A PROTECTIVE ORDER TO KNOWINGLY PURCHASE, RENT, LEASE, OR RECEIVE AS A LOAN OR GIFT FROM ANOTHER, A HANDGUN FOR THE DURATION OF THIS ORDER.**

**INTERSTATE VIOLATION OF THIS PROTECTIVE ORDER MAY SUBJECT RESPONDENT TO FEDERAL CRIMINAL PENALTIES. THIS PROTECTIVE ORDER IS ENFORCEABLE IN ALL FIFTY STATES, THE DISTRICT OF COLUMBIA, TRIBAL LANDS, AND U.S. TERRITORIES.**

This order judicially PRONOUNCED AND RENDERED in Court ~~at the District County Court at Law No. 2~~ of Galveston County, Texas, on January 14, 2021 and further noted on the Court's docket sheet on the same date but SIGNED on _____.

_____

JUDGE PRESIDING

**APPROVED AS TO FORM ONLY:**

**SKILLERN FIRM**
701 N. Post Oak Rd., Suite 600
Houston, Texas 77024
Tel: (713) 229-8855
Fax: (713) 481-8800

By: _/S/ Matthew A. Skillern_
    **MATTHEW A. SKILLERN**
    State Bar No. 24041926
    matthew@skillernfirm.com
    *Attorney for RAWAN AL-NAJJAR*

**TAD NELSON & ASSOCIATES**
820 East Main
League City, Texas 7757
Tel: (281) 280-0100
Fax: (281) 316-9208

By:_____
    **TAD NELSON**
    State Bar No. 14906350
    tad@tadlaw.com
    *Attorney for HATEM TAWFIQ ALGHUTI*

**APPROVED AND CONSENTED TO AS TO BOTH FORM AND SUBSTANCE:**

_____
HATEM TAWFIQ ALGHUTI, Respondent

_____
RAWAN AL-NAJJAR, Applicant

United States Courts
Southern District of Texas
F I L E D

Nathan Ochsner, Clerk of C

ourt

# EXHIBIT-6

Envelope No. 70432843
11/23/2022 11:39 AM

Filed: 11/28/2022 15:36:42
JOHN D. KINARD - DISTRICT CLERK
Galveston County, Texas

NOTICE: THIS DOCUMENT CONTAINS SENSITIVE DATA

## NO. 22-FD-2586

| | | |
|---|---|---|
| RAWAN AL-NAJJAR | § | IN THE COUNTY COURT AT LAW |
| | § | |
| AND | § | NO. 2 |
| | § | |
| HATEM TAWFIQ ALGHUTI | § | GALVESTON COUNTY, TEXAS |

### FINAL PROTECTIVE ORDER

On November 28, 2023 the Court heard the Application of Rawan Al-Najjar for a Protective Order.

*Appearances*

Applicant, Rawan Al-Najjar, appeared in person and through attorney of record, Dawn Renken, and announced ready.

Respondent, Hatem Tawfiq Alghuti, appeared in person and announced ready.

*Jurisdiction*

The Court, after examining the record and hearing the evidence and argument of counsel, finds that all necessary prerequisites of the law have been satisfied and that this Court has jurisdiction over the parties and subject matter of this case.

*Findings*

The Court finds that [Applicant is] Respondent's former spouse.

The Court further finds that Applicant and Respondent are intimate partners pursuant to 18 U.S.C. § 921(a)(32).

The Court finds that Respondent has violated a protective order by committing an act prohibited by the order as provided by section 85.022 of the Texas Family Code, that the order was in effect at the time of the violation, and that the order has or will expire after the date that the violation occurred. The Court further finds that a protective order is necessary and in the best

interest of Applicant, and Sarah Hatem Alghuti.

The Court finds that family violence has occurred and that family violence is likely to occur in the future. The Court finds that Respondent, Hatem Tawfiq Alghuti, has committed family violence. The Court finds that the following protective orders are for the safety and welfare and in the best interest of Applicant and other members of the family and are necessary for the prevention of family violence.

*"Protected Person"*

In this order, "Protected Person" means Applicant, and Sarah Hatem Alghuti.

*Orders*

IT IS ORDERED that Respondent, Hatem Tawfiq Alghuti, is:

Prohibited from committing family violence ~~SPECIFY THE FAMILY VIOLENCE~~, as _was_ defined by section 71.004 of the Texas Family Code.

Prohibit from doing any act other than a defensive measure to protect Respondent that is intended to result in physical harm, bodily injury, assault, or sexual assault against any Protected Person.

Prohibited from doing any act other than a defensive measure to protect Respondent that is a threat that reasonably places any Protected Person in fear of imminent physical harm, bodily injury, assault, or sexual assault.

Prohibited from committing abuse of a child of the family or household as defined by Texas Family Code section 261.001(1)(C), (E), (G), (H), (I), (J), (K) and (M).

Prohibited from communicating directly with any Protected Person in a threatening or harassing manner.

Prohibited from communicating a threat through any person to any Protected Person.

Prohibited, on the basis of good cause shown, from communicating in any manner with any Protected Person except through Respondent's attorney.

Prohibited from engaging in conduct directed specifically toward any Protected Person, including following Protected Person, that is reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass Protected Person.

Prohibited from going to or near, or within 200 yards of, any location where any *Syp* Protected Person is known by Respondent to be and further prohibited from remaining within 200 yards after Respondent becomes aware of Protected Person's presence.

Prohibited from going to or near the residences or places of employment or business of any Protected Person. Specifically, Respondent is prohibited from going to or near 4704 Eagle Cove, League City, Texas and One Baylor Plaza, Houston, Texas and specifically must maintain 200 yards (minimum distance) *from said residence* *Sa*

Prohibited from going to or near the residences, child-care facilities, or schools Sarah Hatem Alghuti normally attends or in which Sarah Hatem Alghuti normally resides. Specifically, Respondent is prohibited from going to or near RESIDENCE AND SCHOOLS and specifically must maintain 200 yards (minimum distance).



Prohibited from harming, threatening, or interfering with the care, custody, or control of a pet, companion animal, or assistance animal, as defined by section 121.002 of the Texas Human Resources Code, that is possessed by or in the actual or constructive care of any Protected Person.

Prohibited from transferring, encumbering, or otherwise disposing of property mutually owned or leased by the parties, except when in the ordinary course of business.

Prohibited from possessing a firearm or ammunition, unless Respondent is a peace officer, as defined by section 1.07 of the Texas Penal Code, actively engaged in employment as a sworn, full-time paid employee of a state agency or political subdivision.

Prohibited from interfering with Applicant's use of the residence located at 4704 Eagle Cove, League City, Texas, including but not limited to disconnecting utilities or telephone service or causing such services to be disconnected.

~~IT IS ORDERED that all financial responsibility and the right to use each wireless telephone number listed below shall be transferred from the Respondent's wireless telephone services account to the Applicant. The telephone number to be transferred as follows:~~

IT IS ORDERED that the license to carry a handgun that was issued to Respondent, Hatem Tawfiq Alghuti, under section 411.177 of the Texas Government Code is suspended.

IT IS FURTHER ORDERED that Respondent file with the Court, before the sixtieth day after the date this order is rendered, an affidavit stating either that Respondent has started the program or that the program is not available within a reasonable distance of Respondent's residence. IT IS FURTHER ORDERED that, if Respondent files an affidavit that Respondent has started the program, Respondent shall file with the Court before the date this protective order expires (1) a statement that Respondent completed the program not later than the earlier of the thirtieth day before this protective order expires or the thirtieth day before the first anniversary of the date of this protective order is issued and (2) a letter, notice, or certificate from the program that verifies Respondent's completion of the program. If Respondent fails to provide the affidavit and, if required, the statement and verification of completion of the program as ordered, Respondent may be punished for contempt of court, as provided by section 21.002 of the Texas Government Code, by a fine not to exceed $500, by confinement in jail for a term not to exceed

six months, or by both.

*Attorney's Fees*

The Court finds that Hatem Tawfiq Alghuti should be assessed ~~two~~ three thousand five hundred dollars ($3,500.00) as attorney's fees for the services of Dawn Renken. IT IS ORDERED that Dawn Renken is awarded judgment of ~~two~~ three thousand five hundred dollars ($3,500.00) for legal services rendered. The judgment, for which let execution issue, is awarded against Hatem Tawfiq Alghuti.

*Fees, Charges, and Expenses*

IT IS ORDERED that Hatem Tawfiq Alghuti shall pay the $16 protective order fee, the standard fee for cost of service of this order, the costs of court, and all other fees, charges, or expenses incurred in connection with this order.

IT IS THEREFORE ORDERED that Respondent shall pay sixteen dollars ($16.00) to the clerk of this Court on or before 10 days from the signing of this order by cash, cashier's check, or money order.

*Relief Not Granted*

IT IS ORDERED that all relief requested in the Application for Protective Order but not expressly granted is denied.

*Order Forwarded*

A copy of this order, along with the information provided by Applicant's attorney that is required under section 411.042(b)(6) of the Texas Government Code, shall be forwarded by the clerk of this Court, not later than the next business day after the date the court issues the order, to the sheriff and the appropriate constable of ~~Harris~~ Galveston County, Texas, no later than the ~~next business~~ day after the date the Court issues this order.

*Effective Period*

~~The Court finds that Respondent has committed or threatened to commit an act of family violence against Applicant and Sarah Hatem Alghuti, regardless of whether the person has been charged with or convicted of the offense.~~ *SvB*

The Court finds that Respondent was the subject of two or more previous protective orders rendered to protect the same person or persons that this order will protect, and the previous protective orders were rendered by a court after a finding by the court that Respondent had committed family violence and was likely to commit family violence in the future.

IT IS THEREFORE ORDERED that this order shall continue in full force and effect until November 28, 2024. ~~further order of this court.~~ *SvB*

*Effect on Previous Order*

The Court finds that an order for emergency protection has been previously issued under article 17.292 of the Texas Code of Criminal Procedure. The Court further finds that, pursuant to article 17.292(f-1) of the Texas Code of Criminal Procedure, to the extent that a condition imposed by that previously issued order conflicts with a condition imposed by this order, this order supersedes the order previously issued under article 17.292 of the Texas Code of Criminal Procedure.

**Warnings:**

A PERSON WHO VIOLATES THIS ORDER MAY BE PUNISHED FOR CONTEMPT OF COURT BY A FINE OF AS MUCH AS $500 OR BY CONFINEMENT IN JAIL FOR AS LONG AS SIX MONTHS, OR BOTH.

NO PERSON, INCLUDING A PERSON WHO IS PROTECTED BY THIS ORDER, MAY GIVE PERMISSION TO ANYONE TO IGNORE OR VIOLATE ANY PROVISION OF

THIS ORDER. DURING THE TIME IN WHICH THIS ORDER IS VALID, EVERY PROVISION OF THIS ORDER IS IN FULL FORCE AND EFFECT UNLESS A COURT CHANGES THE ORDER.

IT IS UNLAWFUL FOR ANY PERSON, OTHER THAN A PEACE OFFICER, AS DEFINED BY SECTION 1.07, PENAL CODE, ACTIVELY ENGAGED IN EMPLOYMENT AS A SWORN, FULL-TIME PAID EMPLOYEE OF A STATE AGENCY OR POLITICAL SUBDIVISION, WHO IS SUBJECT TO A PROTECTIVE ORDER TO POSSESS A FIREARM OR AMMUNITION.

IF A PERSON SUBJECT TO A PROTECTIVE ORDER IS RELEASED FROM CONFINEMENT OR IMPRISONMENT FOLLOWING THE DATE THE ORDER WOULD HAVE EXPIRED, OR IF THE ORDER WOULD HAVE EXPIRED NOT LATER THAN THE FIRST ANNIVERSARY OF THE DATE THE PERSON IS RELEASED FROM CONFINEMENT OR IMPRISONMENT, THE ORDER IS AUTOMATICALLY EXTENDED TO EXPIRE ON:

(1) THE FIRST ANNIVERSARY OF THE DATE THE PERSON IS RELEASED, IF THE PERSON WAS SENTENCED TO CONFINEMENT OR IMPRISONMENT FOR A TERM OF MORE THAN FIVE YEARS; OR

(2) THE SECOND ANNIVERSARY OF THE DATE THE PERSON IS RELEASED, IF THE PERSON WAS SENTENCED TO CONFINEMENT OR IMPRISONMENT FOR A TERM OF FIVE YEARS OR LESS.

A VIOLATION OF THIS ORDER BY COMMISSION OF AN ACT PROHIBITED BY THE ORDER MAY BE PUNISHABLE BY A FINE OF AS MUCH AS $4,000 OR BY CONFINEMENT IN JAIL FOR AS LONG AS ONE YEAR, OR BOTH. AN ACT THAT

RESULTS IN FAMILY VIOLENCE MAY BE PROSECUTED AS A SEPARATE MISDEMEANOR OR FELONY OFFENSE. IF THE ACT IS PROSECUTED AS A SEPARATE FELONY OFFENSE, IT IS PUNISHABLE BY CONFINEMENT IN PRISON FOR AT LEAST TWO YEARS.

IT IS UNLAWFUL FOR ANY PERSON WHO IS SUBJECT TO A PROTECTIVE ORDER TO POSSESS A FIREARM OR AMMUNITION. POSSESSION OF A FIREARM OR AMMUNITION, AS DEFINED IN 18 U.S.C. § 921, WHILE THIS PROTECTIVE ORDER IS IN EFFECT MAY BE A FELONY UNDER FEDERAL LAW PNISHABLE BY UP TO TEN YEARS IN PRISON, A $250,000 FINE, OR BOTH.

PURSUANT TO 18 U.S.C. § 925(a)(1), THE RESTRICTIONS ON POSSESSION OF FIREARMS OR AMMUNITION FOUND AT 18 U.S.C. § 922(g)(8), AND IMPOSED BY THIS PROTECTIVE ORDER, DO NOT APPLY TO FIREARMS OR AMMUNITION ISSUED BY THE UNITED STATES OR ANY DEPARTMENT OR AGENCY THEREOF OR ANY STATE OR ANY DEPARTMENT, AGENCY, OR POLITICAL SUBDIVISION THEREOF, WHICH RESPONDENT POSSESSES IN CONNECTION WITH THE DISCHARGE OF OFFICIAL GOVERNMENT DUTIES. THE POSSESSION OF PRIVATELY OWNED FIREARMS AND AMMUNITION, HOWEVER, REMAINS UNLAWFUL AND VIOLATES THE TERMS OF THIS PROTECTIVE ORDER.

IT IS UNLAWFUL FOR ANY PERSON WHO IS SUBJECT TO A PROTECTIVE ORDER TO KNOWINGLY PURCHASE, RENT, LEASE, OR RECEIVE AS A LOAN OR GIFT FROM ANOTHER, A HANDGUN FOR THE DURATION OF THIS ORDER.

INTERSTATE VIOLATION OF THIS PROTECTIVE ORDER MAY SUBJECT RESPONDENT TO FEDERAL CRIMINAL PENALTIES. THIS PROTECTIVE ORDER IS

ENFORCEABLE IN ALL FIFTY STATES, THE DISTRICT OF COLUMBIA, TRIBAL

LANDS, AND U.S. TERRITORIES.

SIGNED on ___November 28, 2022___.

Signed: 11/28/2022 02:57 PM

JUDGE PRESIDING

APPROVED AS TO FORM ONLY:

RENKEN LAW FIRM PLLC
11500 NW Freeway, Suite 586
Houston, TX 77092
Tel: (713) 956-6767

By: /s/ *Dawn Renken*_____
Dawn Renken
Attorney for Applicant
State Bar No.: 24041764
E-mail: drenken@therenkenlawfirm.com

## REVOCATION OF
## POWER OF ATTORNEY

| | | |
|---|---|---|
| **THE STATE OF TEXAS** | § | |
| | § | **KNOW ALL MEN BY THESE PRESENTS** |
| **COUNTY OF GALVESTON** | § | |

I, Hatem Tawfiq, the Principal of the Power of Attorney in the numbered and styled cause 21-FD-0102, hereby revoke those portions covering decisions of said document(s), which assumes, implies, or appointed Keri Foley, as my Attorney-in-Fact, and RAWAN AL-NAJJAR as my successor Attorney(s)-in-Fact. I hereby notify said agent(s) and any other interested persons and institutions that all portions of said document(s) are revoked. This revocation takes effect immediately with notice served to any and all third parties relying on the power of attorney, whether one or more, which I am now hereby revoking.

**IN WITNESS WHEREOF,** I have hereunto set my hand on this the 22nd day of November, 2022.

_____
Signature of Person Revoking Power of Attorney

HATEM TAWFIQ ALGHUTI
_____
Printed Name of Person Revoking


| | | |
|---|---|---|
| **STATE OF TEXAS** | § | |
| | § | |
| **COUNTY OF** Harris | § | |

**BEFORE ME,** the undersigned authority, on this day personally appeared Hatem Tawfiq, who, having been duly sworn, states that she / he is executing this Revocation of Power of Attorney for the purposes therein expressed.

**SWORN TO, SUBSCRIBED AND ACKNOWLEDGED BEFORE ME** by the said Hatem Tawfiq, on this 21 day of November, 20 22.

_____

JOHN WAYNE PATTERSON
Notary Public, State of Texas
Comm. Expires 04-27-2025
Notary ID 128881873

_____
Notary Public in and for
The State of Texas

United States Courts
Southern District of Texas
FILED

Nathan Ochsner, Clerk of Court

# EXHIBIT-5

Envelope No. 59341996
By: Selena Skaggs
11/19/2021 3:21 PM

CAUSE NO. 21-FD-0102

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN COUNTY COURT AT LAW |
| THE MARRIAGE OF | § | |
| | § | |
| RAWAN AL-NAJJAR | § | |
| AND | § | NUMBER 2 |
| HATEM TAWFIQ ALGHUTI | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| SARAH HATEM ALGHUTI, A | § | GALVESTON COUNTY, TEXAS |
| CHILD | | |

## FINAL DECREE OF DIVORCE

On November 15, 2021, the Court heard this case.

### *Appearances*

Petitioner, RAWAN AL-NAJJAR, appeared in person and through attorney of record, MATTHEW A. SKILLERN, and announced ready for trial.

Respondent, HATEM TAWFIQ ALGHUTI, appeared in person and announced ready for trial.

### *Record*

The record of testimony was duly reported by the court reporter for County Court at Law Number 2.

### *Jurisdiction and Domicile*

The Court finds that the pleadings of Petitioner are in due form and contain all the allegations, information, and prerequisites required by law. The Court, after receiving evidence, finds that it has jurisdiction of this case and of all the parties and that at least sixty days have elapsed since the date the suit was filed.

21-FD-0102
DCFIDDNJT
Final Divorce Decree – Non Jury Trial – OCA
22021152

ITMOTMO Al-Najjar; Cause No.21-FD-0102
*Final Decree of Divorce*
Page 1 of 15

The Court further finds that, at the time this suit was filed, Petitioner had been a domiciliary of Texas for the preceding six-month period and a resident of the county in which this suit was filed for the preceding ninety-day period. All persons entitled to citation were properly cited.

### *Jury*

A jury was waived, and questions of fact and of law were submitted to the Court.

### *Divorce*

IT IS ORDERED AND DECREED that RAWAN AL-NAJJAR, Petitioner, is granted a divorce from HATEM TAWFIQ ALGHUTI, Respondent, and the marriage between them is dissolved on the ground of cruelty.

IT IS FURTHER ORDERED AND DECREED that RAWAN AL-NAJJAR, Petitioner, and HATEM TAWFIQ ALGHUTI, Respondent, are divorced and that the marriage between them is dissolved on the ground of insupportability.

### *Premarital Agreement*

IT IS FOUND AND ORDERED THAT the terms of this Final Decree of Divorce are in compliance with the parties' premarital agreement, which the Court determined was valid on November 15, 2021.

### *Child of the Marriage*

The Court finds that Petitioner and Respondent are the parents of the following child:

```
Name: SARAH HATEM ALGHUTI
Sex:    Female
Birth date:    11/30/2020
Home state:  Texas
Social Security number:    xxx-xx-7855
Driver's license number and issuing state:        N/A, Texas
```

The Court finds no other children of the marriage are expected.

### *Parenting Plan*

The Court finds that the provisions in this decree relating to the rights and duties of the parties with relation to the child, possession of and access to the child, child support, and optimizing the development of a close and continuing relationship between each party and the child constitute the parenting plan established by the Court.

### *Conservatorship*

The Court, having considered the circumstances of the parents and of the child, finds that the following orders are in the best interest of the child.

IT IS ORDERED that RAWAN AL-NAJJAR is appointed Sole Managing Conservator and HATEM TAWFIQ ALGHUTI is appointed Possessory Conservator of the following child: SARAH HATEM ALGHUTI.

**IT IS ORDERED that, at all times, RAWAN AL-NAJJAR, as a parent sole managing conservator, shall have the following rights:**

1.      the right to receive information from any other conservator of the child concerning the health, education, and welfare of the child;

2.      the right to confer with the other parent to the extent possible before making a decision concerning the health, education, and welfare of the child;

3.      the right of access to medical, dental, psychological, and educational records of the child;

4.      the right to consult with a physician, dentist, or psychologist of the child;

5.      the right to consult with school officials concerning the child's welfare and educational status, including school activities;

6.      the right to attend school activities, including school lunches, performances, and field trips;

7.      the right to be designated on the child's records as a person to be notified in case of an emergency;

8.     the right to consent to medical, dental, and surgical treatment during an emergency involving an immediate danger to the health and safety of the child; and

9.     the right to manage the estate of the child to the extent the estate has been created by the parent's family or by the parent, other than by the community or joint property of the parent.

**IT IS ORDERED that, at all times, RAWAN AL-NAJJAR, as a parent sole managing conservator, shall have the following rights and duties:**

1.     the duty of care, control, protection, and reasonable discipline of the child;

2.     the duty to support the child, including providing the child with clothing, food, shelter, and medical and dental care not involving an invasive procedure;

3.     the right to consent for the child to medical and dental care not involving an invasive procedure; and

4.     the right to direct the moral and religious training of the child.

**IT IS ORDERED that RAWAN AL-NAJJAR, as parent sole managing conservator, shall have the following exclusive rights and duty:**

1.     the right to designate the primary residence of the child without geographical restriction;

2.     the right to consent to medical, dental, and surgical treatment involving invasive procedures;

3.     the right to consent to psychiatric and psychological treatment of the child;

4.     the right to receive and give receipt for periodic payments for the support of the child and to hold or disburse these funds for the benefit of the child;

5.     the right to represent the child in legal action and to make other decisions of substantial legal significance concerning the child;

6.     the right to consent to marriage and to enlistment in the armed forces of the United States;

7.     the right to make decisions concerning the child's education;

8.      except as provided by section 264.0111 of the Texas Family Code, the right to the services and earnings of the child;

9.      except when a guardian of the child's estate or a guardian or attorney ad litem has been appointed for the child, the right to act as an agent of the child in relation to the child's estate if the child's action is required by a state, the United States, or a foreign government;

10.     the right to apply for a passport for the child, to renew the child's passport, and to maintain possession of the child's passport; and

11.     the duty to manage the estate of the child to the extent the estate has been created by the property of RAWAN AL-NAJJAR.

## *Passport Provisions*

IT IS ORDERED THAT RAWAN AL-NAJJAR shall have the sole and exclusive

right to apply for a passport for the child, to renew the child's passport, and to maintain

possession of the child, SARAH HATEM ALGHUTI's, passport without further consent

of HATEM TAWFIQ ALGHUTI or notification to HATEM TAWFIQ ALGHUTI.

*Possession and Access*

## *Possession and Access*

1.      **Possession Order**

IT IS ORDERED that each conservator shall comply with all terms and conditions of this Possession Order. IT IS ORDERED that this Possession Order is effective immediately and applies to all periods of possession occurring on and after the date the Court signs this Possession Order. IT IS, THEREFORE, ORDERED:

(a)     **Definitions**

1.      In this Possession Order "school" means the elementary or secondary school in which the child is enrolled or, if the child is not enrolled in an elementary or secondary school, the public school district in which the child primarily resides.

2.      In this Possession Order "child" includes each child, whether one or more, who is a subject of this suit while that child is under the age of eighteen years and not otherwise emancipated.

**(b)   Mutual Agreement or Specified Terms for Possession**

IT IS ORDERED HATEM TAWFIQ ALGHUTI shall have possession of the child at times mutually agreed to in advance RAWAN AL-NAJJAR and HATEM TAWFIQ ALGHUTI.

**(c)   No Access Absent Mutual Agreement Due to Family Violence**

The Court finds that HATEM TAWFIQ ALGHUTI has a history or pattern of committing family violence during the two-year period preceding the filing of this suit or during the pendency of this suit. The Court further finds that awarding HATEM TAWFIQ ALGHUTI access to the child would endanger the child's physical health or emotional welfare and would not be in the best interest of the child. IT IS THEREFORE ORDERED that HATEM TAWFIQ ALGHUTI shall have no access to the child, absent a mutual agreement between RAWAN AL-NAJJAR and HATEM TAWFIQ ALGHUTI.

**(d)   Undesignated Periods of Possession**

IT IS ORDERED that RAWAN AL-NAJJAR shall have the right of possession of the child at all other times not specifically designated in this Possession Order for HATEM TAWFIQ ALGHUTI.

This concludes the Possession Order.

**2.   Duration**

The periods of possession ordered above apply to the child the subject of this suit while that child is under the age of eighteen years and not otherwise emancipated.

**3.   Noninterference with Possession**

Except as expressly provided herein, IT IS ORDERED that neither conservator shall take possession of the child during the other conservator's period of possession unless there is a prior written agreement signed by both conservators or in case of an emergency.

**4.   Termination of Orders**

The provisions of this decree relating to conservatorship, possession, or access terminate on the remarriage of RAWAN AL-NAJJAR to HATEM TAWFIQ ALGHUTI unless a nonparent or agency has been appointed conservator of the child under chapter 153 of the Texas Family Code.

## Child Support

IT IS ORDERED that HATEM TAWFIQ ALGHUTI shall pay no child support at this time, but that RAWAN AL-NAJJAR may seek a modification of this provision in the future.

## Required Notices

NOTICE TO ANY PEACE OFFICER OF THE STATE OF TEXAS: YOU MAY USE REASONABLE EFFORTS TO ENFORCE THE TERMS OF CHILD CUSTODY SPECIFIED IN THIS ORDER. A PEACE OFFICER WHO RELIES ON THE TERMS OF A COURT ORDER AND THE OFFICER'S AGENCY ARE ENTITLED TO THE APPLICABLE IMMUNITY AGAINST ANY CLAIM, CIVIL OR OTHERWISE, REGARDING THE OFFICER'S GOOD FAITH ACTS PERFORMED IN THE SCOPE OF THE OFFICER'S DUTIES IN ENFORCING THE TERMS OF THE ORDER THAT RELATE TO CHILD CUSTODY. ANY PERSON WHO KNOWINGLY PRESENTS FOR ENFORCEMENT AN ORDER THAT IS INVALID OR NO LONGER IN EFFECT COMMITS AN OFFENSE THAT MAY BE PUNISHABLE BY CONFINEMENT IN JAIL FOR AS LONG AS TWO YEARS AND A FINE OF AS MUCH AS $10,000.

THE COURT MAY MODIFY THIS ORDER THAT PROVIDES FOR THE SUPPORT OF A CHILD, IF:

(1) THE CIRCUMSTANCES OF THE CHILD OR A PERSON AFFECTED BY THE ORDER HAVE MATERIALLY AND SUBSTANTIALLY CHANGED; OR

(2)     IT HAS BEEN THREE YEARS SINCE THE ORDER WAS RENDERED OR LAST MODIFIED AND THE MONTHLY AMOUNT OF THE CHILD SUPPORT AWARD UNDER THE ORDER DIFFERS BY EITHER 20 PERCENT OR $100 FROM THE AMOUNT THAT WOULD BE AWARDED IN ACCORDANCE WITH THE CHILD SUPPORT GUIDELINES.

### *Warnings to Parties*

WARNINGS TO PARTIES:  FAILURE TO OBEY A COURT ORDER FOR CHILD SUPPORT OR FOR POSSESSION OF OR ACCESS TO A CHILD MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

FAILURE OF A PARTY TO MAKE A CHILD SUPPORT PAYMENT TO THE PLACE AND IN THE MANNER REQUIRED BY A COURT ORDER MAY RESULT IN THE PARTY'S NOT RECEIVING CREDIT FOR MAKING THE PAYMENT.

FAILURE OF A PARTY TO PAY CHILD SUPPORT DOES NOT JUSTIFY DENYING THAT PARTY COURT-ORDERED POSSESSION OF OR ACCESS TO A CHILD. REFUSAL BY A PARTY TO ALLOW POSSESSION OF OR ACCESS TO A CHILD DOES NOT JUSTIFY FAILURE TO PAY COURT-ORDERED CHILD SUPPORT TO THAT PARTY.

HATEM TAWFIQ ALGHUTI'S VIOLATION OF THIS INTERNATIONAL ABDUCTION ORDER MAY SUBJECT HATEM TAWFIQ ALGHUTI TO A CIVIL OR A CRIMINAL PENALTY OR TO BOTH CIVIL AND CRIMINAL PENALTIES.

## *Division of Marital Estate*

The Court finds that the following is a just and right division of the parties' marital estate, having due regard for the rights of each party and the child of the marriage.

## Property to Petitioner

IT IS ORDERED AND DECREED that Petitioner, RAWAN AL-NAJJAR, is awarded the following as her sole and separate property, and Respondent, HATEM TAWFIQ ALGHUTI, is divested of all right, title, interest, and claim in and to that property:

**P-1.** The following real property, including but not limited to any escrow funds, prepaid insurance, utility deposits, keys, house plans, home security access and code, garage door opener, warranties and service contracts, and title and closing documents:

> LOT TWELVE (12), IN BLOCK ONE (1), OF MAGNOLIA CREEK
> MODEL HOMES, A SUBDIVISION IN GALVESTON COUNTY,
> TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF
> RECORDED IN PLAT RECORD 2005A, MAP NUMBER 82 OF
> THE MAP RECORDS OF GALVESTON COUNTY, TEXAS; more
> commonly referred to as 4704 Eagle Cove, League City, Texas
> 77573.

**P-2.** All household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment in the possession of Petitioner or subject to her sole control.

**P-3.** All sums of cash in the possession of Petitioner or subject to her sole control, including funds on deposit, together with accrued but unpaid interest, in banks,

savings institutions, or other financial institutions, which accounts stand in Petitioner's sole name or from which Petitioner has the sole right to withdraw funds or which are subject to Petitioner's sole control.

**P-4.** All sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to any profit-sharing plan, retirement plan, Keogh plan, pension plan, employee stock option plan, 401(k) plan, employee savings plan, accrued unpaid bonuses, disability plan, or other benefits existing by reason of Petitioner's past, present, or future employment.

**P-5.** All policies of life insurance (including cash values) insuring Petitioner's life.

**P-6.** The 2019 Volkswagen Tiguan SE motor vehicle, together with all prepaid insurance, keys, and title documents.

**P-7.** Pursuant to the Premarital Agreement of the parties the sum of Twenty Thousand Dollars ($20,000.00) payable by HATEM TAWFIQ ALGHUTI to RAWAN AL-NAJJAR by and through her attorney of record, MATTHEW A. SKILLERN, located at 701 N. Post Oak Rd., Ste. 600, Houston, Texas 77024 by cash, cashier's check, or money order on or before November 30, 2021. IT IS FURTHER ORDERED AND DECREED that RAWAN AL-NAJJAR is awarded judgment of Twenty Thousand Dollars ($20,000.00) against HATEM TAWFIQ ALGHUTI to be paid as described above, with interest at 6% percent per year compounded annually from the date of judgment, for which let execution issue.

**Property to Respondent**

IT IS ORDERED AND DECREED that Respondent, HATEM TAWFIQ ALGHUTI, is awarded the following as his sole and separate property, and Petitioner, RAWAN AL-NAJJAR, is divested of all right, title, interest, and claim in and to that property:

**R-1.** All household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment in the possession of Respondent or subject to his sole control.

**R-2.** All clothing, jewelry, and other personal effects in the possession of Respondent or subject to his sole control.

**R-3.** All sums of cash in the possession of Respondent or subject to his sole control, including funds on deposit, together with accrued but unpaid interest, in banks, savings institutions, or other financial institutions, which accounts stand in Respondent's sole name or from which Respondent has the sole right to withdraw funds or which are subject to Respondent's sole control.

**R-4.** All sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to any profit-sharing plan, retirement plan, Keogh plan, pension plan, employee stock option plan, 401(k) plan, employee savings plan, accrued unpaid bonuses, disability plan, or other benefits existing by reason of Respondent's past, present, or future employment.

**R-5.** All policies of life insurance (including cash values) insuring Respondent's life.

**R-6.** The 2013 Honda Accord motor vehicle, together with all prepaid insurance, keys, and title documents.

**Division of Debt**

**Debts to Petitioner**

IT IS ORDERED AND DECREED that Petitioner, RAWAN AL-NAJJAR, shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold Respondent, HATEM TAWFIQ ALGHUTI, and his property harmless from any failure to so discharge, these items:

**Debts to Petitioner**

IT IS ORDERED AND DECREED that Petitioner, RAWAN AL-NAJJAR, shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold Respondent, HATEM TAWFIQ ALGHUTI, and his property harmless from any failure to so discharge, these items:

**P-1.** The balance due, including principal, interest, tax, and insurance escrow, on the promissory note executed by RAWAN AL-NAJJAR and HATEM TAWFIQ ALGHUTI, in the original principal sum of $376,900.00 dated December 11, 2019 payable to Regions Bank and secured by deed of trust on the real property awarded in this decree to the Petitioner, which is recorded in the real property records of Galveston County, Texas.

**P-2.** The balance due, including principal, interest, and all other charges, on the promissory note payable to Bank of America and given as part of the purchase price of and secured by a lien on the 2019 Volkswagen Tiguan SE motor vehicle awarded to Petitioner.

**P-3.** All debts, charges, liabilities, and other obligations incurred solely in the name of Petitioner.

**P-4.** All debts, charges, liabilities, and other obligations incurred solely by

Petitioner.

P-5. All encumbrances, ad valorem taxes, liens, assessments, premiums, or other charges due or to become due on the real and personal property awarded to Petitioner in this decree unless express provision is made in this decree to the contrary.

**Debts to Respondent**

IT IS ORDERED AND DECREED that Respondent, HATEM TAWFIQ ALGHUTI, shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold Petitioner, RAWAN AL-NAJJAR, and her property harmless from any failure to so discharge, these items:

R-1. All debts, charges, liabilities, and other obligations incurred solely in the name of Respondent.

R-2. All debts, charges, liabilities, and other obligations incurred solely by Respondent.

R-3. All encumbrances, ad valorem taxes, liens, assessments, premiums, or other charges due or to become due on the real and personal property awarded to Respondent in this decree unless express provision is made in this decree to the contrary.

R-4. Pursuant to the Premarital Agreement of the parties the sum of Twenty Thousand Dollars ($20,000.00) payable by HATEM TAWFIQ ALGHUTI to RAWAN AL-NAJJAR by and through her attorney of record, MATTHEW A. SKILLERN, located at 701 N. Post Oak Rd., Ste. 600, Houston, Texas 77024 by cash, cashier's check, or money order on or before November 30, 2021. IT IS FURTHER ORDERED AND DECREED that RAWAN AL-NAJJAR is awarded judgment of Twenty Thousand Dollars ($20,000.00) against HATEM TAWFIQ ALGHUTI to be paid as described above, with

interest at 6% percent per year compounded annually from the date of judgment, for which let execution issue.

## Notice

IT IS ORDERED AND DECREED that each party shall send to the other party, within three days of its receipt, a copy of any correspondence from a creditor or taxing authority concerning any potential liability of the other party.

## Attorney's Fees

To effect an equitable division of the estate of the parties and as a part of the division, and for services rendered in connection with conservatorship and support of the child, each party shall be responsible for his or her own attorney's fees, expenses, and costs incurred as a result of legal representation in this case.

## Muniment of Title

This decree shall serve as a muniment of title to transfer ownership of all property awarded to any party in this Final Decree of Divorce.

## Court Costs

IT IS ORDERED AND DECREED those costs of court are to be borne by the party who incurred them.

## Discharge from Discovery Retention Requirement

IT IS ORDERED AND DECREED that the parties and their respective attorneys are discharged from the requirement of keeping and storing the documents produced in this case in accordance with rule 191.4(d) of the Texas Rules of Civil Procedure.

## Clarifying Orders

Without affecting the finality of this Final Decree of Divorce, this Court expressly reserves the right to make orders necessary to clarify and enforce this decree.

disposes of all claims and all parties and is appealable.

**_Date of Judgment_**

  This divorce judicially **PRONOUNCED AND RENDERED** in court in, **GALVESTON** County, Texas, on November 15, 2021 and further noted on the court's docket sheet on the same date, but signed on _November 19, 2021_

                              

**JUDGE PRESIDING**

**APPROVED AS TO FORM ONLY:**

**SKILLERN FIRM**
701 N. Post Oak Rd, #600
Houston, Texas 77024
Tel: (713) 229-8855
Fax: (713) 481-8800

By:  _/s/ Matthew A. Skillern_
   **MATTHEW A. SKILLERN**
   State Bar No. 24041926
   matthew@skillernfirm.com
   _Attorney for Petitioner_

By: _____
   **RAWAN AL-NAJJAR**
   _Petitioner_

By: _____
   **HATEM TAWFIQ ALGHUTI**
   _Respondent_



I, John D. Kinard, District Clerk and Custodian of Records for District Courts of Galveston, County, Texas do hereby certify that the foregoing is a true and correct copy of the original record, now in my lawful custody and filed in this office on the _____ day of _____ 2021 _____ witness my official hand and seal of office this _____ day of _____ 2021

JOHN D. KINARD, DISTRICT CLERK
Galveston County, Texas
By _____ Deputy

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
see attached

United States Courts
Southern District of Texas
**FILED**
*April 20, 2023*

**DEFENDANTS**
see attached

**(b)** County of Residence of First Listed Plaintiff    Harris
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    n/a (Washington, D.C.)
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Nathan Ochsner, Clerk of Court

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
*(U.S. Government Not a Party)*

☒ 2  U.S. Government
Defendant

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                                  *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | **INTELLECTUAL** | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☒ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | Act of 2016 | (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | | ☐ 485 Telephone Consumer |
| ☒ 190 Other Contract | Product Liability | ☒ 380 Other Personal | ☐ 720 Labor/Management | **SOCIAL SECURITY** | Protection Act |
| ☐ 195 Contract Product Liability | ☒ 360 Other Personal | Property Damage | Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | | Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | Agency Decision |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | ☒ 950 Constitutionality of |
| | Other | ☐ 550 Civil Rights | Actions | | State Statutes |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original
Proceeding

☐ 2  Removed from
State Court

☐ 3  Remanded from
Appellate Court

☐ 4  Reinstated or
Reopened

☐ 5  Transferred from
Another District
*(specify)*

☐ 6  Multidistrict
Litigation -
Transfer

☐ 8  Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1983
Brief description of cause:
Unconstitutional State Statutes under Article 17.292 of the Texas Code of Criminal Procedure and Texas Family Code

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
April 19, 2023

SIGNATURE OF ATTORNEY OF RECORD
/s/ Hatem Tawfiq Alghuti

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**Plaintiff**

     HATEM TAWFIQ ALGHUTI

**Defendants**

     UNITED STATES DEPARTMENT OF JUSTICE
     OFFICE ON VIOLENCE AGAINST WOMEN
     STATE OF TEXAS
     GALVESTON COUNTY
     HONORABLE MARK HENRY
     DWIGHT D. SULLIVAN
     LEAGUE CITY POLICE DEPARTMENT
     KATHLEEN M. MCCUMBER
     KERRI FOLEY
     JACK ROADY
     LISA SALAZAR
     RAWAN AL-NAJJAR
     MATTHEW A. SKILLERN
     SKILLERN FIRM
     JOSEPH ROBINETTE BIDEN JR.

*Pro Se*
Plaintiff *(Address and Telephone Number)*

HATEM TAWFIQ ALGHUTI
13507 Hidden Dell Ct.,
Houston, Texas 77059
Tel: (281)667-2662
E-mail: h.t.alghuti@gmail.com

United States Courts
Southern District of Texas
FILED

Nathan Ochsner, Clerk of Court

# EXHIBIT B-7

## Affidavit Exhibits Labeled 7(a) - 7(m)